**CASE NO. 17-11919-DD**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

———————————

FELICIA A. WILCOX,
Plaintiff-Appellant

v.

CORRECTIONS CORPORATION
OF AMERICA a/k/a McCRAE
CORRECTIONAL FACILITY,
Defendant-Appellee

———————————

Appeal from the United States District Court
Northern District of Georgia
Case No. 1:11-cv-04365-ODE

———————————

**APPENDIX**

VOLUME I

———————————

Neil L. Henrichsen
Helen H. Albee
Henrichsen Siegel, P.L.L.C.
301 W. Bay St., 14th Floor
Jacksonville, FL  32202
(904) 381-8183
(904) 212-2800 FAX
Attorneys for Appellant

## TABLE OF CONTENTS

| TAB NO. | DOCUMENT | VOLUME NO. |
|---|---|---|
| **Docket** | U.S. District Court – Northern District of Georgia (Atlanta) Civil Docket for Case # : 1:11-cv-04365-ODE | **I** |
| **1** | Complaint | **I** |
| **7** | Answer to Complaint | **I** |
| **98** | Motion For Judgment As A Matter of Law | **I** |
| **101** | Minute Entry for Proceedings held before Judge Orinda D. Evans: Jury Trial continued on 08/16/2016 | **I** |
| **104** | Jury Verdict for Plaintiff | **I** |
| **106** | Clerk's Judgment in Favor of Plaintiff | **I** |
| **108** | Plaintiff's Exhibit List with clerk's notes | **I** |
| **110** | Clerk's Note re Admitted Plaintiff and Defendant's Exhibits[1] | **I** |
| **110-3** | Plaintiff's Exhibit 3: Harassment/Sexual Harassment policy | **I** |
| **110-8** | Plaintiff's Exhibit 8: Employee Civilian Incident Statement 07/10/2009 | **I** |
| **110-9** | Plaintiff's Exhibit 9: Wilcox Complaint dated 07/23/2009 | **I** |
| **110-10** | Plaintiff's Exhibit 10: Investigation Report From Golden dated 09/09/2009 | **I** |

---

1 The original Exhibits with labels corresponding to the numbering on Plaintiff's Exhibit List [Doc. 108] were retained by the Clerk and are included in the Record. The Exhibits included in the Appendix are correct copies of the original Exhibits with the exception of the exhibit labels appearing on them which should be disregarded.

| | | |
|---|---|---|
| **110-11** | CCA Facility Employee Problem Solving Notice dated 09/14/2009 | **I** |
| **112** | Motion to Alter Clerk's Judgment [Defendant's Rule 50/59 Motion] and Brief in Support | **I** |
| **117** | Response in Opposition re: 112 Motion to Alter Clerk's Judgment | **I** |
| **120** | Reply Brief re: 112 Motion to Alter Clerk's Judgment | **I** |
| **123** | Excerpt of Transcript of Proceedings held on 08/09/2016 (Jury Trial) | II |
| **124** | Transcript of Proceedings held on 08/10/2016 (Jury Trial) | II |
| **131** | Order: Defendant Corrections Corporation of America's Renewed Motion For Judgment | III |
| **132** | Clerk's Judgment in favor of Corrections Corporation of America against Wilcox, Felecia | III |

# DOCKET

6months,APPEAL,CLOSED,EXH,TitleVII

## U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:11–cv–04365–ODE

Wilcox v. Corrections Corporation of America
Assigned to: Judge Orinda D. Evans
Case in other court:  USCA – 11th Circuit, 14–11258–FF
                      USCA– 11th Circuit, 17–11919–DD
Cause: 42:2000 Job Discrimination (Race)

Date Filed: 12/15/2011
Date Terminated: 08/12/2016
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Felicia A. Wilcox**                    represented by   **David Gan–wing Cheng**
The Law Office of David Cheng, Ltd.
1801 Peachtree Road, NW
Suite 100
Atlanta, GA 30309
334–451–4346
Fax: 312–626–2487
Email: david@considerdavidcheng.com
*ATTORNEY TO BE NOTICED*

**Helen H. Albee**
Henrichsen Siegel
1648 Osceola St.
Jacksonville, FL 32204
904–381–8183
Fax: 904–381–8191
Email: HAlbee@hsLawyers.com
*ATTORNEY TO BE NOTICED*

**Larry Allen Pankey**
Pankey &Horlock, LLC –Atl
1441 Dunwoody Village Parkway
Suite 200
Atlanta, GA 30338–4122
770–670–6250
Fax: 770–670–6249
Email: lpankey@pankeyhorlock.com
*TERMINATED: 08/28/2012*

**Matthew Momtahan**
Roberts &Daughdrill, P.C.
945 E. Paces Ferry Rd.
Suite 2750
Atlanta, GA 30326
404–924–2854
Fax: 404–924–2861
Email: mmomtahan@gsrdlaw.com
*TERMINATED: 04/18/2013*

**Neil L. Henrichsen**
Henrichsen Siegel, PLLC
1648 Osceola Street
Jacksonville, FL 32204
202–293–7766
Email: nhenrichsen@hslawyers.com
*ATTORNEY TO BE NOTICED*

**Oni Holley Brown**
U.S. Security Associates, Inc.
200 Mansell Court East
Suite 500

Roswell, GA 30076
770−642−3845
Email: oni.holley@gmail.com
*TERMINATED: 11/23/2015*

V.

**Defendant**

**Corrections Corporation of America**
*also known as*
McRae Correctional Facility

represented by **Adam L. Bartrom**
Barnes &Thornburg−IN
Suite 600
110 E. Wayne Street
Fort Wayne, IN 46802
260−423−9440
Email: adam.bartrom@btlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John T.L. Koenig**
Barnes &Thornburg LLP −GA
Suite 1700
Prominence in Buckhead
3475 Piedmont Road, N.E.
Atlanta, GA 30305−2954
404−264−4018
Fax: 404−264−4033
Email: john.koenig@btlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/15/2011 | 1 | COMPLAINT with Jury Demand filed by Felicia A. Wilcox. Consent form to proceed before U.S. Magistrate and pretrial instructions provided. ( Filing fee $ 350.00 receipt number 113E−3670721.) (Attachments: # 1 Exhibit −A, # 2 Exhibit −B, # 3 Exhibit −C, # 4 Exhibit −D, # 5 Civil Cover Sheet)(eop) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 12/15/2011) |
| 12/15/2011 | 2 | Electronic Summons Issued as to Corrections Corporation of America. (eop) (Entered: 12/15/2011) |
| 12/15/2011 | | Submission of 1 Complaint for Review, submitted to District Judge Orinda D. Evans. (eop) (Entered: 12/15/2011) |
| 02/01/2012 | 3 | NOTICE of Appearance by John T.L. Koenig on behalf of Corrections Corporation of America (Koenig, John) (Entered: 02/01/2012) |
| 02/29/2012 | 4 | Return of Service Executed by Felicia A. Wilcox. Corrections Corporation of America served on 2/24/2012, answer due 3/16/2012. (Pankey, Larry) (Entered: 02/29/2012) |
| 03/16/2012 | 5 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Corrections Corporation of America. (Attachments: # 1 Text of Proposed Order)(Koenig, John) (Entered: 03/16/2012) |
| 03/23/2012 | 6 | ORDER GRANTING 5 Consent Motion for Extension of Time to Answer. Corrections Corporation of America shall have until 3/26/2012 to respond to Plaintiff's complaint. Signed by Magistrate Judge C. Christopher Hagy on 3/23/2012. (anc) (Entered: 03/26/2012) |
| 03/26/2012 | 7 | ANSWER to 1 COMPLAINT with Jury Demand by Corrections Corporation of America. Discovery ends on 8/23/2012.(Koenig, John) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 03/26/2012) |

| | | |
|---|---|---|
| 03/26/2012 | 8 | Corporate Disclosure Statement by Corrections Corporation of America.(Koenig, John) Modified on 3/27/2012 in order to update docket text (anc). (Entered: 03/26/2012) |
| 04/23/2012 | 9 | Certificate of Interested Persons by Felicia A. Wilcox. (Pankey, Larry) (Entered: 04/23/2012) |
| 05/10/2012 | 10 | Initial Disclosures by Felicia A. Wilcox.(Pankey, Larry) (Entered: 05/10/2012) |
| 05/15/2012 | 11 | ORDER for parties to file a Joint Preliminary Report and Discovery Plan within 14 days from the date of this Order. Signed by Magistrate Judge C. Christopher Hagy on 5/15/2012. (anc) (Entered: 05/15/2012) |
| 05/29/2012 | 12 | Joint PRELIMINARY REPORT AND DISCOVERY PLAN filed by Corrections Corporation of America. (Koenig, John) (Entered: 05/29/2012) |
| 05/31/2012 | 13 | CERTIFICATE OF SERVICE *for Defendant's Initial Disclosures* by Corrections Corporation of America.(Koenig, John) (Entered: 05/31/2012) |
| 06/04/2012 | | Case Reassigned to Magistrate Judge Justin S Anand. Magistrate Judge C. Christopher Hagy no longer assigned to case. NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 1:11–cv–4365–ODE–JSA. Please make note of this change in order to facilitate the docketing of pleadings in this case. (anc) (Entered: 06/04/2012) |
| 06/04/2012 | 14 | ORDER on the 12 Preliminary Report and Discovery Plan. The parties have requested that the discovery period be extended by two months. Accordingly, for good cause shown, the discovery period will end on October 23, 2012. The Court extends the deadline for filing a consolidated pretrial order until 40 days after the close of discovery, or, in the event that any party files a motion for summary judgment, until 30 days after the district courts final ruling on all pending motions for summary judgment, whichever is later. Signed by Magistrate Judge Justin S Anand on 6/4/2012. (anc) (Entered: 06/05/2012) |
| 07/03/2012 | 15 | CERTIFICATE OF SERVICE *RULE 5.4* by Corrections Corporation of America.(Koenig, John) (Entered: 07/03/2012) |
| 07/13/2012 | 16 | NOTICE to Felicia A. Wilcox of counsel's intent to withdraw from case (anc) (Entered: 07/17/2012) |
| 07/26/2012 | 17 | MOTION to Withdraw Larry Allen Pankey as Attorneyby Felicia A. Wilcox. (Attachments: # 1 Exhibit "A", # 2 Text of Proposed Order)(Pankey, Larry) (Entered: 07/26/2012) |
| 08/01/2012 | 18 | RESPONSE in Opposition to 17 MOTION to Withdraw Larry Allen Pankey as Attorney filed by Felicia A. Wilcox. (anc) (Entered: 08/02/2012) |
| 08/02/2012 | | Submission of 17 MOTION to Withdraw Larry Allen Pankey as Attorney, submitted to Magistrate Judge Justin S Anand. (anc) (Entered: 08/02/2012) |
| 08/20/2012 | 19 | CERTIFICATE OF SERVICE *Plaintiff's Responses and Objections to Defendant's First Interroagtories and Request for Production of Documents* by Felicia A. Wilcox.(Pankey, Larry) (Entered: 08/20/2012) |
| 08/28/2012 | 20 | ORDER GRANTING 17 Motion to Withdraw Attorney Larry Allen Pankey as counsel. Plaintiff Wilcox is ORDERED to provide notice to the Clerk, within 21 days of the date of this Order, of the appointment of another attorney to represent her or of her intention to proceed pro se. The Clerk is DIRECTED to update the docket to reflect that Larry A. Pankey is no longer counsel of record for Plaintiff Wilcox in this action. Attorney Pankey is ORDERED to forward a copy of this Order to Plaintiff Wilcox immediately upon receipt and to advise Plaintiff Wilcox of the deadlines set forth in this Order. Signed by Magistrate Judge Justin S Anand on 8/28/2012. (anc) (Entered: 08/28/2012) |
| 09/10/2012 | 21 | NOTICE of Change of Address for Felicia A. Wilcox. (ddm) (Entered: 09/11/2012) |

| 09/10/2012 | 22 | MOTION for Extension of Time to Seek Legal Counsel filed by Felicia A. Wilcox. (ddm) (Entered: 09/11/2012) |
| 09/11/2012 | 23 | RESPONSE re 22 MOTION for Extension of Time to Seek Legal Counsel filed by Corrections Corporation of America. (Koenig, John) (Entered: 09/11/2012) |
| 09/12/2012 | | Submission of 22 MOTION for Extension of Time to Seek Legal Counsel, submitted to Magistrate Judge Justin S Anand. (anc) (Entered: 09/12/2012) |
| 09/14/2012 | 24 | ORDER GRANTING in part and DENYING in part 22 Motion for Extension of Time to Seek Legal Counsel. Plaintiff's request for an additional 90 days to obtain new counsel is DENIED. The Court instead GRANTS Plaintiff 30 days from the date of this Order to obtain new counsel. Plaintiff Wilcox is ORDERED to provide notice to the Clerk within 30 days of the date of this Order of the appointment of another attorney to represent her or her intention to proceed pro se, without the benefit of counsel. The discovery period is extended through 11/26/2012, and the summary judgment deadline is extended until 12/26/2012. Signed by Magistrate Judge Justin S Anand on 9/14/2012. (adg) (Entered: 09/14/2012) |
| 09/14/2012 | | Clerks Certificate of Mailing as to Felicia A. Wilcox re 24 Order on Motion for Extension of Time. (adg) (Entered: 09/14/2012) |
| 09/17/2012 | 25 | Initial Disclosures by Felicia A. Wilcox.(anc) (Entered: 09/18/2012) |
| 10/15/2012 | 26 | NOTICE of Appearance by Helen H. Albee on behalf of Felicia A. Wilcox (Albee, Helen) (Entered: 10/15/2012) |
| 10/18/2012 | 27 | APPLICATION for Admission of Neil L. Henrichsen Pro Hac Vice (Application fee $ 150, receipt number 113E–4214188)by Felicia A. Wilcox. (Henrichsen, Neil) (Entered: 10/18/2012) |
| 10/23/2012 | | RETURN of 27 APPLICATION for Admission of Neil L. Henrichsen Pro Hac Vice (Application fee $ 150, receipt number 113E–4214188) to attorney for correction re: local counsel. (pb) (Entered: 10/23/2012) |
| 11/02/2012 | 28 | MOTION for Extension of Time to Complete Discovery with Brief In Support by Felicia A. Wilcox. (Albee, Helen) (Entered: 11/02/2012) |
| 11/26/2012 | 29 | CERTIFICATE OF SERVICE *of Plaintiff's First Set of Interrogatories and Amended Request for Production of Documents* by Felicia A. Wilcox.(Albee, Helen) (Entered: 11/26/2012) |
| 11/26/2012 | | Submission of 28 MOTION for Extension of Time to Complete Discovery , submitted to Magistrate Judge Justin S Anand. (anc) (Entered: 11/26/2012) |
| 11/28/2012 | 30 | ORDER GRANTING 28 Motion for Extension of Time to Complete Discovery. Discovery will close on 1/31/2013. All related deadlines are extended accordingly. Signed by Magistrate Judge Justin S Anand on 11/28/2012. (anc) (Entered: 11/28/2012) |
| 01/14/2013 | 31 | NOTICE of Appearance by Matthew Momtahan on behalf of Felicia A. Wilcox (Momtahan, Matthew) (Entered: 01/14/2013) |
| 01/14/2013 | 32 | NOTICE of Appearance by Oni A. Holley on behalf of Felicia A. Wilcox (Holley, Oni) (Entered: 01/14/2013) |
| 01/14/2013 | 33 | APPLICATION for Admission of Neil L. Henrichsen Pro Hac Vice by Felicia A. Wilcox. (Holley, Oni) (Entered: 01/14/2013) |
| 01/16/2013 | 34 | Unopposed MOTION for Extension of Time to Complete Discovery *and extension of summary judgment deadline* with Brief In Support by Felicia A. Wilcox. (Albee, Helen) (Entered: 01/16/2013) |
| 01/17/2013 | | APPROVAL by Clerks Office re: 33 APPLICATION for Admission of Neil L. Henrichsen Pro Hac Vice. Attorney Neil L. Henrichsen added appearing on behalf of Felicia A. Wilcox (pb) (Entered: 01/17/2013) |
| 01/17/2013 | 35 | ORDER granting 33 Application for Admission Pro Hac Vice as to Neil L. Henrichsen. Signed by Judge Orinda D. Evans on 1/17/2013. (anc) (Entered: 01/18/2013) |

| 01/18/2013 | 36 | APPLICATION for Admission of Wendy E. Byndloss Pro Hac Vice (Application fee $ 150, receipt number 113E–4367163)by Felicia A. Wilcox. (Holley, Oni) (Entered: 01/18/2013) |
| 01/18/2013 | 37 | ORDER GRANTING 34 Motion for Extension of Time to Complete Discovery. Discovery ends on 3/4/2013. All other related deadlines are extended accordingly. The Court advises the Parties that, absent truly exceptional circumstances, the Court will not grant any further extensions. The Court admonishes the parties to promptly complete discovery and proceed with the remainder of this case. Signed by Magistrate Judge Justin S Anand on 1/18/2013. (anc) (Entered: 01/22/2013) |
| 01/24/2013 | | RETURN of 36 APPLICATION for Admission of Wendy E. Byndloss Pro Hac Vice (Application fee $ 150, receipt number 113E–4367163) to attorney for correction re: petitioner's admission status. (pb) (Entered: 01/24/2013) |
| 01/25/2013 | 38 | Joint MOTION for Protective Order *of Confidential Information* by Corrections Corporation of America. (Attachments: # 1 Text of Proposed Order Stipulated Protective Order of Confidential Information)(Koenig, John) (Entered: 01/25/2013) |
| 02/13/2013 | | Submission of 38 Joint MOTION for Protective Order *of Confidential Information*, submitted to Magistrate Judge Justin S Anand. (anc) (Entered: 02/13/2013) |
| 02/26/2013 | 39 | PROTECTIVE ORDER OF CONFIDENTIAL INFORMATION granting 38 Motion for Protective Order. Signed by Magistrate Judge Justin S Anand on 2/26/2013. (anc) (Entered: 02/26/2013) |
| 03/29/2013 | 40 | MOTION to Withdraw Matthew Momtahan as Attorneyby Felicia A. Wilcox. (Attachments: # 1 Text of Proposed Order)(Momtahan, Matthew) (Entered: 03/29/2013) |
| 04/03/2013 | 41 | MOTION for Summary Judgment with Brief In Support by Corrections Corporation of America. (Attachments: # 1 Brief, # 2 Statement of Material Facts, # 3 Exhibit List, # 4 Exhibit A – F. Hartley Affidavit, # 5 Exhibit 7, # 6 Exhibit 17, # 7 Exhibit 19, # 8 Exhibit 20, # 9 Exhibit 24, # 10 Exhibit 26, # 11 Exhibit 34, # 12 Exhibit 36, # 13 Exhibit 41, # 14 Exhibit 42, # 15 Exhibit 43, # 16 Exhibit 47, # 17 Exhibit 48, # 18 Exhibit 51, # 19 Exhibit 53, # 20 Exhibit 54, # 21 Exhibit 71)(Koenig, John) ––Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.–– (Entered: 04/03/2013) |
| 04/03/2013 | 42 | NOTICE Of Filing Discovery in Support of Corrections Corporation of America's Motion for Summary Judgment by Corrections Corporation of America re 41 MOTION for Summary Judgment (Attachments: # 1 Exhibit B – Deposition Transcript of Walt Wells, # 2 Exhibit C – Deposition Transcript of Felicia Wilcox, # 3 Exhibit D – Deposition Transcript of Darryl Goodner, # 4 Exhibit E – Deposition Transcript of Marc Gunn)(Koenig, John) (Entered: 04/03/2013) |
| 04/18/2013 | 43 | Unopposed MOTION for Extension of Time To File Response re: 41 MOTION for Summary Judgment with Brief In Support by Felicia A. Wilcox. (Albee, Helen) (Entered: 04/18/2013) |
| 04/18/2013 | 44 | ORDER GRANTING 40 Motion to Withdraw as Attorney. Attorney Matthew Momtahan is removed from this action and the Clerk is DIRECTED to remove Attorney Momtahan from the CM/ECF service list in this case. Signed by Magistrate Judge Justin S Anand on 4/18/2013. (anc) (Entered: 04/18/2013) |
| 04/22/2013 | 45 | ORDER GRANTING 43 Motion for Extension of Time. The Plaintiff shall file her response to the 41 MOTION for Summary Judgment no later than 5/8/2013. Signed by Magistrate Judge Justin S Anand on 4/22/2013. (anc) (Entered: 04/22/2013) |
| 05/08/2013 | 46 | RESPONSE in Opposition re 41 MOTION for Summary Judgment filed by Felicia A. Wilcox. (Attachments: # 1 Response to CCA's Statement of Facts, # 2 Statement of Material Facts, # 3 Notice of Filing Exhibits, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Albee, Helen) (Entered: 05/08/2013) |
| 05/09/2013 | | Submission of 41 MOTION for Summary Judgment , submitted to Magistrate Judge Justin S Anand. (anc) (Entered: 05/09/2013) |

| 05/28/2013 | 47 | REPLY BRIEF re 41 MOTION for Summary Judgment filed by Corrections Corporation of America. (Koenig, John) (Entered: 05/28/2013) |
|---|---|---|
| 05/28/2013 | 48 | RESPONSE TO STATEMENT OF MATERIAL FACTS re 41 Motion for Summary Judgment filed by Corrections Corporation of America. (Koenig, John) Modified on 5/29/2013 in order to update document text and link (anc). (Entered: 05/28/2013) |
| 12/03/2013 | 49 | NON–FINAL REPORT AND RECOMMENDATION re 41 MOTION for Summary Judgment. The undersigned RECOMMENDS that Defendant's Motion for Summary Judgment 41 be GRANTED IN PART and DENIED IN PART. The undersigned RECOMMENDS that Defendant's Motion be GRANTED as to Plaintiff's claims of racial and gender discrimination under Title VII and/or Section 1981 in Counts One and Two, and that such claims be deemed DISMISSED. However, the undersigned RECOMMENDS that Defendant's Motion be DENIED as to Plaintiff's claim of retaliation under Title VII and/or Section 1981 in Counts One and Two. This recommendation, should it be accepted, would not result in complete dismissal of either of Plaintiff's Counts, since Plaintiff included both retaliation and discrimination theories in a single count. Rather, both Counts One and Two in Plaintiff's Complaint 1 would proceed to trial, although narrowed to only include the retaliatory discharge claims as discussed above. Signed by Magistrate Judge Justin S Anand on 12/3/13. (fap) (Entered: 12/04/2013) |
| 12/03/2013 | 50 | ORDER for Service of 49 Report and Recommendation, by Magistrate Judge Justin S Anand. Each party may file written objections to the Report &Recommendation within 14 days of service. If no objections are filed, the Report &Recommendation may be adopted as the opinion and order of the District Court. Signed by Magistrate Judge Justin S Anand on 12/03/13. (fap) (Entered: 12/04/2013) |
| 12/17/2013 | 51 | OBJECTIONS to 49 Report and Recommendation filed by Felicia A. Wilcox. (Attachments: # 1 Exhibit)(Albee, Helen) (Entered: 12/17/2013) |
| 12/18/2013 | 52 | OBJECTIONS to 49 Report and Recommendation filed by Corrections Corporation of America. (Koenig, John) (Entered: 12/18/2013) |
| 12/19/2013 | | Submission of 49 REPORT AND RECOMMENDATION, 41 MOTION for Summary Judgment , submitted to District Judge Orinda D. Evans. (fap) (Entered: 12/19/2013) |
| 12/31/2013 | 53 | RESPONSE re 51 Objections to Report and Recommendation filed by Corrections Corporation of America. (Koenig, John) (Entered: 12/31/2013) |
| 02/26/2014 | 54 | ORDER Adopting in Part 49 Report and Recommendations as Order of the Court. For the reasons discussed above, the RRis ADOPTED IN PART AND REJECTED IN PART. It is adopted on its recommendation that Defendant's Motion for Summary Judgment be granted as to Plaintiff's hostile work environment and race discrimination claims and rejected on its recommendation that Defendant's Motion for Summary Judgment be denied as to Plaintiff's retaliation claims. As such, Defendant's Motion for Summary Judgment is hereby GRANTED.. Signed by Judge Orinda D. Evans on 02/26/14. (fap) (Entered: 02/27/2014) |
| 02/26/2014 | 55 | CLERK'S JUDGMENT entered in favor of Defendant against Plaintiff for the cost of this action. (fap)––Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist–– (Entered: 02/27/2014) |
| 02/26/2014 | | Civil Case Terminated. Magistrate Judge Justin S Anand terminated from case. (fap) (Entered: 02/27/2014) |
| 03/06/2014 | 56 | BILL OF COSTS by Corrections Corporation of America. (Attachments: # 1 Itemization in Support of Bill of Costs, # 2 Exhibit A–1 – Esquire Invoice – Goodner &Wells Deps, # 3 Exhibit A–2 – Esquire Invoice – Pooler Dep, # 4 Exhibit A–3 – Esquire Invoice – Wilcox Dep, # 5 Exhibit A–4 – Esquire Invoice – Gunn Dep, # 6 Exhibit B–1 – IRS Copy Costs, # 7 Exhibit B–2 –DOL Copy Costs, # 8 Exhibit B–3 –Bankruptcy Court Copy Costs, # 9 Exhibit C – BTCopy Costs)(Koenig, John) (Entered: 03/06/2014) |

| 03/21/2014 | 57 | NOTICE OF APPEAL as to 55 Clerk's Judgment, 54 Order on Motion for Summary Judgment, Order on Report and Recommendation,,,, by Felicia A. Wilcox. Filing fee $ 505, receipt number 113E–5089831. Transcript Order Form due on 4/4/2014 (Henrichsen, Neil) (Entered: 03/21/2014) |
|---|---|---|
| 03/24/2014 | 58 | NOTICE Of Filing Notice of Appeal Transmittal Sheet as to Felicia A. Wilcox re 57 Notice of Appeal, (fem) (Entered: 03/24/2014) |
| 03/24/2014 | 59 | Transmission of Certified Copy of Notice of Appeal, Judgment, Order, Report and Recommendation, and Docket Sheet to US Court of Appeals re 57 Notice of Appeal, (fem) (Entered: 03/24/2014) |
| 03/26/2014 | 60 | USCA Acknowledgment of 57 Notice of Appeal, filed by Felicia A. Wilcox. Case Appealed to USCA Case Number 14–11258–FF (fem) (Entered: 03/27/2014) |
| 06/25/2014 | 61 | ENTRY OF DISMISSAL of USCA DISMISSING 57 Notice of Appeal, filed by Felicia A. Wilcox for want of prosecution because the Appellant failed to file an appendix within the time fixed by the rules. Case Appealed to USCA– 11th Circuit. Case Number 14–11258–FF. (pjm) (Entered: 06/25/2014) |
| 07/01/2014 | 62 | Costs Taxed in amount of $5,491.03 against Plaintiff (fap) (Entered: 07/01/2014) |
| 07/22/2014 | 63 | Certified copy of ORDER of USCA GRANTING Appellant's motion to set aside dismissal and remedy default re: 57 Notice of Appeal, filed by Felicia A. Wilcox. Case Appealed to USCA Case Number 14–11258–FF. (fem) (Entered: 07/22/2014) |
| 08/25/2014 | | Pursuant to F.R.A.P.11(c), the Clerk certifies that the record is complete for purposes of this appeal, 57 Notice of Appeal,. Case Appealed to USCA Case Number 14–11258–FF. The entire record on appeal is available electronically. (fem) (Entered: 08/25/2014) |
| 03/11/2015 | 64 | USCA Opinion received (AFFIRMED IN PART, REVERSED IN PART AND REMANDED) re: 57 Notice of Appeal, filed by Felicia A. Wilcox. In accordance with FRAP 41(b), the USCA mandate will issue at a later date. Case Appealed to USCA– 11th Circuit. Case Number 14–11258–FF. (pjm) (Entered: 03/11/2015) |
| 05/29/2015 | 65 | Certified copy of JUDGMENT of USCA REMANDING to the District Court for further action re: 57 Notice of Appeal, filed by Felicia A. Wilcox Case Appealed to USCA – 11th Circuit Case Number 14–11258–FF. (Attachments: # 1 Letter)(fap) (Entered: 06/01/2015) |
| 06/01/2015 | 66 | PROPOSED MANDATE ORDER re: 65 USCA Judgment. (fap) (Entered: 06/01/2015) |
| 06/01/2015 | | Submission of 66 Proposed Mandate Order, submitted to District Judge Orinda D. Evans. (fap) (Entered: 06/01/2015) |
| 06/03/2015 | 67 | ORDER making the USCA mandate the judgment of this Court re 57 Notice of Appeal, Case Appealed to USCA – 11th Circuit Case Number 14–11258–FF. Signed by Judge Orinda D. Evans on 06/03/15. (fap) (Entered: 06/04/2015) |
| 09/18/2015 | 68 | ORDER regarding 67 USCA Mandate dated 06/03/15. Plaintiff's sexual harassment claim in now before the Court for trial. The parties are DIRECTED to file a consolidated proposed pretrial order within thirty (30) days of entry of this order. Signed by Judge Orinda D. Evans on 09/18/15. (fap) (Entered: 09/21/2015) |
| 10/19/2015 | 69 | Proposed Pretrial Order by Felicia A. Wilcox. (Attachments: # 1 Plaintiff's Proposed voir Dire Questions, # 2 Defendant's Proposed Voir Dire Questions, # 3 Plaintiff's Summary of the Case, # 4 Defendant's Summary of the Case, # 5 Stipulation of Facts, # 6 Plaintiff's Witness List, # 7 Defendant's Witness List, # 8 Plaintiff Exhibit List, # 9 Defendant's Exhibit List with objections, # 10 Plaintiff's Proposed Verdict Form, # 11 Defendant's Proposed Special Verdict Form)(Albee, Helen) (Entered: 10/19/2015) |
| 11/23/2015 | 70 | Certification of Consent to Substitution of Counsel. David Gan–wing Cheng replacing attorney Oni Holley Brown. (Cheng, David) (Entered: 11/23/2015) |

| | | |
|---|---|---|
| 03/17/2016 | 71 | ORDER Approving 69 Proposed Pretrial Order except as follows: 1. Paragraph 5: Plaintiff Felicia A. Wilcox must indicate whether Neil L. Henrichsen or Helen H. Albee is the lead counsel for Plaintiff. 2. Paragraph 18: The parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given fourteen (14) days prior to trial to allow the other party to subpoena the witness or to obtain the witness' testimony by other means. The parties are DIRECTED to confer and to present a proposed amendment to the consolidated proposed pretrial order reflecting the needed changes no later than March 25, 2016. Signed by Judge Orinda D. Evans on 03/17/16. (fap) (Entered: 03/18/2016) |
| 03/25/2016 | 72 | Proposed Pretrial Order *Amended Paragraphs 5 and 18* by Felicia A. Wilcox. (Henrichsen, Neil) (Entered: 03/25/2016) |
| 03/29/2016 | 73 | AMENDMENTS TO PRETRIAL ORDER re 69 Proposed Pretrial Order. IT IS HEREBY ORDERED that the above constitutes amendments to the pretrial order for the above captioned case (X) submitted by stipulation of the parties or ( ) approved by the court after conference with the parties. (See Complete Order for Specifics) Signed by Judge Orinda D. Evans on 03/29/16. (fap) (Entered: 03/30/2016) |
| 05/04/2016 | 74 | NOTICE: CIVIL TRIAL CALENDAR beginning June 6, 2016 at 09:30 AM in Courtroom 1908 before Judge Orinda D. Evans. (See Notice for further details)(vh) (Entered: 05/04/2016) |
| 05/20/2016 | 75 | MOTION in Limine issues to exclude before trial with Brief In Support by Corrections Corporation of America. (Attachments: # 1 Brief in Support of Motion in Limine, # 2 Exhibit Cited in Support of Motion in Limine)(Koenig, John) (Entered: 05/20/2016) |
| 06/01/2016 | 76 | Amended Exhibit List *(Submission of Defendant's Amended Trial Exhibit List – Amended Attachment G–2 to Pre–Trial Order)* by Corrections Corporation of America.. (Attachments: # 1 Exhibit – Defendant's Amended Trial Exhibit List – Amended Attachment G–2 to Pre–Trial Order)(Koenig, John) (Entered: 06/01/2016) |
| 06/01/2016 | 77 | MOTION to Strike 76 Exhibit List, with Brief In Support by Felicia A. Wilcox. (Albee, Helen) (Entered: 06/01/2016) |
| 06/03/2016 | 78 | RESPONSE in Opposition re 75 MOTION in Limine issues to exclude before trial filed by Felicia A. Wilcox. (Albee, Helen) (Entered: 06/03/2016) |
| 06/03/2016 | 79 | First MOTION in Limine Deposition of Larry Jackson, Sr. with Brief In Support by Felicia A. Wilcox. (Attachments: # 1 Exhibit Letter from CCA's Counsel, # 2 Exhibit Plaintiff's Amended Request for Production)(Albee, Helen) (Entered: 06/03/2016) |
| 06/03/2016 | 80 | Second MOTION in Limine Exclusion of Certain Evidence with Brief In Support by Felicia A. Wilcox. (Attachments: # 1 Exhibit Order from Telfair Matter, # 2 Exhibit Proposed Exhibits related to Jackson Grievance, # 3 Exhibit Letter from CCA's Counsel)(Albee, Helen) (Entered: 06/03/2016) |
| 06/03/2016 | 81 | RESPONSE in Opposition re 77 MOTION to Strike 76 Exhibit List, *(CCA's Response in Opposition to Plaintiff's Motion to Strike Amended Exhibit List)* filed by Corrections Corporation of America. (Koenig, John) (Entered: 06/03/2016) |
| 06/06/2016 | | NOTICE SETTING TRIAL: Jury Trial set for 7/11/2016 at 09:30 AM in ATLA Courtroom 1908 before Judge Orinda D. Evans. (vh) (Entered: 06/06/2016) |
| 06/06/2016 | 82 | REPLY to Response to Motion re 77 MOTION to Strike 76 Exhibit List, filed by Felicia A. Wilcox. (Attachments: # 1 Exhibit Letter from CCA's Counsel)(Albee, Helen) (Entered: 06/06/2016) |
| 06/14/2016 | 83 | REPLY to Response to Motion re 75 MOTION in Limine issues to exclude before trial *(Defendant's Reply in Support of Its Motion in Limine)* filed by Corrections Corporation of America. (Koenig, John) (Entered: 06/14/2016) |

| | | |
|---|---|---|
| 06/17/2016 | 84 | RESPONSE in Opposition re 80 Second MOTION in Limine Exclusion of Certain Evidence filed by Corrections Corporation of America. (Attachments: # 1 Exhibit A – Wilcox Dep. Excerpt, # 2 Exhibit B – Jackson Grievance)(Koenig, John) (Entered: 06/17/2016) |
| 06/17/2016 | 85 | RESPONSE in Opposition re 79 First MOTION in Limine Deposition of Larry Jackson, Sr. *(Defendant's Response in Opposition to Plaintiff's First Motion in Limine – Directed to Larry Jackson, Sr. Deposition)* filed by Corrections Corporation of America. (Attachments: # 1 Exhibit A – 2/26/2013 Counsel Email regarding no Jackson deposition)(Koenig, John) (Entered: 06/17/2016) |
| 06/23/2016 | | Submission of 75 MOTION in Limine issues to exclude before trial 77 MOTION to Strike 76 Exhibit List 79 First MOTION in Limine Deposition of Larry Jackson, Sr. 80 Second MOTION in Limine Exclusion of Certain Evidence, submitted to District Judge Orinda D. Evans. (fap) (Entered: 06/23/2016) |
| 06/23/2016 | 86 | REPLY BRIEF re 79 First MOTION in Limine Deposition of Larry Jackson, Sr. filed by Felicia A. Wilcox. (Albee, Helen) (Entered: 06/23/2016) |
| 06/23/2016 | 87 | REPLY BRIEF re 80 Second MOTION in Limine Exclusion of Certain Evidence filed by Felicia A. Wilcox. (Albee, Helen) (Entered: 06/23/2016) |
| 06/23/2016 | 88 | APPLICATION for Admission of Adam L. Bartrom Pro Hac Vice (Application fee $ 150, receipt number 113E–6529119)by Corrections Corporation of America. (Koenig, John) (Entered: 06/23/2016) |
| 07/11/2016 | | APPROVAL by Clerks Office re: 88 APPLICATION for Admission of Adam L. Bartrom Pro Hac Vice (Application fee $ 150, receipt number 113E–6529119). Attorney Adam L. Bartrom added appearing on behalf of Corrections Corporation of America (pb) (Entered: 07/11/2016) |
| 07/12/2016 | | NOTICE RESETTING TRIAL: Jury Trial reset for 8/8/2016 at 09:30 AM in ATLA Courtroom 1908 before Judge Orinda D. Evans. (vh) (Entered: 07/12/2016) |
| 07/13/2016 | 89 | ORDER granting 88 Application for Admission Pro Hac Vice for Petitioner Adam L. Bartrom. Signed by Judge Orinda D. Evans on 07/12/16. (fap) (Entered: 07/13/2016) |
| 08/02/2016 | | NOTICE RESETTING JURY TRIAL: Jury Trial reset for Tuesday 8/9/2016 at 09:30 AM in ATLA Courtroom 1908 before Judge Orinda D. Evans. (vh) (Entered: 08/02/2016) |
| 08/03/2016 | 90 | AMENDED ORDER ALLOWING AUDIO/VISUAL EQUIPMENT IN THE COURTROOM. Pursuant to Local Rule 83.4(A) for the Northern District of Georgia, it is hereby ordered that the following individual(s) be allowed to bring their listed cell phones, to Courtroom 1908 on the 19th floor of the United States Courthouse on Tuesday, August 9, 2016 at 9:30 a.m.: John Koenig (317–902–0949); Adam Bartrom (260–403–3330); Emily Moran (404–277–7220); Roxanne Larrison (317–341–0063) and Susan Lindsey (615–306–1471). Proper identification will be required upon entering the security station on the plaza or lower plaza level. Said cell phone shall be subject to inspection by the United States Marshal's Service. This order shall be effective until close of business on Friday, August 12, 2016. Signed by Judge Orinda D. Evans on 08/02/16. (fap) (Entered: 08/03/2016) |
| 08/04/2016 | 91 | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom with Brief In Support by Felicia A. Wilcox. (Albee, Helen) (Entered: 08/04/2016) |
| 08/08/2016 | 92 | ORDER granting 91 Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom. It is hereby ordered that the following individual(s) be allowed to bring the listed cell phone and laptop computers to Courtroom 1908 on the 19th floor of the United States Courthouse on Tuesday, August 9, 2016 at 9:30 a.m.: Neil Henrichsen – 904–237–0004. This order shall be effective until close of businesson Friday, August 12, 2016. Signed by Judge Eleanor L. Ross on 08/08/16. (fap) (Entered: 08/08/2016) |
| 08/08/2016 | 93 | OBJECTION *to Defendant's Deposition Designations contained in the Pretrial Order* by Felicia A. Wilcox. (Albee, Helen) (Entered: 08/08/2016) |

| 08/08/2016 | 94 | Proposed Jury Instructions by Corrections Corporation of America . (Koenig, John) (Entered: 08/08/2016) |
|---|---|---|
| 08/08/2016 | 95 | RESPONSE re 71 Order,, *(CCA's Objection to Plaintiff's Deposition Designations Contained in Pretrial Order)* filed by Corrections Corporation of America. (Koenig, John) (Entered: 08/08/2016) |
| 08/09/2016 | 96 | Proposed Jury Instructions by Felicia A. Wilcox . (Albee, Helen) (Entered: 08/09/2016) |
| 08/09/2016 | 97 | Minute Entry for proceedings held before Judge Orinda D. Evans: Jury Trial began on 8/9/2016. Jury was Sworn. 75 Motion in Limine GRANTED IN PART &DENIED IN PART, 77 Motion to Strike DISMISSED As Moot, 79 Motion in Limine GRANTED IN PART &DENIED IN PART, and 80 Motion in Limine GRANTED IN PART &DENIED IN PART. Opening statements. Plaintiffs evidence: 1) Felicia Wilcox, sworn; Plaintiffs exhibits 1 through 16, ADMITTED; D–3, 7, 16, 20, 21, 32, ADMITTED. Hearing not concluded. Court adjourned and will reconvene at 9:30 a.m., August 10, 2016. Jurors excused until the above time under the usual caution of the Court. Evidence Entered, continued.(Exhibits retained to be forwarded to the Clerks Office.) (Court Reporter Andy Ashley)(bnw) (Entered: 08/10/2016) |
| 08/10/2016 | 98 | MOTION for Judgment as a Matter of Law *(DEFENDANT'S FED.R.CIV.P. 50 MOTION FOR JUDGMENT AS A MATTER OF LAW)* with Brief In Support by Corrections Corporation of America. (Attachments: # 1 Brief in Support of Rule 50 Motion)(Koenig, John) (Entered: 08/10/2016) |
| 08/10/2016 | 99 | Supplemental Proposed Jury Instructions by Felicia A. Wilcox *on Co–worker Harassment*. (Henrichsen, Neil) (Entered: 08/10/2016) |
| 08/10/2016 | 100 | Minute Entry for proceedings held before Judge Orinda D. Evans: Jury Trial continued on 8/10/2016. Plaintiffs evidence continues: 1) Felicia Wilcox, cont.; D–23 and 31, ADMITTED; 2) Kimnoval Heller, sworn; The Rule of Sequestration is invoked. 3) Walter C. Wells, sworn; 4) Kenya Golden, sworn; 5) Shannon Pooler, sworn; P–14A, ADMITTED; 6 Daryl Goodner, sworn; Stipulation read into the record. Plaintiff rests. Defendants Oral Motion for Directed Verdict, DENIED with reservation to reconsider in the future. Defendants evidence: 1) Larry Jackson, Jr., sworn. (Court Reporter Andy Ashley) (fap) (Entered: 08/11/2016) |
| 08/11/2016 | 101 | Minute Entry for proceedings held before Judge Orinda D. Evans: Jury Trial continued on 8/11/2016. 98 MOTION for Judgment as a Matter of Law DENIED. Defendants evidence continues: 2) Christopher Sammons, sworn; D–34, ADMITTED; 3) Felicia Miller Spires, sworn; 4) James Hill, sworn; D–29 identified only – NOT ADMITTED; Defendant rests. Plaintiffs rebuttal: 1) Felicia Wilcox, recalled.; Plaintiff rests. Defendants Motion for Directed Verdict, DENIED. Charge conference held. Closing arguments of counsel. Courts charge on the law. No exceptions to the charge. The jury begins to deliberate at 3:00. Note #1 filed and taken up at 3:45 p.m. The Court brings in the jury to release them at 5:05. (Court Reporter Andy Ashley)(fap) (Entered: 08/12/2016) |
| 08/12/2016 | 102 | Jury Notes. (fap) (Entered: 08/15/2016) |
| 08/12/2016 | 103 | Jury Notes. (fap) (Entered: 08/15/2016) |
| 08/12/2016 | 104 | JURY VERDICT for Plaintiff in the amount of $4,000.00 in compensatory damages and $100,000.00 in punitive damages. (fap) (Entered: 08/15/2016) |
| 08/12/2016 | 105 | Minute Entry for proceedings held before Judge Orinda D. Evans: Jury Trial concluded on 8/12/2016. Note #2 filed at 10:25 a.m.. The court takes the matter up at 11:15 a.m. The Court further charges the jury on the law. Jury returns with a verdict at 12:15 p.m. (Court Reporter Andy Ashley)(fap) (Entered: 08/15/2016) |
| 08/12/2016 | 106 | CLERK'S JUDGMENT entered in favor of plaintiff against defendant in the amount of $4,000.00 in compensatory damages and $100,000.00 in punitive damages and interest provided by law and costs of this action. (fap)––Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist–– (Entered: 08/15/2016) |

| | | |
|---|---|---|
| 08/12/2016 | | Civil Case Terminated. (fap) (Entered: 08/15/2016) |
| 08/24/2016 | 107 | MOTION for Attorney Fees by Felicia A. Wilcox. (Henrichsen, Neil) (Entered: 08/24/2016) |
| 08/25/2016 | 108 | Plaintiff's Exhibit List. (fap) (Entered: 08/26/2016) |
| 08/25/2016 | 109 | Defendant's Amended Exhibit List. (fap) (Entered: 08/26/2016) |
| 08/25/2016 | 110 | PLAINTIFF'S EXHIBITS (1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 14a, 15 AND 16 – ADMITTED) DEFENDANT'S EXHIBITS (3, 7, 16, 20, 21, 23, 31, 32, 34 – ADMITTED 29 – NOT ALLOWED) retained at the 97 Jury Trial have been received from Courtroom Deputy and placed in Exhibit room. (fap) (Additional attachment(s) added on 8/26/2016: # 1 Plaintiff Exhibit 1, # 2 Plaintiff Exhibit 2, # 3 Plaintiff Exhibit 3, # 4 Plaintiff Exhibit 4, # 5 Plaintiff Exhibit 5, # 6 Plaintiff Exhibit 6, # 7 Plaintiff Exhibit 7, # 8 Plaintiff Exhibit 8, # 9 Plaintiff Exhibit 9, # 10 Plaintiff Exhibit 10, # 11 Plaintiff Exhibit 11, # 12 Plaintiff Exhibit 12, # 13 Plaintiff Exhibit 13, # 14 Plaintiff Exhibit 14, # 15 Plaintiff Exhibit 14a, # 16 Plaintiff Exhibit 15, # 17 Plaintiff Exhibit 16, # 18 Defendant Exhibit 3, # 19 Defendant Exhibit 7, # 20 Defendant Exhibit 16, # 21 Defendant Exhibit 20, # 22 Defendant Exhibit 21, # 23 Defendant Exhibit 23, # 24 Defendant Exhibit 29, # 25 Defendant Exhibit 31, # 26 Defendant Exhibit 32, # 27 Defendant Exhibit 34) (fap). (Entered: 08/26/2016) |
| 09/07/2016 | 111 | RESPONSE in Opposition re 107 MOTION for Attorney Fees filed by Corrections Corporation of America. (Koenig, John) (Entered: 09/07/2016) |
| 09/09/2016 | 112 | MOTION to Alter 106 Clerk's Judgment, *(Rule 59)*, MOTION for Judgment as a Matter of Law *(Rule 50) [Defendant's Rule 50/59 Motion]* with Brief In Support by Corrections Corporation of America. (Attachments: # 1 Brief, # 2 Exhibit A – Ash v. Tyson, # 3 Exhibit B – Transcript (partial), # 4 Exhibit C – Highlighted Pattern Jury Instruction)(Koenig, John) (Entered: 09/09/2016) |
| 09/12/2016 | 113 | APPLICATION for Writ of Execution by Felicia A. Wilcox. (Henrichsen, Neil) (Entered: 09/12/2016) |
| 09/12/2016 | 114 | BILL OF COSTS by Felicia A. Wilcox. (Attachments: # 1 Exhibit Detail of Plaintiff's Costs)(Henrichsen, Neil) (Entered: 09/12/2016) |
| 09/13/2016 | | Submission of 107 MOTION for Attorney Fees , submitted to District Judge Orinda D. Evans. (fap) (Entered: 09/13/2016) |
| 09/15/2016 | 115 | MOTION for Stay of Execution *(Motion for Stay of Execution of Judgment Pending Disposition of CCA's Post−Trial Motions)* by Corrections Corporation of America. (Attachments: # 1 Text of Proposed Order)(Koenig, John) (Entered: 09/15/2016) |
| 09/23/2016 | 116 | Supplemental MOTION for Attorney Fees *Supporting Doc. 107* with Brief In Support by Felicia A. Wilcox. (Attachments: # 1 Exhibit 1 Declaration of N. Henrichsen, # 2 Exhibit A CV to N Henrichsen Dec, # 3 Exhibit B Time Records, # 4 Exhibit 2 Declaration of S. Wolfe)(Henrichsen, Neil) (Entered: 09/23/2016) |
| 09/26/2016 | 117 | RESPONSE in Opposition re 112 MOTION to Alter 106 Clerk's Judgment, *(Rule 59)* MOTION for Judgment as a Matter of Law *(Rule 50) [Defendant's Rule 50/59 Motion]* filed by Felicia A. Wilcox. (Albee, Helen) (Entered: 09/26/2016) |
| 09/26/2016 | 118 | REPLY BRIEF re 107 MOTION for Attorney Fees filed by Felicia A. Wilcox. (Henrichsen, Neil) (Entered: 09/26/2016) |
| 09/27/2016 | | Submission of 112 MOTION to Alter 106 Clerk's Judgment, *(Rule 59)* MOTION for Judgment as a Matter of Law *(Rule 50) [Defendant's Rule 50/59 Motion]*, submitted to District Judge Orinda D. Evans. (fap) (Entered: 09/27/2016) |
| 10/03/2016 | 119 | RESPONSE in Opposition re 115 MOTION for Stay of Execution *(Motion for Stay of Execution of Judgment Pending Disposition of CCA's Post−Trial Motions)* filed by Felicia A. Wilcox. (Albee, Helen) (Entered: 10/03/2016) |
| 10/11/2016 | 120 | REPLY BRIEF re 112 MOTION to Alter 106 Clerk's Judgment, *(Rule 59)* MOTION for Judgment as a Matter of Law *(Rule 50) [Defendant's Rule 50/59* |

| | | |
|---|---|---|
| | | *Motion] (Reply in Support of Rule 50/59 Motion)* filed by Corrections Corporation of America. (Koenig, John) (Entered: 10/11/2016) |
| 10/11/2016 | 121 | RESPONSE in Opposition re 107 MOTION for Attorney Fees , 116 Supplemental MOTION for Attorney Fees *Supporting Doc. 107 (CCA's Response in Opposition to Motion for Attorneys' Fees)* filed by Corrections Corporation of America. (Koenig, John) (Entered: 10/11/2016) |
| 10/17/2016 | | Submission of 115 MOTION for Stay of Execution (Motion for Stay of Execution of Judgment Pending Disposition of CCA's Post−Trial Motions, 116 Supplemental MOTION for Attorney Fees Supporting Doc. 107, submitted to District Judge Orinda D. Evans. (fap) (Entered: 10/17/2016) |
| 10/17/2016 | 122 | REPLY BRIEF re 115 MOTION for Stay of Execution *(Motion for Stay of Execution of Judgment Pending Disposition of CCA's Post−Trial Motions) (CCA's Reply in Support of Its Motion for Stay of Execution of Judgment Pending Disposition of CCA's Post−Trial Motions)* filed by Corrections Corporation of America. (Koenig, John) (Entered: 10/17/2016) |
| 10/25/2016 | 123 | TRANSCRIPT of Proceedings held on 8/9/16 (Jury Trial) Vol. 1, before Judge Orinda D. Evans. Court Reporter/Transcriber Andy Ashley, Telephone number 404−215−1478. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/15/2016. Redacted Transcript Deadline set for 11/25/2016. Release of Transcript Restriction set for 1/23/2017. (Attachments: # 1 Notice of Filing Transcript) (pjm) (Entered: 10/25/2016) |
| 10/25/2016 | 124 | TRANSCRIPT of Proceedings held on 8/10/16 (Jury Trial) Vol. 2, before Judge Orinda D. Evans. Court Reporter/Transcriber Andy Ashley, Telephone number 404−215−1478. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/15/2016. Redacted Transcript Deadline set for 11/25/2016. Release of Transcript Restriction set for 1/23/2017. (Attachments: # 1 Notice of Filing Transcript) (pjm) (Entered: 10/25/2016) |
| 10/25/2016 | 125 | TRANSCRIPT of Proceedings held on 8/11/16 (Jury Trial) Vol. 3, before Judge Orinda D. Evans. Court Reporter/Transcriber Andy Ashley, Telephone number 404−215−1478. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/15/2016. Redacted Transcript Deadline set for 11/25/2016. Release of Transcript Restriction set for 1/23/2017. (Attachments: # 1 Notice of Filing Transcript) (pjm) (Entered: 10/25/2016) |
| 10/25/2016 | 126 | TRANSCRIPT of Proceedings held on 8/12/16 (Jury Trial) Vol. 4, before Judge Orinda D. Evans. Court Reporter/Transcriber Andy Ashley, Telephone number 404−215−1478. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/15/2016. Redacted Transcript Deadline set for 11/25/2016. Release of Transcript Restriction set for 1/23/2017. (Attachments: # 1 Notice of Filing Transcript) (pjm) (Entered: 10/25/2016) |
| 12/05/2016 | 127 | BILL OF COSTS *Amended* by Felicia A. Wilcox. (Attachments: # 1 Exhibit Amended Detail of Costs)(Henrichsen, Neil) (Entered: 12/05/2016) |
| 12/05/2016 | 128 | VACATED PER ODE CHAMBERS Costs Taxed in amount of $ 5,491.25 against Corrections Corporation of America. (bnw) Modified on 3/31/2017 to edit text per ODE Chambers (bnw). (Entered: 12/05/2016) |
| 12/20/2016 | 129 | APPLICATION for Writ of of Execution by Felicia A. Wilcox. (Attachments: # 1 Exhibit writ for Bank of America, # 2 Exhibit writ for Wells Fargo)(Henrichsen, Neil) (Entered: 12/20/2016) |

| | | |
|---|---|---|
| 12/23/2016 | 130 | NOTICE Of Filing Application for Writ by Corrections Corporation of America re 129 Application for Writ *(Response in Opposition to Plaintiff's Request for Writs of Garnishment After Judgment)* (Koenig, John) (Entered: 12/23/2016) |
| 12/29/2016 | | Submission of 129 Application for Writ to District Judge Orinda D. Evans. (bnw) (Entered: 12/29/2016) |
| 03/31/2017 | 131 | ORDER: Defendant Corrections Corporation of America's 112 Renewed Motion for Judgment as a Matter of Law or to Alter or Amend Judgment is GRANTED IN PART, and DISMISSED AS MOOT IN PART. Specifically, CCA's Renewed Motion for Judgment as a Matter of Law is GRANTED and CCA's Motion to Alter or Amend Judgment is DISMISSED AS MOOT. The Clerk is DIRECTED to enter judgment in favor of Defendant Corrections Corporation of America, costs taxed to Plaintiff. 107 Motion for Attorneys' Fees, 115 Motion for Stay of Execution 116 Motion for Attorneys' Fees, and 129 Application for Writ of Execution are all DISMISSED AS MOOT. See Order for more details. Signed by Judge Orinda D. Evans on 3/31/17. (bnw) (Entered: 03/31/2017) |
| 03/31/2017 | 132 | CLERK'S JUDGMENT in favor of Corrections Corporation of America against Felicia A. Wilcox. (bnw)--Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 03/31/2017) |
| 03/31/2017 | | Remark: 128 Costs Taxed **VACATED** per ODE Chambers. (bnw) (Entered: 03/31/2017) |
| 04/14/2017 | 133 | BILL OF COSTS by Corrections Corporation of America. (Attachments: # 1 Exhibit – Itemization In Support of Bill of Costs, # 2 Exhibit A1–1 through E–5 in Support of Bill of Costs)(Koenig, John) (Entered: 04/14/2017) |
| 04/27/2017 | 134 | NOTICE OF APPEAL as to 132 Clerk's Judgment, 131 Order on Motion for Attorney Fees, Order on Motion to Alter Judgment, Order on Motion for Judgment as a Matter of Law, Order on Motion for Stay of Execution,,,,,,,,,,,, by Felicia A. Wilcox. Filing fee $ 505, receipt number 113E–7115619. Transcript Order Form due on 5/11/2017 (Henrichsen, Neil) (Entered: 04/27/2017) |
| 04/27/2017 | 135 | NOTICE Of Filing of NOA Transmittal Letter re: 134 Notice of Appeal. (pjm) (Entered: 04/27/2017) |
| 04/27/2017 | 136 | Transmission of Certified Copy of Notice of Appeal, USCA Appeal Fees, Judgment, Order and Docket Sheet to US Court of Appeals re: 134 Notice of Appeal. (pjm) (Entered: 04/27/2017) |
| 05/01/2017 | 137 | USCA Acknowledgment of 134 Notice of Appeal, filed by Felicia A. Wilcox. Case Appealed to USCA– 11th Circuit. Case Number 17–11919–DD. (pjm) (Entered: 05/01/2017) |
| 05/05/2017 | 138 | Costs Taxed in amount of $ 9,482.79 against Plaintiff for Defendant. (bnw) ( # 1 Corrected Bill of Costs) (bnw). Modified on 5/5/2017 to add doc.(bnw). (Entered: 05/05/2017) |
| 05/05/2017 | | Notification of Docket Correction re 138 Costs Taxed: Corrected Costs Taxed attached. (bnw) (Entered: 05/05/2017) |
| 05/11/2017 | 139 | TRANSCRIPT ORDER FORM for proceedings held on August 9 through 12, 2016 before Judge Orinda D. Evans, re: 134 Notice of Appeal. Court Reporter: Andy Ashley. Financial Arrangements due 5/25/17. (Albee, Helen) Modified on 5/11/2017 to update text (pjm). (Entered: 05/11/2017) |
| 05/11/2017 | | Set Deadline re: 134 Notice of Appeal: Financial Arrangements due on 5/25/2017. (pjm) (Entered: 05/11/2017) |
| 05/22/2017 | 140 | Notification of Transcript(s) Filed in District Court re: 139 Transcript Order Form, filed by Felicia A. Wilcox. All transcripts for this request are on file. (pjm) (Entered: 05/22/2017) |

# TAB NO. 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **FELICIA A. WILCOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE** |
| | ) | **NO.:** |
| **CORRECTIONS CORPORATION OF** | ) | |
| **AMERICA A/K/A McRAE** | ) | |
| **CORRECTIONAL FACILITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COME NOW**, Plaintiff Felicia A. Wilcox, and submits her Complaint against Defendant Corrections Corporation of America a/k/a McRae Correctional Facility, (hereinafter referred to as the "Defendant") based on the following allegations:

### (Parties, Jurisdiction and Venue)

1.

This action is brought under the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.* (hereinafter "Title VII") seeking a remedy for race discrimination, sexual harassment and retaliation, as well as under 42 U.S.C. § 1981 seeking remedies for race discrimination and retaliation.

2.

Plaintiff is a resident of the State of Georgia at all times material to her employment with the Defendant.

3.

Defendant is foreign corporation doing business in the State of Georgia. Defendant can be served upon its registered agent for service of process, Corporation Process Company, 2180 Satellite Blvd., Suite 400, Duluth, Georgia 30097.

4.

Jurisdiction and venue are proper with this court.

**(Factual Allegations)**

5.

Defendant is a corporation and is engaged in the business of a corrections facility where inmates are detained.

6.

Plaintiff is an African-American female and former employee of Defendant.

7.

During the course of her employment, Plaintiff was subjected to different terms and conditions of employment than male employees, including excessive

scrutiny, disciplinary action for behavior which men or female white employees were not disciplined for, and receiving differential treatment for doing the same work as male employees and white female employees.

8.

Plaintiff was subjected to severe and pervasive sexual comments and propositions.  Plaintiff was touched in an inappropriate way and sexually harassed from Defendant's agent SGT Larry Jackson. (See Employee/Civilian- Incident Statement dated July 10, 2009 attached as Exhibit "A")

9.

Plaintiff complained to Warden Walt Wells about the sexual harassment she was enduring from SGT Larry Jackson.

10.

While an investigation was done, the Warden did not remove SGT Larry Jackson who continued to harass and taunt the Plaintiff.

11.

Plaintiff experienced a hostile work environment after SGT Larry Jackson was terminated.

12.

Plaintiff was harassed by her co-workers in retaliation for speaking out about being sexually harassed by a male employee.

13.

Plaintiff complained to Human Resources regarding different male supervisors harassing her, including Assistant Warden Gunn, who threw a basket at the Plaintiff and he was not disciplined for his actions.

14.

Plaintiff was constantly called racist names such as kid, goat and child by Chief Spires.  Chief Spires told the Plaintiff "I can't help it I'm a redneck."

15.

Plaintiff was also threatened by a maintenance employee who broke a wooden handle and approached the Plaintiff in an attempt to hit her.

16.

Plaintiff reported the incident to the Assistant Warden and requested that the tape be pulled to validate the incident that happened. (See Incident Report dated May 17, 2010 attached as Exhibit "B").

17.

Defendant allowed the maintenance employee to continue working and the employee was not disciplined.

18.

Defendant did not investigate the incident in question.

19.

Plaintiff feared for her safety and reported the incident to the McRae Police Department. (See Incident Report dated May 17, 2010 attached as Exhibit "C").

20.

Plaintiff was suspended pending an investigation.

21.

Defendant completed their investigations and terminated Plaintiff in retaliation for her complaints.

22.

Plaintiff filed charges of sexual harassment and retaliation with the Equal Employment Opportunity Commission (EEOC) within 180 days of their termination and have filed this lawsuit within 90 days from the date she received the Notice of Right to Sue from the EEOC.  Attached as Exhibit "D" is Plaintiff's Charge of Discrimination.

## COUNT I
## SEXUAL HARASSMENT AND RETALIATION – TITLE VII

23.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

24.

At all times relevant Defendant is and was engaged in an industry affecting commerce and has employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and are subject to the provisions of Title VII.

25.

At all times relevant Defendant is and was an "employer" as defined in § 701(b) of the Civil Rights Act of 1964.

26.

Defendant sexually harassed, retaliated and terminated Plaintiff in violation of Title VII.

27.

Defendant further violated Plaintiff's federally protected rights by retaliating against the Plaintiff.

28.

The above described discrimination and sexual harassment placed stress and humiliation on Plaintiff not endured by her male co-workers.

29.

All jurisdictional prerequisites to the initiation of a suit under Title VII have been fulfilled.

30.

Defendant's actions were conducted with malice and reckless disregard of the Plaintiff's federal civil rights.

31.

At the time of the discriminatory acts alleged Defendant knew or should have known that the means utilized to discriminate against Plaintiff were discriminatory and forbidden by law.

32.

Defendant performed the above described discriminatory actions willfully, wantonly, intentionally and in reckless and callous disregard of Plaintiff's federally protected rights.

**COUNT II**
**RACE DISCRIMINATION, RETALIATION & TITLE VII**
**(42 U.S.C. § 1981)**

33.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

34.

Plaintiff is black and was harassed, terminated and retaliated against by the Defendant.

35.

Defendant discriminated against Plaintiff on the basis of her race in violation of § 1981and Title VII.

36.

Defendant retaliated against the Plaintiff for engaging in protected activity in violation of § 1981 and Title VII.

37.

Defendant's treatment of Plaintiff was motivated by and because of Plaintiff's racial characteristics which amounts to race discrimination and retaliation.

38.

Defendant's actions injured Plaintiff and caused damages including but not limited to loss of income, loss of promotions, lost employment and emotional distress flowing from Defendant's illegal actions.

**WHEREFORE,** Plaintiff respectfully prays for judgment against Defendant as follows:

A.    Defendant be ordered to reinstate Plaintiff as an employees;

B.    Defendant be ordered to pay Plaintiff back pay in an amount to compensate Plaintiff for lost wages;

C.     Defendant be enjoined from discriminating against Plaintiff on the basis of her sex and her discrimination charges or otherwise;

D.     Defendant be enjoined from discriminating against Plaintiff on the basis of her race;

E.     Plaintiff be awarded compensatory damages to compensate for emotional distress associated with her discriminatory treatment;

F.     Plaintiff recover reasonable attorneys' fees including litigation expenses and costs;

G.     Plaintiff recover interest on the back pay at the legal rate; and

H.     Such other relief as the Court deems proper and just.

## **JURY DEMAND**

Plaintiffs herein request trial by jury of all issues in this action.

This 15th day of December, 2011.


**PANKEY & HORLOCK, LLC**


By:   /s/Larry A. Pankey
          Larry A. Pankey
          Georgia Bar No. 560725
          Attorneys for Plaintiff

4360 Chamblee Dunwoody Road
Suite 500
Atlanta, Georgia 30331
770-670-6250
770-670-6249 (Fax)

# EMPLOYEE/CIVILIAN-INCIDENT STATEMENT

| Facility Name | McRae Correctional Facility | Incident Number | |
|---|---|---|---|
| Incident Time (HRS) | 0825 | Incident Date | 07-10-09 |

**Printed Name (First/Last):** Felecia Wilcox

[✓] Employee  **OR**  [ ] Civilian  (Check One)    [ ] Witness  **OR**  [✓] Participant  (Check One)

**BASED ON YOUR OWN KNOWLEDGE, WHAT DID YOU SEE, HEAR, AND DO?**
(Attach additional pages if necessary)

I office F. Wilcox was exiting Captain office from staff meeting, when Sgt. Larry Jackson slapped me on my Butts twice in the presence of officer Rosa McRae and Sgt. Chris Sammons.

**Did you receive any injuries?**  [ ] YES  [✓] NO  [ ] NA  (If Yes, list below)

**Were you evaluated by medical?**  [ ] YES  [✓] NO  [ ] NA

| SIGNATURE: | Felecia Wilcox | DATE: | 07-10-09 |
|---|---|---|---|
| Typed By: | | Date: | |

**This section to be completed by CCA staff if the civilian refuses to complete the 5-1C:**

[ ] Civilian refused to complete this 5-1C

| Employee/Witness Printed Name | Employee/Witness Signature | Date |
|---|---|---|
| | | |
| | | |

**EXHIBIT A**

PRIVILEGED AND CONFIDENTIAL
CORRECTIONS CORPORATIONS OF AMERICA
PROPRIETARY INFORMATION - NOT FOR DISTRIBUTION - COPYRIGHTED

# EMPLOYEE/CIVILIAN INCIDENT STATEMENT

| | | | |
|---|---|---|---|
| **Facility Name** | McRae Correctional Facility | **Incident Number** | |
| **Incident Time (HRS)** | 1056 | **Incident Date** | 05-17-10 |
| **Printed Name (First/Last)** | Felecia Wilcox | | |

☑ Employee **OR** ☐ Civilian (Check One)       ☐ Witness **OR** ☐ Participant (Check One)

**BASED ON YOUR OWN KNOWLEDGE, WHAT DID YOU SEE, HEAR, AND DO?**
(Attach additional pages if necessary)

I WAS sitting on the bench in the Education Deptment, when maintenance Ricky Hall entered holding a broken 2 feet long (6 inches round broken handle in his hand alongside of his leg) As Mr. Hall approached me looking me, eye to eye, he raised the broken handle, taunting it at me in a back and forth motion, with the intent of hitting me. I responded, hit me, if that's what you want to do. I stated I was just going to lay down, just call 911. At the time I'm saying these things to Mr. Hall, he responed by just taunting motions with the broken handle. I told Mr. Hall that I was going to tell on him and left. I reported the incident to AIW Gunn and requested that Video tape be reviewed. Tape reviewed by Maintenance Superisor Daniels, AIW Gunn, Unit Manager Thompson and myself. I fear for my life, having to work in a hostile Environment.

ENd of StAtement

**Did you receive any injuries?**  ☐ YES  ☑ NO  ☐ NA       (If Yes, list below)

**Were you evaluated by medical?**  ☐ YES  ☑ NO  ☐ NA

| **SIGNATURE:** | Felecia Wilcox | **DATE:** | 05-17-10 |
|---|---|---|---|
| **Typed By:** | | **Date:** | |

**This section to be completed by CCA staff if the civilian refuses to complete the 5-1C:**

☐ Civilian refused to complete this 5-1C

| Employee/Witness Printed Name | Employee/Witness Signature | Date |
|---|---|---|
| | | |
| | | |

PRIVILEGED AND CONFIDENTIAL
CORRECTIONS CORPORATIONS OF AMERICA
PROPRIETARY INFORMATION - NOT FOR DISTRIBUTION - COPYRIGHTED

**EXHIBIT B**

# Incident Report

| | Incident No. |
|---|---|
| | **05-095-2010** |

| Incident Type | | | Counts | Code | Attempt |
|---|---|---|---|---|---|
| **TERRORISTIC THREATS** | | | 1 | **16-11-37** | ☐ |

| Primary Location: | Secondary Location: |
|---|---|
| **JIM HAMMOCK DR.** | |

| City | State | Zip | County | |
|---|---|---|---|---|
| **MCRAE** | **GA** | **31055** | **TELFAIR** | |

| Zone | Sub Zone | Location | Sub Location | Business Name: |
|---|---|---|---|---|
| | | | | **MCRAE CORRECTIONAL CORPS OF AMERI** |

| Incident Date | Time | Date | Time | Report Date | Time | Stranger | Weapon Type | Premise |
|---|---|---|---|---|---|---|---|---|
| **05/17/2010** | **10:45** | **To 05/17/2010** | **11:00** | **05/18/2010** | **14:36** | **No** | **OTHER** | **OTHER** |

| Case Type | Case Status |
|---|---|
| **CIVIL COMPLAINT** | **ACTIVE** |

## Complainant

| Seq. No. | Name: (Last, First, Middle) | | Home Phone | Work Phone | Other Phone |
|---|---|---|---|---|---|
| 1 | **WILCOX FELICIA A** | | **(912)363-8337** | | |

| Address | | | SSN |
|---|---|---|---|
| **31** | **HELEN LN** | **LUMBER CITY , GA 31549** | **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** |

| Race | Sex | Date of Birth | Age | Employer | School |
|---|---|---|---|---|---|
| **BLACK** | **F** | **1966** | **43** | | |

| Height | Weight | Hair | Eyes |
|---|---|---|---|
| | | | |

## Offender

| Seq. No. | Name: (Last, First, Middle) | | Home Phone | Work Phone | Other Phone |
|---|---|---|---|---|---|
| 1 | **HALL RICKY COLUMBUS** | | | | |

| Address | | | SSN |
|---|---|---|---|
| **40** | **VIOLET CR.** | **HAZELHURST , GA 31539** | |

| Race | Sex | Date of Birth | Age | Employer | School |
|---|---|---|---|---|---|
| **WHITE** | **M** | **1955/** | **54** | | |

| Height | Weight | Hair | Eyes | | |
|---|---|---|---|---|---|
| **5'09"** | **205** | **BROWN** | **BLUE** | ☐ Suspect  ☐ Juvenile  ☐ War. App. ☐  **Arrest** | Arrest Date |
| | | | | ☐ Primary Aggressor  ☐ Warrant  ☐  **Juv. Arrest** | |

| Court Name |
|---|
| |

| GCIC Entry | ☐ Requested ☐ Warrant ☐ Missing Person ☐ Vehicle ☐ Article ☐ Boat ☐ Gun ☐ Securities |
|---|---|
| Additional | ☐ A & B ☐ Supplemental ☐ Citation ☐ Accident ☐ Victim Bill of Rights ☐ Vehicle Impound ☐ Inv. Rpt ☐ Evidence Form |
| Clearance | **Active**    Clearance Date: |

## Narrative

Complainant states she was threatened by another at her place of employment.

| Reporting Officer | Badge | Suffix | Signature |
|---|---|---|---|
| **PFC. M. S HOOKS** | **010** | **01** | |
| Approving Officer | Badge | Suffix | Signature |
| **CHIEF KEN P WILCOX** | **09** | | *Ken P. Wilcox 05-8* |

**EXHIBIT C**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 415-2010-00249 |

and EEOC

_____
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mrs. Felecia Wilcox** | **(912) 363-8337** | **08-30-1966** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Post Office Box 928, Lumber City, GA 31549** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **MCRAE CORRECTIONAL FACILITY** | **500 or more** | **(229) 868-7778** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1000 Jim Hammrock Drive, McRae, GA 31055** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **07-10-2009**   Latest **02-05-2010**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**THIS PERFECTS MY ORIGINAL CORRESPONDENCE WHICH WAS TIMELY RECEIVED BY THE COMMISSION ON DECEMBER 16, 2009.**

I.    I was hired in April 2004, as a Correctional Officer and this was my last held position. On July 10, 2009, I filed a sexual harassment complaint against SGT Larry Jackson with the company. Since this time I have been subjected to harassment and retaliation in regards to 1) management listening to my complaint, but not adhering to policy and procedures and 2) I am not being backed up regarding inmate complaints and the last occurrence was on February 5, 2010.

II.   No reason was given for the disparate treatment and sexual harassment.

III.  I believe I have been discriminated against because of my race (African American/Black), sex (female) and retaliation (due to complaints) in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

03-15-10   *Felecia Wilcox*
Date    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
03-15-2010

THERESA McRAE JACKSON
NOTARY PUBLIC
GEORGIA
EXPIRES APR. 15, 2012
TELFAIR COUNTY

**EXHIBIT D**

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Felicia Wilcox

## DEFENDANTS
Corrections Corporation of America a/k/a McRae Correctional Facility

**(b)** County of Residence of First Listed Plaintiff    Telfair
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Gwinnett
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Larry A. Pankey, Esq.
Pankey & Horlock, LLC 4360 Chamblee Dunwoody Road, Ste. 500
Atlanta, Georgia 30341 - 770-670-6250

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|                                      | PTF | DEF |                                                        | PTF | DEF |
|--------------------------------------|-----|-----|--------------------------------------------------------|-----|-----|
| Citizen of This State                | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State             | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                      | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

Brief description of cause:
Sexual Harassment and Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE ___   DOCKET NUMBER ___

DATE
12/15/2011

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # ___   AMOUNT ___   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

JS 44 Reverse (Rev. 09/11)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                        Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# TAB NO. 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FELICIA A. WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO.:  1:11-cv-4365-ODE-CCH |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA A/K/A McRAE | ) | |
| CORRECTIONAL FACILITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO COMPLAINT

Defendant Corrections Corporation of America a/k/a McRae Correctional Facility ("CCA" or "Defendant"), by counsel, hereby answers Plaintiff's Complaint.  Defendant notes that for ease of reference, Plaintiff's Complaint allegations are set forth verbatim, with Defendant's responses following each allegation.

### (Parties, Jurisdiction and Venue)

1.    This action is brought under the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq*. (hereinafter "Title VII") seeking a remedy for race discrimination, sexual harassment and retaliation,

as well as under 42 U.S.C. § 1981 seeking remedies for race discrimination and retaliation.

ANSWER:  CCA admits that Plaintiff brings this lawsuit under the statutes cited in Paragraph 1 of Plaintiff's Complaint, but denies violating any of the statutes cited.  Defendant denies any remaining allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.     Plaintiff is a resident of the State of Georgia at all times material to her employment with the Defendant.

ANSWER:  CCA is without information or knowledge sufficient to form a belief as to the allegations contained in Paragraph 2 of Plaintiff's Complaint and therefore denies same.

3.     Defendant is foreign corporation doing business in the State of Georgia.  Defendant can be served upon its registered agent for service of process, Corporation Process Company, 2180 Satellite Blvd., Suite 400, Duluth, Georgia 30097.

ANSWER: CCA admits the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      Jurisdiction and venue are proper with this court.

ANSWER:  CCA  admits  the  allegations  contained  in  Paragraph  4  of
Plaintiff's Complaint.


**(Factual Allegations)**

5.      Defendant  is  a  corporation  and  is  engaged  in  the  business  of  a
corrections facility where inmates are detained.

ANSWER:  CCA  admits  the  allegations  contained  in  Paragraph  5  of
Plaintiff's Complaint, except to note that the facility at issue is a detention facility,
not a corrections facility.


6.      Plaintiff  is  an  African-American  female  and  former  employee  of
Defendant.

ANSWER:  CCA  admits  the  allegations  contained  in  Paragraph  6  of
Plaintiff's Complaint.


7.      During  the  course  of  her  employment,  Plaintiff  was  subjected  to
different terms and conditions of employment than male employees, including
excessive scrutiny, disciplinary action for behavior which men or female white

employees were not disciplined for, and receiving differential treatment for doing the same work as male employees and white female employees.

ANSWER: CCA denies the allegations contained in Paragraph 7 of Plaintiff's Complaint.

8.    Plaintiff was subjected to severe and pervasive sexual comments and propositions.  Plaintiff was touched in an inappropriate way and sexually harassed from Defendant's agent SGT Larry Jackson.  (See Employee/Civilian- Incident Statement dated July 10, 2009 attached as Exhibit "A") [sic]

ANSWER: CCA denies the allegations contained in Paragraph 8 of Plaintiff's Complaint.

9.    Plaintiff complained to Warden Walt Wells about the sexual harassment she was enduring from SGT Larry Jackson.

ANSWER: CCA admits that Plaintiff voiced certain concerns to Warden Walt Wells in regard to Larry Jackson.  CCA denies any remaining allegation contained in Paragraph 9 of the Plaintiff's Complaint.

10.    While an investigation was done, the Warden did not remove SGT Larry Jackson who continued to harass and taunt the Plaintiff.

ANSWER:  CCA is without information or knowledge sufficient to form a belief in regard to Plaintiff's assertions of Larry Jackson's actions.  CCA denies the remaining allegations contained in the foregoing.

11.    Plaintiff experienced a hostile work environment after SGT Larry Jackson was terminated.

ANSWER:  CCA denies the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.    Plaintiff was harassed by her co-workers in retaliation for speaking out about being sexually harassed by a male employee.

ANSWER:  CCA denies the allegations contained in Paragraph 12 of Plaintiff's Complaint.

13.    Plaintiff complained to Human Resources regarding different male supervisors harassing her, including Assistant Warden Gunn, who threw a basket at the Plaintiff and he was not disciplined for his actions.

ANSWER:   CCA admits that Plaintiff made various complaints to the Human Resources Department regarding the alleged actions of other employees at CCA.  CCA denies that Assistant Warden Gunn threw a basket at Plaintiff.  CCA denies the remaining allegations contained in Paragraph 13 of the Plaintiff's Complaint.

14.    Plaintiff was constantly called racist names such as kid, goat and child by Chief Spires.  Chief Spires told the Plaintiff "I can't help it I'm a redneck."

ANSWER:   CCA denies that the words listed by Plaintiff in Paragraph 14 of Plaintiff's Complaint are "racist" and otherwise denies the allegations contained in Paragraph 14 of Plaintiff's Complaint.

15.     Plaintiff was also threatened by a maintenance employee who broke a wooden handle and approached the Plaintiff in an attempt to hit her.

ANSWER:  CCA denies the allegations contained in Paragraph 15 of Plaintiff's Complaint.

16.     Plaintiff reported the incident to the Assistant Warden and requested that the tape be pulled to validate the incident that happened.  (See Incident Report dated May 17, 2010 attached as Exhibit "B").

ANSWER:  CCA admits that Plaintiff made a complaint regarding a maintenance worker and requested that the videotape be reviewed.  CCA denies the remaining allegations contained in Paragraph 16 of the Plaintiff's Complaint.

17.     Defendant allowed the maintenance employee to continue working and the employee was not disciplined.

ANSWER:  CCA admits that the maintenance employee continued his employment with CCA and was not disciplined in regard to Plaintiff's allegations against him.  CCA denies any remaining allegations contained in Paragraph 17 of the Plaintiff's Complaint.

7

18.     Defendant did not investigate the incident in question.

ANSWER:  CCA denies the allegations contained in Paragraph 18 of the Plaintiff's Complaint.


19.     Plaintiff feared for her safety and reported the incident to the McRae Police Department.  (See Incident Report dated May 17, 2010 attached as Exhibit "C").

ANSWER:  CCA is without information or knowledge sufficient to form a belief as to Plaintiff's alleged mental state and therefore denies same.  CCA admits that Plaintiff has attached to her Complaint as Exhibit C an incident report from the McRae Police Department which alleges "terroristic threats."  CCA denies any remaining allegations contained in Paragraph 19 of the Plaintiff's Complaint.


20.     Plaintiff was suspended pending an investigation.

ANSWER:  CCA admits the allegations contained in Paragraph 20 of the Plaintiff's Complaint.

21.    Defendant completed their investigations and terminated Plaintiff in retaliation for her complaints.

ANSWER:  CCA denies the allegations contained in Paragraph 21 of Plaintiff's Complaint.

22.    Plaintiff filed charges of sexual harassment and retaliation with the Equal Employment Opportunity Commission (EEOC) within 180 days of their [sic] termination and have [sic] filed this lawsuit within 90 days from the date she received the Notice of Right to Sue from the EEOC.  Attached as Exhibit "D" is Plaintiff's Charge of Discrimination.

ANSWER:  CCA is without information or knowledge sufficient to form a belief as to the allegations contained in Paragraph 22 of Plaintiff's Complaint and therefore denies same.

**COUNT I**
**SEXUAL HARASSMENT AND RETALIATION – TITLE VII**

23.    Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

ANSWER:  CCA incorporates by reference its answers, admissions, and denials contained in Paragraphs 1 through 22 as if set forth fully herein.

24.     At all times relevant Defendant is and was engaged in an industry affecting commerce and has employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and are subject to the provisions of Title VII.

ANSWER: CCA admits the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.     At all times relevant Defendant is and was an "employer" as defined in § 701(b) of the Civil Rights Act of 1964.

ANSWER: CCA admits the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.     Defendant sexually harassed, retaliated and terminated Plaintiff in violation of Title VII.

ANSWER: CCA denies the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     Defendant further violated Plaintiff's federally protected rights by retaliating against the Plaintiff.

ANSWER:  CCA denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.     The above described discrimination and sexual harassment placed stress and humiliation on Plaintiff not endured by her male co-workers.

ANSWER:  CCA denies the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.     All jurisdictional prerequisites to the initiation of a suit under Title VII have been fulfilled.

ANSWER:  CCA is without information or knowledge sufficient to form a belief as to the allegations contained in Paragraph 29 of Plaintiff's Complaint and therefore denies same.

30.     Defendant's actions were conducted with malice and reckless disregard of the Plaintiff's federal civil rights.

ANSWER:  CCA denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.    At the time of the discriminatory acts alleged Defendant knew or should have known that the means utilized to discriminate against Plaintiff were discriminatory and forbidden by law.

ANSWER:  CCA denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.    Defendant performed the above described discriminatory actions willfully, wantonly, intentionally and in reckless and callous disregard of Plaintiff's federally protected rights.

ANSWER:  CCA denies the allegations contained in Paragraph 32 of Plaintiff's Complaint.

**COUNT II**
**RACE DISCRIMINATION, RETALIATION & TITLE VII**
**(42 U.S.C. 1981)**

33.    Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

ANSWER:  CCA incorporates by reference its answers, admissions, and denials contained in Paragraphs 1 through 32 as if set forth fully herein.

34.    Plaintiff is black and was harassed, terminated and retaliated against by the Defendant.

ANSWER:  CCA admits that Plaintiff is African American, but denies the remaining allegations contained in Paragraph 34 of Plaintiff's Complaint.

35.    Defendant discriminated against Plaintiff on the basis of her race in violation of § 198l and Title VII.

ANSWER:  CCA denies the allegations contained in Paragraph 35 of Plaintiff's Complaint.

36.    Defendant retaliated against the Plaintiff for engaging in protected activity in violation of § 1981 and Title VII.

ANSWER:  CCA denies the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.    Defendant's treatment of Plaintiff was motivated by and because of Plaintiff's racial characteristics which amounts to race discrimination and retaliation.

ANSWER:  CCA denies the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.    Defendant's actions injured Plaintiff and caused damages including but not limited to loss of income, loss of promotions, lost employment and emotional distress flowing from Defendant's illegal actions.

ANSWER:  CCA denies the allegations contained in Paragraph 38 of Plaintiff's Complaint.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A.    Defendant be ordered to reinstate Plaintiff as an employees [sic];

B.    Defendant be ordered to pay Plaintiff back pay in an amount to compensate Plaintiff for lost wages;

C.    Defendant be enjoined from discriminating against Plaintiff on the basis of her sex and her discrimination charges or otherwise;

D.    Defendant be enjoined from discriminating against Plaintiff on the basis of her race;

E.    Plaintiff be awarded compensatory damages to compensate for emotional distress associated with her discriminatory treatment;

F.    Plaintiff recover reasonable attorneys' fees including litigation expenses and costs;

G.    Plaintiff recover interest on the back pay at the legal rate; and

H.    Such other relief as the Court deems proper and just.

ANSWER:  CCA denies that Plaintiff is entitled to judgment in her favor or any of the relief enumerated in the foregoing paragraph.

## JURY DEMAND

Plaintiffs [sic] herein request [sic] trial by jury of all issues in this action.

ANSWER:  CCA admits that Plaintiff has requested a jury trial.  Whether Plaintiff is entitled to a jury trial is a question of law to which no responsive pleading is required.  Answering further, CCA specifically objects to Plaintiff's jury request to the extent Plaintiff's claims are equitable or otherwise not properly heard by a jury.  CCA denies any remaining allegations set forth in the foregoing paragraph.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.    To the extent that an answer or response may be required which is not set forth herein, Defendant generally denies any allegations contained within Plaintiff's Complaint not expressly admitted.

2.    Plaintiff has failed to state a claim upon which relief may be granted.

3.     Subject to a reasonable opportunity for investigation and discovery, Plaintiff has failed to mitigate her damages.

4.     Subject to a reasonable opportunity for investigation and discovery, Plaintiff's remedies may be barred or limited by the doctrine of after-acquired evidence.

5.     CCA at all times exercised good faith in its employment practices with respect to Plaintiff.

6.     Some or all of Plaintiff's requested relief may not be available, given the nature of Plaintiff's claims.

7.     CCA's actions as they related to Plaintiff were based on legitimate, nondiscriminatory business reasons not related to any protected activity or any unlawful basis.

8.     Plaintiff's request for damages may be barred or limited by the U.S. Constitution, the remedies available under Title VII, and other applicable statutes and the Georgia Constitution.

9.     CCA has fulfilled any and all obligations owed to Plaintiff under Title VII.

10.     Subject to a reasonable opportunity for investigation and discovery, Plaintiff's Complaint is barred or limited by Plaintiff's failure to exhaust or timely

exhaust administrative remedies and/or to the extent the allegations in her Complaint are beyond the scope of her administrative charge.

11.     Subject to a reasonable opportunity for investigation and discovery, some or all of Plaintiff's claims or allegations are barred by the applicable statute of limitations.

12.     CCA exercised reasonable care to prevent and promptly correct inappropriate or unlawful conduct by establishing and publishing effective policies and complaint procedures for its employees, and Plaintiff unreasonably failed to take advantage of those policies and procedures.

13.     CCA reserves the right to amend its Defenses as the course of discovery warrants.

WHEREFORE, CCA respectfully requests that the Court enter judgment in its favor, and against Plaintiff, that Plaintiff take nothing by way of her Complaint, that costs be assessed against Plaintiff, and that CCA be awarded all appropriate relief.

Respectfully submitted,

/s/ John T.L. Koenig
John T.L. Koenig
Georgia Bar No. 268782

17

BARNES & THORNBURG LLP
Prominence in Buckhead, Suite 1700
3475 Piedmont Road, N.E.
Atlanta, GA  30305
Telephone:  (404) 264-4018
Facsimile:   (404) 264-4033
E-mail:       John.Koenig@btlaw.com

*Attorney for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing has been prepared in Times New Roman

14 point font and is in compliance with United States District Court, Northern

District of Georgia Local Rule 5.1.

<div style="text-align:right">

/s/ John T.L. Koenig<br>
John T.L. Koenig<br>
Georgia Bar No. 268782

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 26th day of March, 2012, a copy of the foregoing

***Answer to Complaint*** was filed electronically and will be served by electronic

notice via the Court's CM/ECF system to the following counsel of record:

<div align="center">

Larry A. Pankey, Esq.
PANKEY & HORLOCK, LLC
4360 Chamblee Dunwoody Road
Suite 500
Atlanta, GA  30341
lpankey@pankeyhorlock.com

</div>

/s/ John T.L. Koenig
John T.L. Koenig
Georgia Bar No. 268782

ATDS01 JKOENIG 174427v1

# TAB NO. 98

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| FELECIA A. WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 1:11-CV-04365-ODE-CCH |
| | ) | |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA A/K/A McRAE | ) | |
| CORRECTIONAL FACILITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S FED.R.CIV.P. 50 MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Corrections Corporation of America ("Defendant") moves this

Court, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, for judgment

as a matter of law on Plaintiff's sexual harassment claim.    In support of this

motion, Defendant files its separate Brief in Support.

Respectfully submitted,

*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782
BARNES & THORNBURG LLP
Prominence in Buckhead, Suite 1700
3475 Piedmont Road, N.E.
Atlanta, GA 30305
Telephone: (404) 264-4018
Facsimile: (404) 264-4033

1

E-mail: John.Koenig@btlaw.com

Adam L. Bartrom
     *Pro Hac Vice Admission*
BARNES & THORNBURG LLP
110 E. Wayne, Street, Suite 600
Fort Wayne, Indiana 46802
Telephone:   (260) 423-9440
Facsimile:    (260) 424-8316
Email:   adam.bartrom@btlaw.com

*Attorney for Defendant, Corrections*
*Corporation of America a/k/a McRae*
*Correctional Facility*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August, 2016, a copy of the foregoing was filed electronically and will be served by electronic notice via the Court's CM/ECF system to the following counsel of record:

Helen H. Albee, Esquire
Neil L. Henrichsen, Esquire
HENRICHSEN SEIGEL, PLLC
1648 Osceola Street
Jacksonville, FL 32204

David Gan-wing Cheng
The Law Office of David Cheng, Ltd.
1801 Peachtree Road, NW
Suite 100
Atlanta, GA 30309
david@consideringdavidcheng.com


*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782

DMS 4250883v1

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FELECIA A. WILCOX,                )
                                  )
    Plaintiff,                )
                                  )
v.                                )      CIVIL ACTION NO.:
                                  )      1:11-CV-04365-ODE-CCH
                                  )
CORRECTIONS CORPORATION           )
OF AMERICA A/K/A McRAE            )
CORRECTIONAL FACILITY,            )
                                  )
    Defendant.                )
_____)

## DEFENDANT'S BRIEF IN SUPPORT OF ITS FED.R.CIV.P. 50 MOTION
## FOR JUDGMENT AS A MATTER OF LAW

Defendant Corrections Corporation of America ("Defendant") respectfully submits this brief in support of its Motion for Judgment as a Matter of Law filed pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, for judgment as a matter of law on Plaintiff's sexual harassment claim.

## I.     Introduction

Where a party has presented its case and there is insufficient evidence for a reasonable jury to find for the party, the Court should find against it and dismiss the claim. *See*, Fed. R. Civ. P. 50. Here, Plaintiff Felicia Wilcox has failed to introduce sufficient evidence to establish several required factors necessary to support her sexual harassment claim under Title VII of the Civil Rights Act. ***First***,

1

the unrebutted evidence demonstrates that Sergeant Larry Jackson is a co-worker, not a supervisor, under recent United States Supreme Court authority.  ***Second***, because Mr. Jackson is a co-worker, CCA can only be liable for alleged acts about which CCA knew, or should have known.  ***Third,*** it is undisputed that Wilcox failed to submit *any* evidence that she reported an allegation of unwelcomed hugs from co-worker Jackson therefore CCA cannot be liable for the allegation of unwelcome hugs as a matter of law.  ***Finally***, without the allegation of hugs, Wilcox only has allegations of two isolated comments and two touches which cannot, as a matter of law, reach the "high hurdle" of the fourth prong of a sexual harassment claim – severe or pervasive harassment that materially alters a term of employment – therefore Wilcox's sexual harassment claim fails as a matter of law.

Accordingly, CCA is entitled to judgment as a matter of law on Wilcox's sexual harassment claim – the only claim before the Court.

## II.    Procedural Background

This Court granted summary judgment to CCA based upon the holding that Wilcox could not establish the "severe or pervasive" prong of the *prima facie* claim of sexual harassment.  Specifically, this Court found that:

(1) the alleged hugs were not based upon sex and Wilcox was not subjectively offended by the alleged hugs [Dkt. #54, pp. 34-35];

(2)  the two alleged touches, "***though decidedly lacking in decorum, do not clear the high hurdle of either severe or pervasive conduct sufficient to alter the terms or conditions of Plaintiff's employment.***"  [Dkt. #54, p. 33 (emphasis added)].

(3)  The two alleged comments over a six month period – "**[c]***ourts have consistently held that sporadic or isolated comments, however vulgar, are not enough to establish a hostile work environment.*"  [Dkt. #54, pp. 32-33 (emphasis added)].

On appeal to the 11th Circuit Court of Appeals, the entry of summary judgment on Wilcox's summary judgment complaint was overturned based upon the frequency of the allegations of unwelcomed hugs by Mr. Jackson.  *Wilcox v. CCA,* No. 14-11258, p. 7 (11th Cir., March 11, 2015).  Specifically, the 11th Circuit fixated on the allegation of daily unwelcomed hugs:

> Instead, her deposition and affidavit describe harassment that a reasonable jury could conclude was severe or pervasive, ***including daily unwanted physical contact over a period of months***, two additional attempts to touch her thighs and buttocks, and two expressly sexual comments.

[*Id.* (emphasis added)].  The only two cases that the 11th Circuit went onto to cite were instances of either daily harassment or fifteen instances of harassment in four months).  [*Id.* at p. 8].

3

### III.   Argument

To establish a *prima facie* case for a Title VII claim for hostile work environment based on sexual harassment, a plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there is a basis for holding the employer liable for the harassment either directly or indirectly.  [Dkt. #54, p. 29].  In particular, for instances of alleged co-worker harassment, Wilcox must establish that "CCA knew, or in the exercise of reasonable care should have known, about the hostile work environment."  *See* 11th Circuit Court of Appeals Pattern Jury Instruction 4.7.

The evidence at trial in the Plaintiff's case in chief has demonstrated that the sole basis for Wilcox's remaining claim before the Court is the allegation that she was sexually harassment by her co-worker Larry Jackson when he allegedly: (1) slapped her butt twice; (2) touched her thigh; (3) made an off-color comment about his female friend; (4) made a comment about Wilcox's thighs; and (5) hugged Wilcox on a regular basis.  As demonstrated below, Wilcox cannot assert her allegations of unwelcomed hugs by a co-worker because she failed to report them to CCA which means that CCA cannot be liable for these alleged hugs as a matter of law.

4

**A.** **No Reasonable Jury Could Find that Jackson is a Supervisor under the Supreme Court's Decision in *Vance*.**

In *Vance v. Ball State University*, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013) the United States Supreme Court narrowed the definition of who constitutes a "supervisor" for purposes of Title VII.  In *Vance,* the Court held that, for purposes of the Faragher-Ellerth defense, a supervisor is someone with the authority to take tangible employment actions against the plaintiff.  *Id.* at 2439; *see also Anderson v. Brown Indus*., 614 Fed. Appx. 415, 417 (11th Cir. 2015).  In *Vance,* the Court held that in order to be a "supervisor", an employee must have the power to effect "*significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits*"  *Vance,* 133 S.Ct. at 2443 (emphasis added) (quoting Ellerth, 524 U.S. at 761)).

In his trial testimony, former Warden Walter Wells testified that Jackson did not have authority to take any tangible employment action against Wilcox or any employees.  Specifically, Mr. Wells testified that Jackson did not have the authority to do any of the following:

- Hire employees
- Fire employees
- Transfer employees
- Promote employees
- Demote employees
- Cut pay of employees

5

- Assign overtime of employees
- Reassign post assignments of employees
- Issue formal discipline of employees

Mr. Wells, the Warden at the time of Wilcox's allegations, specifically testified Jackson could not do any of those things against Wilcox. **_Therefore,_** Jackson cannot be a supervisor under the Supreme Court's decision in *Vance*.

## B.   CCA Can Only Be Liable, As a Matter of Law, For Allegations About Which CCA Knew or Should have Known.

Because Mr. Jackson is not a supervisor, Wilcox must proceed under the co-worker standard which states that Wilcox must establish that "CCA knew, or in the exercise of reasonable care should have known, about the hostile work environment." *See* 11th Circuit Court of Appeals Pattern Jury Instruction 4.7.

## C.   It Is Undisputed That Wilcox Did Not Report The Hug Allegations To CCA Therefore There Cannot Be Liability for the Hugs as a Matter of Law.

The following is undisputed based upon the trial testimony in Wilcox's case in chief:

- Neither Wilcox nor any of her witnesses provided evidence that Wilcox reported the hugs allegation to CCA (until her deposition 4 years after Jackson's termination);

- Walt Wells testified that no allegation of hugs was made to CCA by Wilcox;

- Kenya Golden testified that no allegation of hugs was made to CCA by Wilcox; and

- Shannon Pooler testified that no allegation of hugs was to CCA by Wilcox.

As a matter of law, CCA can only be liable for actions by co-worker Jackson about which CCA knew, or in the exercise of reasonable care should have known, about the hostile work environment. ***Therefore***, CCA cannot be liable for any alleged hugs by co-worker Jackson because: (1) Wilcox did not report the hugs allegations to CCA; and (2) CCA could not have known that Wilcox believed that Larry Jackson's alleged hugs were unwelcome because Jackson did not report them. And other employees receiving hugs – whether welcome and unwelcomed – is not sufficient evidence to demonstrate that CCA should have known that Wilcox believed that hugs that she received from Jackson were offensive.

### D. __The Remaining Allegations of Two Touches and Two Isolated Comments Falls Far Short of "Severe or Pervasive".__

#### 1. __Two Touches.__

At summary judgment, this Court found "***though decidedly lacking in decorum, do not clear the high hurdle of either severe or pervasive conduct sufficient to alter the terms or conditions of Plaintiff's employment.***" [Dkt. #54, pp. 34-35 (emphasis added)].  Accordingly, these allegations fall short of reaching the "high hurdle" of severe or pervasive as a matter of law.

2.      **Two Comments.**

At summary judgment, this Court found: "[a]s for the inappropriate statements, Plaintiff asserted that both statements were made sometime between January 2009 and July 2009, a six month period.  Specifically, this Court held that **"[c]ourts have consistently held that sporadic or isolated comments, however vulgar, are not enough to establish a hostile work environment."**  [Dkt. #54, pp. 32-33 (emphasis added)].

Without the allegations of hugs – which was the basis for the 11th circuit finding that there was a material issue of genuine fact – no reasonable jury can find that two touches and two comments are sufficient to be "severe or pervasive" and therefore CCA is entitled to judgment as a matter of law.

### IV.      Conclusion

For all of the reasons set forth above, judgment as a matter of law is mandated on Wilcox's sexual harassment claim against CCA.

Respectfully submitted,

*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782
BARNES & THORNBURG LLP
Prominence in Buckhead, Suite 1700
3475 Piedmont Road, N.E.
Atlanta, GA 30305
Telephone: (404) 264-4018
Facsimile: (404) 264-4033
E-mail: John.Koenig@btlaw.com

8

Adam L. Bartrom
*Pro Hac Vice Admission*
BARNES & THORNBURG LLP
110 E. Wayne, Street, Suite 600
Fort Wayne, Indiana 46802
Telephone:   (260) 423-9440
Facsimile:    (260) 424-8316
Email:   adam.bartrom@btlaw.com

*Attorney for Defendant, Corrections*
*Corporation of America a/k/a McRae*
*Correctional Facility*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of August, 2016, a copy of the foregoing was filed electronically and will be served by electronic notice via the Court's CM/ECF system to the following counsel of record:

Helen H. Albee, Esquire
Neil L. Henrichsen, Esquire
HENRICHSEN SEIGEL, PLLC
1648 Osceola Street
Jacksonville, FL 32204

David Gan-wing Cheng
The Law Office of David Cheng, Ltd.
1801 Peachtree Road, NW
Suite 100
Atlanta, GA 30309
david@consideringdavidcheng.com


*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782

DMS 4250880v1

# TAB NO. 101

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

### 1:11-cv-04365-ODE
### Wilcox v. Corrections Corporation of America
### Honorable Orinda D. Evans

Minute Sheet for proceedings held In Open Court on 08/11/2016.

TIME COURT COMMENCED: 10:20 A.M.
TIME COURT CONCLUDED: 5:05 P.M.   COURT REPORTER: Andy Ashley
TIME IN COURT: 4:30   DEPUTY CLERK: Vicki Hanna
OFFICE LOCATION: Atlanta

| | |
|---|---|
| ATTORNEY(S) PRESENT: | Adam Bartrom representing Corrections Corporation of America<br>Neil Henrichsen representing Felicia A. Wilcox<br>John Koenig representing Corrections Corporation of America |
| PROCEEDING CATEGORY: | Jury Trial Continued; |
| MOTIONS RULED ON: | [98]Motion for Judgment as a Matter of Law DENIED |
| MINUTE TEXT: | Defendants evidence continues: 2) Christopher Sammons, sworn; D-34, ADMITTED; 3) Felicia Miller Spires, sworn; 4) James Hill, sworn; D-29 identified only - NOT ADMITTED; Defendant rests. Plaintiffs rebuttal: 1) Felicia Wilcox, recalled.; Plaintiff rests. Defendants Motion for Directed Verdict, DENIED. Charge conference held. Closing arguments of counsel. Courts charge on the law. No exceptions to the charge. The jury begins to deliberate at 3:00. Note #1 filed and taken up at 3:45 p.m. The Court brings in the jury to release them at 5:05. |
| HEARING STATUS: | Hearing not concluded. Court adjourned and will reconvene at 9:30 a.m., August 12, 2016. Jurors excused until the above time under the usual caution of the Court. |
| TRIAL STATUS: | Evidence Entered, continued |

# TAB NO. 104

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**FILED IN OPEN COURT**
U.S.D.C. - Atlanta

AUG 1 2 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

FELICIA A. WILCOX

v.

CORRECTIONS CORPORATION OF
AMERICA

CIVIL ACTION NO.
1:11-CV-4365-ODE

<u>VERDICT</u>

Do you find from a preponderance of the evidence:

1.  That Larry Jackson harassed Plaintiff because of
    her sex?

    Answer Yes or No ___Yes___

If your answer is "No," this ends your deliberations,
and your foreperson should sign and date the last page of this
verdict form.  If your answer is "Yes," go to the next question.

2.  That the harassment created a hostile work
    environment for Plaintiff?

    Answer Yes or No ___Yes___

If your answer if "No," this ends your deliberations,
and your foreperson should sign and date the last page of this
verdict form.  If your answer is "Yes," go to the next question.

3.  That CCA knew, or in the exercise of reasonable
    care should have known, about the hostile work
    environment?

    Answer Yes or No ___Yes___

If your answer is "No," this ends your deliberations,
and your foreperson should sign and date the last page of this
verdict form.  If your answer is "Yes," go to the next question.

4.    That CCA took prompt remedial action to eliminate the hostile work environment?

Answer Yes or No      *NO*

If your answer is "Yes," this ends your deliberations, and your foreperson should sign and date this verdict form.  If your answer is "No," go to the next question.

5.    That Plaintiff suffered damages because of the hostile work environment?

Answer Yes or No      *Yes*

If your answer is "Yes," what amount of damages do you award?

$ 4000 00

If your answer is "No," this ends your deliberations, and your foreperson should sign and date this verdict form.  If your answer is "Yes," go to the next question.

6.    Do you find that Plaintiff is entitled to an award of punitive damages?

Answer Yes or No      *Yes*

If your answer is "Yes," in what amount?

$100,000

SO SAY WE ALL.

*(signature)*
_____
FOREPERSON'S SIGNATURE

8-12-2016
_____
DATE

2

# TAB NO. 106

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FELICIA A. WILCOX

         Plaintiff,

v.                                      CIVIL ACTION NO.
                                        1:11-CV-4365-ODE

CORRECTIONS CORPORATION OF
AMERICA

         Defendant.

## JUDGMENT IN A CIVIL CASE

This action came before the Court for trial by the court and by a jury. The issues have been tried and heard and the jury has rendered its verdict.

IT IS ORDERED AND ADJUDGED that Plaintiff, FELICIA A. WILCOX, recover from Defendant, CORRECTIONS CORPORATION OF AMERICA, the amount of FOUR THOUSAND AND NO/100 ($4,000) DOLLARS in compensatory damages and ONE HUNDRED THOUSAND AND NO/100 ($100,000) DOLLARS in punitive damages and interest as provided by law and costs of this action.

AUGUST 12, 2016                    JAMES N. HATTEN, CLERK
                                   By:

                                   _Vicki C Hause_
                                   Deputy Clerk

# TAB NO. 108

ATTACHMENT G-1
Plaintiff's List of Exhibits

Admitted

| Exhibit No. | Description | Bates range | ~~Objection~~ | |
|---|---|---|---|---|
| 1 | Code of Conduct Policy | CCA 000830-39 | 8/9/16 | ADMITTED |
| 2 | Equal Employment Opportunities | CCA 000271-72 | | ADMITTED |
| 3 | Harassment/Sexual Harassment Policy | CCA 000292-93 | | ADMITTED |
| 4 | Standards of Employee Conduct and Responsibility | CCA 000131-34 | | ADMITTED |
| 5 | CCA Ethics and Conduct Standards Acknowledgment Form - Plaintiff | CCA 000073 | | ADMITTED |
| 6 | Wells Standards of Employee Conduct Acknowledgement Form | CCA 001156 | | ADMITTED |
| 7 | Wells acknowledgement of Sexual harassment policy training | CCA 1158 | | ADMITTED |
| 8 | Employee_Civilian incident statement 071009 | CCA 000675 | | ADMITTED |
| 9 | Complaint by Wilcox dated 072309 | CCA 000151-53 | | ADMITTED |
| 10 | Investigation Report Form Golden dated 090909 | CCA 000154-58 | | ADMITTED |
| 11 | CCA Facility Employee Problem Solving Notice dated 091409 | CCA 000636-37 | | ADMITTED |
| 12 | EEOC Charge of Discrimination dated 031510 | CCA 000236 | | ADMITTED |
| 13 | Performance Summary Form 2007-08 | CCA 000091-97 | | ADMITTED |
| 14 | Performance Summary Form 2008-09 | CCA 000073-83 | | ADMITTED |
| 15 | CCA Policy code of | CCA 000072 | | ADMITTED |
| 14A | Acknowledgement Form | | 8/10/16 | ADMITTED |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Conduct Acknowledgement Form |  |  |  |
| 16 | Wilcox's 2009 W-2 issued by CCA | CCA 001084 | 8/9/2016 | ADMITTED |

# TAB NO. 110

**Helen Albee**

| | |
|---|---|
| **From:** | ganddb_efile_notice@gand.uscourts.gov |
| **Sent:** | Friday, August 26, 2016 10:41 AM |
| **To:** | CourtMail@gand.uscourts.gov |
| **Subject:** | Activity in Case 1:11-cv-04365-ODE Wilcox v. Corrections Corporation of America Exhibits |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Northern District of Georgia

## Notice of Electronic Filing

The following transaction was entered on 8/26/2016 at 10:41 AM EDT and filed on 8/25/2016
**Case Name:**       Wilcox v. Corrections Corporation of America
**Case Number:**       1:11-cv-04365-ODE
**Filer:**
**WARNING: CASE CLOSED on 08/12/2016**
**Document Number:** 110


**Docket Text:**
**PLAINTIFF'S EXHIBITS (1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 14a, 15 AND 16 - ADMITTED) DEFENDANT'S EXHIBITS (3, 7, 16, 20, 21, 23, 31, 32, 34 - ADMITTED 29 - NOT ALLOWED) retained at the [97] Jury Trial have been received from Courtroom Deputy and placed in Exhibit room. (fap)**


**1:11-cv-04365-ODE Notice has been electronically mailed to:**

Adam L. Bartrom     adam.bartrom@btlaw.com

David Gan-wing Cheng     david@considerdavidcheng.com

Helen H. Albee     HAlbee@hsLawyers.com, nhenrichsen@hslawyers.com, service@hslawyers.com

John T.L. Koenig     john.koenig@btlaw.com, adam.bartrom@btlaw.com, debra.bengel@btlaw.com, emily.moran@btlaw.com, roxanne.larrison@btlaw.com

Neil L. Henrichsen     nhenrichsen@hslawyers.com, service@hslawyers.com

**1:11-cv-04365-ODE Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060868753 [Date=8/26/2016] [FileNumber=8007677-0
] [29e4ebfc443c71d49e64561b960a1a15edb28de266d4bcad738688f77a03481e8d7
f8a0f22d044ead8738c2c6eb909a8f9280be590a3fc3312854cd39b7ea64b]]

# TAB NO. 110-3

CCA CORPORATE AND FACILITY POLICY                    PAGE 1 OF 2                    POLICY 3-17

| | |
|---|---|
| CHAPTER 3: | PERSONNEL |
| SUBJECT: | HARASSMENT/SEXUAL HARASSMENT |
| SUPERSEDES: | APRIL 15, 1997 |
| EFFECTIVE DATE: | OCTOBER 1, 1998 |
| FACILITY: | ALL CCA BOP FACILITIES – MCRAE CORRECTIONAL FACILITY |
| FACILITY SUPERSEDES: | DECEMBER 1, 2002 |
| FACILITY EFFECTIVE DATE: | JULY 26, 2004 |

APPROVED:   SIGNATURE ON FILE
            LINDA G. COOPER
            VICE PRESIDENT, LEGAL AFFAIRS

---

**3-17.1  PURPOSE**

To provide a work environment free from tensions created by ethnic, racial, age-based, sexual or religious remarks, animosity, unwelcome sexual advances or requests for sexual favors or other such conduct.

**3-17.2  AUTHORITY:**

Corporate and Facility Policy.

**3-17.3  DEFINITIONS:**

Harassment - Harassment includes, without limitation, verbal harassment based on race, sex, national origin, age, religion or handicap (for example, derogatory statements, slurs, etc.); physical harassment based on race, sex, national origin, age, religion or handicap (e.g. assault, physical interference with normal work or involvement); and visual harassment based on race, sex, national origin, age, religion or handicap (e.g. posters, cartoons, drawings, etc.).

Sexual Harassment - Sexual Harassment includes sexually motivated verbal or physical conduct and visual forms or harassment of sexual nature that are used as the basis for employment decisions, which unreasonably interfere with an individual's work performance, or which create an intimidating, hostile or offensive work environment.

Examples of Sexual Harassment include unwelcome sexual advances; requests for sexual favors; repeated offensive sexual flirtations; repeated verbal abuse of a sexual nature; sexually degrading words used to describe an individual; and the display in the workplace of sexually suggestive objects or pictures.

**3-17.4  POLICY:**

A.   HARASSMENT AND SEXUAL HARASSMENT PROHIBITED

1.   Employees have a right to work in an environment free of unlawful discrimination, which encompasses freedom from Harassment or Sexual Harassment.   CCA prohibits Harassment or Sexual Harassment of its employees or applicants.   Such conduct may result in disciplinary action up to and including discharge.

2.   Among other things, no CCA employee shall threaten or insinuate that another employee's submission to or rejection of sexual advances will in any way influence any personnel decision regarding that employee's employment, evaluation, wages, advancement, assigned duties, shifts, or any other condition of employment or career development,

3.   Further, no employee or non-employee shall engage in verbal, physical or visual

Proprietary Information - Not for Distribution - Copyrighted
Property of Corrections Corporation of America



conduct of a sexual nature that creates an intimidating, hostile, or offensive work environment.

B.   RETALIATION

CCA will not tolerate retaliation against any employee who complains of Harassment or Sexual Harassment or who provides information in connection with any such complaint.

**3-17.5   PROCEDURES:**

A.   WHAT AN EMPLOYEE SHOULD DO IF HE/SHE FEELS THIS POLICY HAS BEEN VIOLATED.

   1.   If an employee feels that he/she is or has been a victim of Harassment or Sexual Harassment, the employee is strongly urged to take one of the following courses of action:

   - At the Facility level, report this to the Facility Personnel Coordinator/Warden or the Corporate Director, Personnel; or utilize the Employee Grievance Procedures (CCA Corporate and Facility Policy 3-6).

   - At the Corporate Office level, report this to the Corporate Director, Personnel or utilize the Employee Grievance Procedure (CCA Corporate and Facility Policy 3-6).

   2.   Charges of conduct described herein will be promptly and thoroughly investigated and a report will be made to the employee concerning the results of the investigation.

   3.   If CCA determines that conduct in violation of this policy has occurred, appropriate relief for the employee bringing the complaint and appropriate disciplinary action against the harasser, up to and including discharge, will follow.

   4.   CCA understands that these matters can be extremely sensitive, and so far as possible, will keep all employee complaints and all communications, such as interviews and witness statements in strict confidence.

B.   ANY SUPERVISOR OR DEPARTMENT HEAD WHO BECOMES AWARE OF CONDUCT THAT MAY CONSTITUTE HARASSMENT OR SEXUAL HARASSMENT MUST IMMEDIATELY REPORT SUCH CONDUCT TO THE WARDEN/FACILITY ADMINISTRATOR OR TO THE CORPORATE DIRECTOR, PERSONNEL.

**3-17.6   REVIEW:**

This policy will be reviewed as necessary by the Vice President, Legal Affairs and the Corporate Director, Personnel.

**3-17.7   APPLICABILITY:**

All CCA staff.

**3-17.8   ATTACHMENTS:**

3-17A   Policy 3-17, Harassment/Sexual Harassment, Acknowledgement Form

**3-17.9   REFERENCES:**

Title VII of 1964 Civil Rights Act 42 USCA sec. 2000 (c-1 et seq.) as amended.   The ACA Standards for this Facility are as follows:   **4-ACI-4058.**

**Proprietary Information - Not for Distribution - Copyrighted**
**Property of Corrections Corporation of America**

# TAB NO. 110-8

# EMPLOYEE/CIVILIAN-INCIDENT STATEMENT

5-1C

| | | | |
|---|---|---|---|
| **Facility Name** | McRae Correctional Facility | **Incident Number** | |
| **Incident Time (HRS)** | 0825 | **Incident Date** | 07-10-09 |
| **Printed Name (First/Last)** | Felecia Wilcox | | |

☑ Employee **OR** ☐ Civilian (Check One) ☐ Witness **OR** ☑ Participant (Check One)

**BASED ON YOUR OWN KNOWLEDGE, WHAT DID YOU SEE, HEAR, AND DO?**
(Attach additional pages if necessary)

I officer F. Wilcox was exiting Captain office from staff meeting, when Sgt. Larry Jackson slapped me on my Butts twice in the presence of officer Rosa McRae and Sgt. Chris Sammons.

EXHIBIT #7
PENGAD 800-631-6989

**Did you receive any injuries?** ☐ YES ☑ NO ☐ NA **(If Yes, list below)**

**Were you evaluated by medical?** ☐ YES ☑ NO ☐ NA

| | | | |
|---|---|---|---|
| **SIGNATURE:** | Felecia Wilcox | **DATE:** | 07-10-09 |
| **Typed By:** | | **Date:** | |

**This section to be completed by CCA staff if the civilian refuses to complete the 5-1C:**

☐ Civilian refused to complete this 5-1C

| Employee/Witness Printed Name | Employee/Witness Signature | Date |
|---|---|---|
| | | |
| | | |

PRIVILEGED AND CONFIDENTIAL
CORRECTIONS CORPORATIONS OF AMERICA
PROPRIETARY INFORMATION - NOT FOR DISTRIBUTION - COPYRIGHTED

# TAB NO. 110-9

# Complaint

Date: July 23, 2009
To: CCA/ McRae Correctional Facility
Thru: Shannon Pooler, Human Resource
From: Felecia Wilcox, Correctional officer *Felecia Wilcox*
Subject: Hostile Work Environment

Enough! This hostile treatment has got to stop.

This fraction of behavior has caused me insufferable anxiety, depression and emotional problems, along with an inordinate amount of loss of time from work and pay.

Here is the situation:

For the last several months I've been working in a hostile environment, being created by several different male supervisors on different occasions.

On October 14, 2008 at 1400 hrs.

I reported to Warden Wells of the hostile environment that was being created by Chief Jake Spires, spreading rumors around the facility to my co-workers, causing my co-workers to disassociate from me.

On November 12, 2008 at 1000 hrs.

My work environment is so hostile and stressful that I had to be transported from the job site to Jeff Davis hospital emergency room by LT. Leon Newson.

From November 12 thru November 24, 2008 I was out on medical leave due to stress caused by work environment. I was placed on medication for anxiety and depression, I am presently still taking this prescribed medication. I have accrued over $1,200 in medical expenses, including lost wages exceeding over $500.

Due to the hostile work environment, I am unable to perform my job duties, because of the constant stress created by staff as well as supervisors.

This fraction of behavior is affecting my pay causing problems in my financial living status.



EXHIBIT
#8

PENGAD 800-631-6989

On December 15, 2008 at 1045

I was escorted to Warden Wells' office by LT. Turner. Warden Wells confronted me with a false complaint written by Captain Bobby Cooper. Warden Wells also threatened to cast an investigation and terminate my employment. This meeting was so hostile and stressful that I became emotionally upset and had to go home.

I could not perform my job dues therefore, causing me to use my personal time or sick leave to cover pay.

On -going Daily
I have to endure the racism of Chief Spires calling me a kid(goat or child), who self admits that he could not help that, he's a **REDNECK**.(Quote)

June 17, 2009 at 0725 hrs.

Assistant Warden Gunn intentionally threw a basket at me. I went to A/W Gunn about his action - I was greatly emotional, upset, and crying. I was relieved of my duties and allowed to leave for the day by LT. Turner.

June 23, 2009 at 1000 hrs.

I had conference with Human Resources Manager  Pooler and Warden Wells concerning my hostile work environment and the incident that occurred on 06-17-2009 with A/W Gunn and myself.

Warden Wells informed me that  he had knowledge of the situation involving the basket and that it was not my fault that I had to go home. I was reimbursed for my lost wages on 06-17-09.

July 10, 2009 at 0830 hrs.

Sergeant Larry Jackson hit me twice on my buttocks. I reported it to Human Resource Department Andrea Tobler (Acting) and Warden Wells, I was informed thru Ms. Tobler from Warden Wells to write a statement.

July 20, 2009 at 1030 hrs

I requested an update from Ms. Pooler and Chief Spires regarding  the status of my complaint against Sgt. Jackson. Since no action has yet been taken against Sgt. Jackson and he continues to work around me, I requested this update. Sgt. Jackson continues to be on my post and I am afraid he will touch me again. Since this is not the first time that he has touched me. I have told him previously not to touch me and he responded to me that he could touch me if he want to.

Chief Jake Spires sent me home due to my emotional upset and my inability to perform my job duties. This emotional upset is fueled by the that I am still working in the presence of Sgt. Jackson, even though I have reported this inappropriate behavior to Human Resources Manager and Warden Wells.

I informed Chief Spires in the presence of Human Resources Manager Shannon Pooler, that Sgt. Larry Jackson told me that he (Chief Spires) told him(Jackson) that he did not have to worry about his prior complaint of his behavior touching and showing favoritism toward certain females, that they was going to take care of it(complaint) Quote (Sgt. Jackson).

This Complaint against Sgt. Jackson was made approximately 2 to 3 weeks prior to him assaulting me again.

This type of behavior should not be tolerated from department heads. This reaction of Chief Spires caused me to be assaulted again by Sgt. Jackson, causing a hostile and emotional environment for me to work in.

I was sent home by Chief Spires, due to the facility's continuous and repeated failure to protect me from such behavior and hostility.

I feel that I am being treated unfavorably and different from other employees, Which leads me to feel threatened that I will receive retaliation in some manner. This retaliation will more than likely be so extreme that the Executives at McRae will seek termination of my employment.

My remedy for this situation is to resolve these mentioned serious issues, so that I will be able to work in peace.

CCA  000153

# TAB NO. 110-10

TOOL-L

# CORRECTIONS CORPORATION OF AMERICA
## CONFIDENTIAL
## INVESTIGATION REPORT FORM

| CASE NUMBER(S): | FSC: 09-07-0041 |
| --- | --- |
| | FACILITY: |

**TO:**   Ethics Office

**FROM:** Kenya Golden, Investigator (Gadsden Correctional Facility)

**DATE:** September 9, 2009

## EXECUTIVE SUMMARY:

On July 23, 2009, Correctional Officer Felecia Wilcox submitted a letter to McRae Correctional Facility alleging that she was subjected to a hostile work environment due to Warden Walt Wells' failure to take appropriate action regarding several offensive acts directed towards her and others by various McRae Correctional Facility employees. Specifically, Felecia Wilcox noted the following:

- Senior Correctional Officer Larry Jackson touched her (Felecia Wilcox) in a manner which she deemed offensive and sexual in nature. Additionally, he (Larry Jackson) touched or made inappropriate statements of a sexual nature to other female employees.

- Chief of Security Jonathan Spires addressed Felecia Wilcox and other African-American employees as "kid" in lieu of using their formal names and/or work titles.

- Assistant Warden Marc Gunn threw a small plastic basket at her (Felicia Wilcox) while in the checkpoint area.

Under the direction of the Ethics Office, on August 27, 2009, an investigation into the allegations presented by Correctional Officer Felicia Wilcox was initiated by Investigator Kenya Golden. A total of sixteen (16) employees were interviewed throughout the course of this investigation, and based on the information obtained, it is determined that:

- Senior Correctional Officer Larry Jackson touched or made inappropriate comments that were sexual in nature to or about female employees which were deemed offensive by his co-workers;

- Chief of Security Jonathan Spires has occasionally addressed employees as "kid"; although Felecia Wilcox deemed the term to be racially offensive, no information was obtained to conclude that Spires' use of the work "kid" is limited to a specific race of employees; and

- Assistant Warden Marc Gunn slid or "tossed" a small plastic basket towards Felecia Wilcox as he passed through the checkpoint area; however, no information was found to support a finding that Gunn's actions in this regard were hostile or intended as a form of harassment.

A question was also raised during the investigation as to whether facility management responded appropriately to concerns regarding Jackson's conduct that were raised by Wilcox and prior anonymous notes. Inquiries were initiated into the allegations presented by Felicia Wilcox and others, and Warden Wells acted properly in escalating the matter once a formal complaint was made by Wilcox. Thus, it is clear that facility management did not avoid or deliberately ignore the concerns about Jackson's conduct. However, it is believed that internal inquiry by facility resources was hindered in the case of Larry Jackson due to the employee population's perception of Jackson's popularity with management and a belief that full cooperation with the internal investigation process would result in retaliation. Further, once Jackson learned of Wilcox's complaint, he attempted to obtain favorable statements from at least one other

Proprietary Information – Not For Distribution – Copyrighted

Property of Corrections Corporation of America
3/2007



EXHIBIT

#10

CCA  000154

**TOOL-L**

employee, and it appears that management intended to accept and rely on that statement rather than immediately directing Jackson to cease and desist from such activity and interviewing the employee directly.

## INVESTIGATION FINDINGS:

### Allegation #1:

Senior Correctional Officer Larry Jackson touched Correctional Officer Felecia Wilcox in a manner which she deemed offensive and sexual in nature. Additionally, prior to touching Wilcox, Larry Jackson touched or made inappropriate statements of a sexual nature to other female employees.

### Finding #1:

Correctional Officer Felicia Wilcox

According to Officer Wilcox, she was exiting the Captain's office when Senior Correctional Officer Larry Jackson slapped her on the butt twice in the presence of Officer Rosa McRae and Senior Correctional Officer Christopher Sammons. After this happened, she went to the education office to talk to another employee. SC/O Jackson followed her into the education area and told her that he was sorry. He (Jackson) went on to explain that he was trying to get the spot off that was on the back of her jacket. She told him that other people saw this happen and that she would not lie about it.

Felecia Wilcox indicated that on a separate occasion, while she was in the education office talking to Larry Jackson and another employee, Jackson rubbed her right thigh. She immediately slapped his hand from her right thigh and told him not to touch her. Jackson then replied that he could touch her "juicy, fat thighs" if he wanted; however, she reiterated to him that he could not.

According to Felecia Wilcox, on a third occasion, while talking to SC/O Jackson and another employee in the education office, Jackson shared that when he was in the military he had a female friend who was a lesbian and had a spur tongue longer than his penis.

Anonymous Letters Addressed to the Facility

Throughout the course of this investigation, it was learned that on two separate occasions, anonymous letters were submitted to management regarding alleged inappropriate actions displayed towards female employees by Senior Correctional Officer Larry Jackson. Two (2) anonymous notes were obtained from Human Resource Manager Shannon Pooler. The notes indicated that Senior Correctional Officer Larry Jackson "groped" female employees and that he was specifically observed "groping" Officer Yukeyla Byron and other female officers in the master control room area. Additionally, one of the two notes also reflected that employees were afraid to report the matter due to a fear of being retaliated against.

Human Resource Manager Shannon Pooler

Shannon Pooler indicated that she received instruction from Warden Wells to interview Officer Yukeyla Byron in regards to the allegations included in the anonymous notes. She asked Officer Byron if any staff member had touched her in an inappropriate manner or made any verbal comment to her of a sexual nature. Officer Byron responded by saying "no". Byron went on to specify that Senior Correctional Officer Larry Jackson would often hug her but that he hugged everybody else too. Byron stated that she was not offended by Jackson's action and that if she was, she would let him know. According to Shannon Pooler no further inquiry into the allegations presented in the anonymous letters was made.

Employee Witness

Proprietary Information – Not For Distribution – Copyrighted

Property of Corrections Corporation of America
3/2007

**TOOL-L**

According to an employee witness, as they were leaving the Captain's office, Senior Correctional Officer Jackson told Officer Wilcox that she had something on her jacket. He then took his hand and brushed in a downward motion on the lower back/butt area of Officer Wilcox's jacket. Officer Wilcox told Jackson that she had paint on her jacket and that it would not come off.

It is also reported by another employee that Officer Wilcox entered the education area and stated that Jackson hit her on the butt.

One employee indicated that although he was in the Captain's office on the date in question, he did not depart the office the same time Wilcox and Jackson did. Therefore, he did not actually see this incident. However, he went on to say that he has never witnessed Jackson touch any staff member in an inappropriate manner.

According to an employee witness, while in the education office, Senior Correctional Officer Jackson was talking to Officer Wilcox and bent down and touched her on the thigh. The witness left the area and did not hear what was said between Wilcox and Jackson.

An employee witness confirmed that she was talking to Officer Wilcox and Senior Correctional Officer Jackson when Jackson began to tell them about a lesbian friend he had who had a spur tongue that was longer than his penis.

One employee reported that on one occasion while he was in the master control room he observed Jackson rubbing Officer Yukeyla Byron on the butt. This same employee also indicated that he has witnessed Jackson hugging other female employees and rubbing their backs in a downward motion going towards their butts.

One male employee indicated that a female employee complained to him that Senior Correctional Officer Larry Jackson hugged her and made inappropriate comments of a sexual nature to her. In response, he spoke with Jackson and advised him to cease contact with the employee. The employee also alleged that he heard Jackson make comments about certain female officer's butts and breasts "getting big". He also witnessed Jackson hug Officer Yukeyla Byron and rub her on the butt and arms. Per the employee, some days Officer Byron would tell Jackson to stop and other days she did not appear to resist his actions.

An employee also reported that while at a cook out held at the training building, he observed Jackson rubbing a female employee on the butt and telling her that he liked her "apple bottom" jeans.

A female employee reported that on one occasion, she asked Jackson for the keys to the restroom and as he was giving her the keys he told her that he would drink her water (urine). According to this employee, Jackson also told her that he wanted to "eat her inside out". She reported that on a separate occasion, Jackson put his hand in her back pocket, and she immediately redirected him; however, he has continuously made personal comments to her regarding how "fine" she is and how good she looks.

*It should be noted that due to Officer Yukeyla Byron's medical leave status, she was not contacted for interview.*

<u>Senior Correctional Officer Larry Jackson</u>

Senior Correctional Officer Larry Jackson indicated that while he was standing outside of the Captain's office, he grabbed the end of Officer Wilcox's jacket to advise her that she had something on her jacket, and he later apologized to her for doing so. However, according to Jackson, at no time did he touch Officer Wilcox's butt. Jackson confirmed that he engaged in several conversations with Wilcox and others in the Education Department, but he indicated that he did not "recall" ever touching Wilcox's thigh or commenting that someone's tongue was longer

Proprietary Information – Not For Distribution – Copyrighted          Property of Corrections Corporation of America
3/2007

**TOOL-L**

than his penis. Additionally, according to Larry Jackson, he does not "recall" touching employees or making statements towards or about female that could be deemed offensive or inappropriate.

**Allegation #2:**

Chief of Security Jonathan Spires addressed Felecia Wilcox and other African-American employees as "kid" in lieu of using their formal names and/or work titles.

**Finding #2:**

Correctional Officer Felicia Wilcox

Felicia Wilcox indicated that Chief Jonathan Spires often refers to her as "kid". She stated that this terminology offended her and that she believes that Chief Spires uses this term to refer to African Americans.

Chief Jonathan Spires

Jonathan Spires indicated that he often greets staff of all races with the greeting "hi kid" or "hi kiddo". He stated that he has never meant this in a derogatory or racist manner. He also indicated no one, including Felecia Wilcox, has ever told them that they were offended by this type of greeting.

**Allegation #3:**

Assistant Warden Marc Gunn threw a small plastic basket at her (Felicia Wilcox) while in the checkpoint area.

**Finding #3:**

Correctional Officer Felicia Wilcox

Felicia Wilcox reported that while she was assigned to work at the checkpoint area, Assistant Warden Marc Gunn intentionally threw a basket at her. After Gunn departed the area, she asked an officer to relieve her and she went to talk to Gunn in his office. She was crying and upset and she told Gunn that he had done this same thing before but she did not say anything the first time. She went on to tell him that she did not want to work in that area if she was not going to be allowed to "just do her job". Assistant Warden Gunn apologized to her for any confusion this assumption caused and she left his office. However, she was still crying and was allowed to go home for the rest of the day.

Assistant Warden Marc Gunn

Marc Gunn indicated that he entered the facility and placed his items in the basket so he could clear the metal detector. Once he cleared, he gathered his belongings from the basket he had placed them in and slid or possibly tossed the empty basket onto the table with the rest of the baskets. Approximately five (5) minutes later, Officer Wilcox entered his office and claimed he had thrown the basket at her. He explained to her that although she perceived that an item had been thrown at her, this was not the case. He then apologized for any confusion.

Employee Witness

According to an employee witness, Assistant Warden Gunn gathered his items fro the basket after clearing the metal detector. When he finished with the basket, he took it and tossed the basket to Officer Wilcox. Officer Wilcox became upset and after being relieved went to Assistant Warden Gunn's office.

Proprietary Information – Not For Distribution – Copyrighted

Property of Corrections Corporation of America
3/2007

CCA  000157

**TOOL-L**

**HANDLING OF COMPLAINTS AGAINST JACKSON:**

Based on employee interviews and a review of applicable information obtained from the facility's Human Resources Department, it appears that upon gaining knowledge of the concerns presented by Correctional Officer Felicia Wilcox, Warden Walt Wells, attempted to appropriately address the matters by directing and/or conducting formal inquiries into her concerns. It is observed that Felecia Wilcox was not satisfied with the facility's action in response to her claims; however, there is no evidence or information to support that Warden Walt Wells knowingly failed to take appropriate action or deliberately ignored her concerns.

It should be noted that throughout the course of conducting investigative interviews with McRae Correctional Facility employees, most voiced having a fear of retaliation in the form of losing their jobs or other forms of workplace harassment in response to cooperating with the investigation process. Although no information was presented to support the employee perception regarding retaliation, it is believed that in the matter involving Larry Jackson, employee cooperation with the facility's inquiry was limited and consequently, the facility's ability to conduct a thorough inquiry into claims made against Larry Jackson was unsuccessful (the identities of all non-primary participants have been purposely withheld in order to minimize the potential for any later claims of retaliation based on cooperation with this investigation).

It also is noted that Jackson attempted a favorable statement from at least one employee once he learned of Wilcox's complaint. It appears that facility management intended to accept and rely on (or at least utilize) this statement in its evaluation of Wilcox's claims rather than interviewing the employee directly and immediately directing Jackson to cease and desist from attempting to investigate the matter on his own.

Proprietary Information – Not For Distribution – Copyrighted          Property of Corrections Corporation of America
3/2007

CCA  000158

# TAB NO. 110-11

PAGE 1 OF 2

3-3A

## CCA FACILITY EMPLOYEE PROBLEM SOLVING NOTICE

CONFIDENTIAL: THIS FORM IS TO BE MAINTAINED IN ACCORDANCE WITH POLICY 3-9, EMPLOYEE RECORDS

Facility:  McRae Correctional Facility

Employee:  Larry J. Jackson                    Title:  Senior Correctional Officer

Name of Supervisor Initiating Problem Solving Notice:  Marc R. Gunn, Assistant Warden, Operations

Policy Violation: ☒ Yes   ☐ No

If yes, policy Violated (Indicate Policy # and Title): CCA Policy 3-3:  Code of Conduct

Date of Situation:  July 10, 2009            Date of Notice:  September 14, 2009

**Description of Situation:**
*(To be completed electronically)*

On July 10, 2009, it was reported that you had inappropriately touched a female staff member.  Due to the nature of the allegations, an internal investigation was initiated.  During the investigation, it was also revealed that you made inappropriate comments of a sexual nature to other staff members.

As a result of the internal investigation, the claims have been substantiated.

This type of behavior is a violation of CCA's Code of Conduct policy and the Guiding Principles

Corrective Action Recommended: ☒ Yes   ☐ No

If yes:

☐Written Reprimand ☐Re-Assignment ☐Suspension ☐Demotion ☒Termination

☐Other _____

| Supervisor's Signature | AW | 9/14/09 |
|---|---|---|
| Supervisor's Signature | Title | Date |

AT FACILITY LEVEL - SECTION BELOW TO BE COMPLETED BY WARDEN/ADMINISTRATOR.
AT FSC LEVEL - SECTION BELOW TO BE COMPLETED BY APPLICABLE DEPARTMENT HEAD.

**Corrective Action Taken:**

☐Written Reprimand

☐Re-Assignment  *(Indicate New Assignment)* _____

☐Suspension *(List Date(s) of Suspension)* _____

☐Demotion *(Indicate New Position)* _____

☒Termination

☐Other _____

Proprietary Information – Not for Distribution – Copyrighted
Property of Corrections Corporation of America

Plaintiff Exhibit

Exhibit No.
Wells
2-11-13
4

ⓔESQUIRE

CCA   000636

PAGE 2 OF 2                                                                                          3-3A

| EMPLOYEES MAY GRIEVE THE ABOVE BY FOLLOWING PROCEDURES ESTABLISHED IN CCA POLICY 3-6, EMPLOYEE GRIEVANCE PROCEDURES. A COPY OF POLICY 3-6 WILL BE PROVIDED UPON REQUEST. |
|---|

_Mr Weaks_ _____                    _____ 9-14-09
Warden/Facility Administrator (Print/Type)           Warden/Facility Administrator Signature/   Date
FSC Department Head                                  FSC Department Head

_____                         _Larry Jackson_  9-14-09
Employee Name (Print/Type)                          Employee Signature                  Date
                                                    (Signature does not indicate agreement or disagreement
                                                    with the information contained on this document.
                                                    By signing, the employee is acknowledging receipt of this
                                                    Problem Solving Notice and his/her option to grieve such action.)

Proprietary Information – Not for Distribution – Copyrighted
Property of Corrections Corporation of America.

# TAB NO. 112

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FELECIA A. WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 1:11-CV-04365-ODE-CCH |
| | ) | |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA A/K/A McRAE | ) | |
| CORRECTIONAL FACILITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **DEFENDANT'S RULE 50/59 MOTION**

Defendant Corrections Corporation of America ("CCA") respectfully files this post-trial Motion pursuant to Rules 50 and 59. CCA respectfully submits it is entitled to judgment in its favor as a matter of law and that the jury's verdict be vacated in its entirety. Failing that, the jury's award of punitive damages must be vacated because it was not based on sufficient evidence and did not meet the high standard of proof required. In the alternative, the punitive damages award should be significantly reduced in light of Supreme Court precedent that anything more than a 4-to-1 ratio is constitutionally suspect. In support of this Motion and pursuant to N.D. Georgia Local Rules, CCA files its separate supporting brief.

Respectfully submitted,


*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782
BARNES & THORNBURG LLP
Prominence in Buckhead, Suite 1700
3475 Piedmont Road, N.E.
Atlanta, Georgia  30305
Telephone:   (404) 264-4018
Facsimile:   (404) 264-4033
E-mail:   John.Koenig@btlaw.com

Adam L. Bartrom
*Pro Hac Vice Admission*
BARNES & THORNBURG LLP
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802-2206
Telephone:  (260) 423-9440
Facsimile:   (260) 424-8316
Email:   adam.bartrom@btlaw.com


## CERTIFICATE OF COMPLIANCE

As required by Local Rule 7.1D, N.D. Ga., I hereby certify that this pleading has been prepared in Times New Roman 14-Point font, one of the font and point selections approved by this Court in Local Rule 5.1B, N.D. Ga.


This 9th day of September, 2016

*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of September, 2016, a copy of the foregoing was filed electronically and will be served by electronic notice via the Court's CM/ECF system to the following counsel of record:

> Helen H. Albee, Esquire
> Neil L. Henrichsen, Esquire
> HENRICHSEN SEIGEL, PLLC
> 1648 Osceola Street
> Jacksonville, FL  32204
>
> David Gan-wing Cheng
> The Law Office of David Cheng, Ltd.
> 1801 Peachtree Road, NW
> Suite 100
> Atlanta, GA  30309
> david@consideringdavidcheng.com

> *s/ John T.L. Koenig*
> John T.L. Koenig
> Georgia Bar No. 268782

DMS 4325107v1

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FELECIA A. WILCOX,           ) | |
|                 ) | |
|       Plaintiff,      ) | |
|                 ) | |
| v.                ) | CIVIL ACTION NO.: |
|                 ) | 1:11-CV-04365-ODE-CCH |
|                 ) | |
| CORRECTIONS CORPORATION  ) | |
| OF AMERICA A/K/A McRAE   ) | |
| CORRECTIONAL FACILITY,   ) | |
|                 ) | |
|       Defendant.     ) | |
| _____) | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS RULE 50/59 MOTION

Defendant Corrections Corporation of America ("CCA") respectfully submits this brief in support of its post-trial Motion under Rules 50 and 59.

## I.    INTRODUCTION AND SUMMARY

The Court should grant CCA's motion for judgment as a matter of law with regard to Wilcox's sexual harassment claim.   To the extent the jury relied on Wilcox's allegation that co-worker Larry Jackson frequently hugged her, the verdict is not legally supportable because Wilcox **never complained** to CCA about the hugs and knowledge cannot be imputed to CCA under Supreme Court precedent.  The only conduct Wilcox did complain of was two isolated comments and two instances of physical touches over a period of six months.  As a matter of

law, this conduct does not meet the high hurdle to be severe or pervasive – a fact this Court already recognized when it dismissed Wilcox's claim on summary judgment.  Moreover, the evidence showed CCA took prompt and remedial action in response to Wilcox's complaints.  Jackson never touched her or even spoke to her after her initial complaint.

Even if the compensatory damages amount is left intact, the jury's $100,000 punitive damages award should be vacated due to lack of sufficient evidence to support the award as well as procedural and substantive deficiencies in the Court's revised jury instruction which deviated substantially from the Eleventh Circuit pattern instruction.

Finally, even if the punitive damages award survives, it should be significantly reduced as it far exceeds a Constitutionally-acceptable ratio to the $4,000 in compensatory damages.

## II.   ARGUMENT

### A.   Wilcox's Claim Fails as a Matter of Law.

The Court should direct the entry of judgment as a matter of law to CCA under Rule 50(b)(3) of the Federal Rules of Civil Procedure.

To prevail on her sexual harassment claim, Wilcox had to show that:  (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment;  (3) the harassment was based on sex;  (4) the harassment was

sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there is a basis for holding the employer liable for the harassment either directly or indirectly.  [Docket No. 54, p. 29].

Wilcox's claim fails as a matter of law on the 4th and 5th elements. Addressing the 5th element first excludes the hugs from consideration.  Thus narrowed, Wilcox's claim then clearly fails to meet the 4th element.

### 1.    <u>Jackson Was Not a Supervisor</u>.

As an initial matter, Jackson was not a supervisor within the meaning of the law.  In *Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2013), the Supreme Court narrowly defined a supervisor for purposes of the *Faragher-Ellerth* defense as someone with the authority to take tangible employment actions against the plaintiff.  *Id.* at 2439; *see also Anderson v. Brown Indus*., 614 Fed. Appx. 415, 417 (11th Cir. 2015).  In order to be a "supervisor," an employee must have the power to effect "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Vance,* 133 S. Ct. at 2443, *quoting Ellerth*, 524 U.S. at 761)).

Former Warden Walter Wells testified that Jackson did not have authority to take any tangible employment action against Wilcox or any other employee. Jackson did not have the authority to:  hire; fire; transfer; promote; demote; cut

pay; assign overtime; reassign post assignments; or issue formal discipline. Therefore, per *Vance*, Jackson was a co-worker, not a supervisor. The Court recognized this by utilizing the proper, co-worker jury instruction – without objection from Plaintiff.

### 2.   <u>The Hugs Cannot be Considered</u>.

For the fifth element – employer liability – Wilcox must demonstrate "CCA knew, or in the exercise of reasonable care should have known, about the hostile work environment" and did not take prompt and remedial action in regard to the alleged sexual harassment. *See* Eleventh Circuit Court of Appeals Pattern Jury Instruction 4.7.

The sole basis for Wilcox's sexual harassment claim is co-worker Larry Jackson allegedly: (1) slapped her butt twice; (2) touched her thigh; (3) made a comment about her thighs; (4) made an off-color comment about a female friend; and, (5) hugged Wilcox on a regular basis. To be actionable, Wilcox had to prove that CCA knew, or in the exercise of reasonable care should have known, about the hugs.

There was no actual knowledge of the alleged hugs because Wilcox did not report them to CCA or otherwise complain about the hugs. At trial, consistent with her prior deposition testimony, Wilcox admitted she never reported the hugs during

her employment at CCA.  Walt Wells, Kenya Golden, and Shannon Pooler also

testify that Wilcox never complained about the hugs.[1]

In addition, constructive or imputed knowledge ***cannot be found*** as a matter

of law in a circumstance such as this one where a company has adopted an anti-

harassment policy.  The Eleventh Circuit authority on this point is very clear:

> In sum, we hold that an employer is insulated from liability under
> Title VII for a hostile environment sexual harassment claim premised
> on constructive knowledge of the harassment when the employer has
> adopted an anti-discrimination policy that is comprehensive, well-
> known to employees, vigorously enforced, and provides alternate
> avenues of redress.

*Farley v. American Cast Iron Pipe Co*., 115 F.3d 1548, 1554 (11th Cir. 1997); *Hill*

*v. Wal-Mart Stores, Inc.,* 510 Fed. Appx. 810, 815 (11th Cir. 2013) ("When a

company has developed and disseminated such a policy, it has fulfilled its

obligation to make reasonably diligent efforts to 'know what is going on' within

the company" and "the existence of [such a] policy precludes a finding of

constructive knowledge.") (internal citations omitted); *see also Terrell v. Paulding

County*, 539 Fed. Appx. 929, 932 (11th Cir. 2013) ("The record indicates that

[Plaintiff] was subjected to demeaning and sexually suggestive comments and

conduct by her co-workers.  [Plaintiff], however, failed to sufficiently put the

[employer] on notice about the behavior she was experiencing at the hands of her

---

[1] This Court found on summary judgment that Wilcox first raised the hugs issue at her deposition
(which occurred approximately three years after her separation of employment with CCA).
[Docket No. 54, p. 34, fn. 19].

5

colleagues.  Without such notice, whether constructive or actual, there is no basis for holding the [employer] liable for the harassment.") (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000) ("Employer liability in a case involving sexual harassment by a co-worker exists when the employer knew (actual notice) or should have known (constructive notice) of the harassment and failed to take remedial action.")).

CCA had ample protective policies and procedures in place and there was no evidence that any employee found the hugs ***unwelcome*** prior to the investigation by Kenya Golden.


3.      __The Remaining Allegations are not Severe or Pervasive__.

Eliminating the hugs from consideration – the single issue of fact the Eleventh Circuit relied on to reverse summary judgment on Wilcox's sexual harassment claim – judgment for CCA was required because two touches and two comments spread out over the course of half a year are not severe or pervasive ***as a matter of law***.  Thus, Wilcox's claim fails to meet the 4th element above.  *See, e.g., Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (finding that the conduct alleged by plaintiff fell "well short" of the severe or pervasive standard where it was alleged that supervisor rubbed his hip against employee's hip while touching her shoulder and smiling, made sniffing sounds while looking at

employee's groin, and constantly followed and stared at the employee in a very obvious fashion); *Gupta v. Fla. Bd. of Regents*, 212 F.3d. 571, 584-586 (finding insufficient severe or pervasive conduct where a supervisor frequently looked the female plaintiff "up and down"; called her at night two to three times a week and asked questions about her romantic life; once placed his hand on the inside of her thigh; once lifted the hem of her dress; once told her "You are looking very beautiful"; once told her that she should have called him on a stormy night so that he could spend the night with her; twice told her "I can look at you and I can tell you are innocent and you don't have much experience"; and once stated that women are like meat and "men need variety in women").

In its Summary Judgment Order, this Court found that the two alleged touches, **"though decidedly lacking in decorum, *do not clear the high hurdle*** of either severe or pervasive conduct sufficient to alter the terms or conditions of Plaintiff's employment." [Docket No. 54, pp. 34-35 (emphasis added)]. Likewise, this Court found: "[a]s for the inappropriate statements, Plaintiff asserted that both statements were made sometime between January 2009 and July 2009, a six month period" and "[c]ourts have consistently held that sporadic or isolated comments, however vulgar, ***are not enough*** to establish a hostile work environment." [Docket No. 54, pp. 32-33 (emphasis added)].

Analyzing this case properly under the co-worker standard and thereby removing the hugs from the equation has a material impact on the outcome.  The hugs clearly tipped the scale in Plaintiff's favor at the Eleventh Circuit:

> [H]er deposition and affidavit describe harassment that a reasonable jury could conclude was severe or pervasive, ***including daily unwanted physical contact over a period of months***, two additional attempts to touch her thighs and buttocks, and two expressly sexual comments.

[*Id.* (emphasis added)].   The only two cases cited by the Eleventh Circuit to support this conclusion involved ***daily*** harassment, *see Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002), and ***fifteen*** instances of harassment in four months, *see Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 509 (11th Cir. 2000).   [*Id.* at p. 8].   Here, the hugs were the only alleged conduct that was anything other than purely sporadic or isolated.  Taking them out of the equation – as should be the case – defeats Wilcox's claim as a matter of law.

### 4.  <u>Prompt and Remedial Action.</u>

Even if Jackson's conduct could be considered severe or pervasive, Wilcox still does not prevail because the evidence at trial showed CCA took prompt, remedial action to remedy the situation.

On July 10, 2009, Wilcox complained that Jackson slapped her on the butt twice.   CCA took action on the same day.   In fact, Shannon Pooler (Human

Resources Manager) brought the complaint to the attention of Walt Wells (Warden) on the same day.  From there, a determination needed to be made as to whether the alleged conduct actually occurred.   CCA promptly investigated Wilcox's allegation which revealed highly contradictory accounts which were summarized at the trial:

> Wells said he didn't think the "butt slap" incident was harassment and there was evidence it did not happen.  Wells said it could have been an innocent gesture blown out of proportion.  Just someone trying to brush paint off the back of her jacket;
>
> Sammons testified that he did not see Jackson slap Wilcox on the butt. Defendant's Ex. 34 confirmed his testimony.   [Docket No. 110]. Wilcox testified that she and Sammons "locked eyes" when it happened but he flatly denied seeing anything;
>
> Jackson testified he never slapped Jackson on the butt (and denied all other alleged conduct);
>
> Wells testified the facility looked into the July 10th complaint right away and took statements from employees.  Sammons' statement [Defendant's Ex. 34] was one example;
>
> Hill testified that Wilcox made up allegations to get attention of management;
>
> Wells testified that Wilcox made other complaints around the same time (Chief Spires called her "kid" and Assistant Warden Gunn threw a plastic basket at her) that were shown to be false;
>
> Wilcox's husband had been recently terminated for sexual harassment; and
>
> Felecia Spires testified that she felt Wilcox was attempting to coerce her into writing a statement critical of Jackson.

"An employer must be allowed some time to gauge the credibility of the complainant and the seriousness of the situation if we are to observe the Supreme Court's caution that Title VII is not 'a general civility code for the American workplace.'" *Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 988 (8th Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998)). The law does not require an employer to blindly believe an employee's claims just because they are made. *See Baldwin v. Blue Cross/Blue Shield*, 480 F.3d 1287, 1305 (11th Cir. 2007) ("A threshold step in correcting harassment is to determine if any occurred, and that requires an investigation that is reasonable given the circumstances."); *Kilgore v. Thompson & Brock Mgmt., Inc.,* 93 F.3d 752, 754 (11th Cir. 1996) (finding that the defendants' actions were sufficient to show "prompt remedial action" when they conducted investigatory interviews but found no support for the harassment allegations); *Stancombe v. New Process Steel, LP* (11th Circuit 2016) (unpublished) (employer interviewed employees regarding the first incident, the accused denied the incident, and no other employee corroborated plaintiff's allegations. The fact that defendant did not find validation for plaintiff's allegations does not mean that its response was not "appropriate"); *Harris v. L & L Wings, Inc*., 132 F.3d 978, 984 (4th Cir. 1997) ("a good faith investigation of alleged harassment may satisfy the 'prompt and adequate' response standard, even if the investigation turns up no evidence of

harassment.") (citing *Kilgore v. Thompson & Brock Management, Inc.,* 93 F.3d 752, 754 (11th Cir. 1996)).

Notwithstanding the highly contradictory findings of the investigation, both Wells and Jackson testified that CCA ordered Jackson to stay away from Wilcox after her July 10 complaint. *Baldwin*, 480 F.3d at 1305-1306 ("We have held that warnings and counseling of the harasser are enough where the allegations are substantiated.") (citing *Fleming v. Boeing Co.,* 120 F.3d 242, 246-47 (11th Cir. 1997) (talking to the harasser and telling the complainant to report any further problems was, as an initial measure, enough to constitute "immediate and appropriate corrective action")). After Wilcox's July 10 complaint – which was her first complaint – Jackson ***never*** touched her or said another word to her. *Walton v. Johnson & Johnson Servs*., 347 F.3d 1272, 1288 (11th Cir. 2003) ("According to the EEOC, remedial measures should be designed to stop the harassment, correct its effects on the employee, and ensure that the harassment does not recur.") (internal citations). CCA's action was both prompt and remedial.

On July 23, 2009, Wilcox provided a detailed written complaint which summarized her contentions against various CCA employees including the allegation that Jackson slapped her on the butt twice on July 10, 2009. Pooler, the HR Manager, received the written complaint on July 23rd and testified she took it to Warden Wells the same day. Wells testified in response to a question from the

Court that he acted quickly to notify the CCA corporate office in Nashville, Tennessee that an outside investigator was needed.  The CCA Ethics Office then coordinated with Kenya Golden, the outside investigator, to travel to the McRae facility, arrange for meeting times with 16 employees, and conduct an investigation and interviews.

On August 27, 2009, Golden arrived at the McRae facility and interviewed 16 employees about the numerous allegations made by Wilcox against multiple CCA employees.  Wilcox was interviewed as a part of this investigation and, for the *first time*, made new allegations that Jackson touched her thigh and made two inappropriate comments.

On September 9, 2009, Golden released a report which summarized the results of the 16 interviews.  Golden concluded her report as follows:

> [U]pon gaining knowledge of the concerns presented by CO Felicia Wilcox, Warden Walt Wells, attempted to appropriately address the matters by directing and/or conducting formal inquiries into her concerns.  It is observed that Felicia Wilcox was not satisfied with the facility's action in response to her claims; however, ***there is no evidence or information to support that Warden Wells knowingly failed to take appropriate action or deliberately ignored her concerns***.

[Docket No. 110: Plaintiff's Ex. 10, p. CCA 000158 (emphasis added)].

Five days later, on September 14, 2009, CCA terminated Jackson.  [Docket No. 110: Plaintiff's Ex. 11].  Wilcox did not have any other complaints of sexual harassment against any other CCA employee.

Put simply, CCA began investigating Wilcox's initial complaint on the same day that it was made and Jackson was ordered by CCA to stay away from Wilcox. And from the date of the initial July 10 complaint, Jackson never touched or spoked to Wilcox again.  Ultimately, following a full blown investigation, Jackson was terminated.  CCA established that it took prompt, remedial action as a matter of law.

Importantly, the Eleventh Circuit has expressly rejected an "adequacy of the remedial measures" argument in *Baldwin*.  In that case, the Eleventh Circuit held:

> We have held that even if the process in which an employer arrives at a remedy in the case of alleged sexual harassment is somehow defective, the defense is still available if the remedial result is adequate. *Walton*, 347 F.3d at 1288 **("[W]here the substantive measures taken by the employer are sufficient to address the harassing behavior, complaints about the process under which those measures are adopted ring hollow."**). In other words, a reasonable result cures an unreasonable process. It does so because Title VII is concerned with preventing discrimination, not with perfecting process. *See Faragher,* 524 U.S. at 805-06, 118 S. Ct. at 2292 (Title VII's "primary objective, like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm." (internal quotation marks omitted)).

*Baldwin,* 480 F.3d 1287, 1305 (emphasis added).

Because CCA's action was both prompt and remedial as a matter of law, CCA is entitled to judgment on Wilcox's claim.

**B.**     <u>**The Evidence did not Support any Award of Punitive Damages.**</u>

The jury's award of punitive damages was clearly in error and against the weight of evidence.   The Court should vacate the punitive damages award per Rule 59(e) on four separate grounds:   First, punitive damages should not have been available because Wilcox did not specifically plead such damages in her Complaint[2]; second, CCA acted in good faith to comply with federal statutes; third, in order to impute punitive damages on a company as a whole, the evidence must show that upper level management acted with malice or reckless indifference and Warden Wells is not an upper level manager within the meaning of the law; and, fourth, even a finding of intentional discrimination is not enough to support imposition of punitive damages.

"Punitive damages are disfavored by the law and are awarded solely to punish defendants and deter future wrongdoing."   *Ash v. Tyson Foods, Inc*., 664 F.3d 883, 900-901 (11th Cir. 2011) (citing *Ferrill v. Parker Grp., Inc*., 168 F.3d 468, 476 (11th Cir. 1999) (quotation marks omitted)).   To create a triable jury issue regarding punitive damages, the plaintiff must put forth "***substantial evidence***" that the defendant acted with actual malice or with reckless indifference to her federally protected rights.   *Miller v. Kenworth of Dothan, Inc*., 277 F.3d

---

[2] As the Court noted during its rulings on the parties' motions in limine on the morning of the trial, Wilcox did not use the word "punitive" anywhere in her Complaint.   See also, Docket No. 83, p. 9 where CCA raised this issue pre-trial.

1269, 1280 (11th Cir. 2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536-537) (1999) (emphasis added).  Unlike a Rule 50 motion, the Court is free to weigh the evidence in considering a Rule 59 motion.  When independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well.

### 1.   CCA's Good Faith Efforts.

The Supreme Court has made clear:  "[I]n the punitive damages context, an employer **may *not*** be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with [the law]."  *Ash v. Tyson Foods, Inc*., 664 F.3d 883, 900-901 (11th Cir. 2011) (emphasis added) (citing *Kolstad* 527 U.S. at 545 (quotation marks omitted); *see also Miller*, 277 F.3d at 1280 ("[T]he Supreme Court has held that employers may assert a good faith defense to vicarious liability for punitive damages where the employment decisions of managerial agents . . . are contrary to the employer's good-faith efforts to comply with" the law). (quotation marks omitted)).

The Supreme Court explained in *Kolstad* that an employer can successfully maintain a "good faith defense" by maintaining a policy that prohibits unlawful employment acts.  In the *Ash* case, the Eleventh Circuit applied the Supreme Court's rationale as follows:

The theory that [Plaintiff's] counsel pitched to the jury, and pitches to us, is that an employer's good faith efforts to prevent discrimination in employment decisions do not matter so long as someone in a position to make a hiring or promotion decision violates that policy even once. ***If accepted, that theory would butcher precedent and eviscerate the good faith defense.***

\*       \*       \*

If, as [Plaintiff's] counsel insists, a single misuse of managerial authority resulting in discrimination establishes that the employer did not make good faith efforts to prevent that discrimination, then the good faith defense does not exist. Under her theory the only time that the good faith defense to vicarious liability for punitive damages could come into play would be when there was no violation of the job discrimination laws to begin with, and therefore no basis for compensatory or punitive damages. Counsel has not explained to us the utility of a defense that exists only when there is no need for it. Her good faith defense is a defense that has no purpose, serves no function, and makes no sense.

\*       \*       \*

Under the *Kolstad* precedent, [the Company] cannot be held vicariously liable for [the manager's employment decision] because that "discriminatory employment decision[] of [a] managerial agent[]" was "contrary to [employer's] good faith efforts to comply with" anti-discrimination laws. *Id.*, 119 S. Ct. at 2129.

*Ash*, 664 F.3d at pp. 905-906 (emphasis added).[3]

Thus, "[E]ven if [manager] had shown malice or recklessness, plaintiff has not provided sufficient evidence to impute liability for punitive damages to [the company]." *Perez v. Sprint/United Mgmt. Co.*, 2013 U.S. Dist. LEXIS 183026 (N.D. Ga. Dec. 19, 2013); *see Kolstad,* 527 U.S. at 530. The *Perez* court found:

_____

[3] The Eleventh Circuit's decision in *Ash* is directly on point. The entire decision is attached as Exhibit A.

> **"[A]n employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII."** *Id*. at 545 (quotation omitted). Plaintiff has not shown that [the company] did not undertake good-faith efforts to comply with [federal employment law]. Instead, plaintiff admits that [the company] has adopted an Equal Employment Opportunity Statement declaring that it will not discriminate against anyone due to a disability and that [the company] has a reasonable accommodation policy. Therefore, the Court grants defendant's motion for summary judgment on plaintiff's punitive damages claim.

*Perez*, 2013 U.S. Dist. LEXIS 183026, 37-38 (emphasis added).

In the present matter, the evidence at trial demonstrated conclusively that CCA undertook good faith efforts to comply with the federal anti-discrimination and harassment laws by adopting policies and providing regular training designed to prevent and address such conduct in the workplace. Evidence entered at trial that demonstrates CCA's good faith efforts included the following:

> CCA Code of Conduct policy [Docket No. 110, Plaintiff Ex. 1];
>
> CCA Equal Employment Opportunities policy [Docket No. 110, Plaintiff Ex. 2];
>
> CCA Harassment/Sexual Harassment policy [Docket No. 110, Plaintiff Ex. 3];
>
> CCA facility specific Standards of Employee Conduct and Responsibility policy [Docket No. 110, Plaintiff Ex. 4];
>
> Wilcox signed Ethics and Conduct Standards Acknowledgement Form [Docket No. 110, Plaintiff Ex. 5];
>
> Wells signed Standards of Employee Conduct Acknowledgement Form [Docket No. 110, Plaintiff Ex. 6];

Wells signed Harassment/Sexual Harassment Acknowledgement Form [Docket No. 110, Plaintiff Ex. 7];

Wells testimony that he had received training on the various policies;

Wilcox multiple signed acknowledgement forms [Docket No. 110, Plaintiff Ex. 14];

Wilcox additional signed acknowledgement forms [Docket No. 110, Defendant Ex. 7]; and

Wilcox signed Code of Conduct Acknowledgement Form [Docket No. 110, Defendant Ex. 15].

Because CCA had policies and procedures in place to prevent unlawful harassment, CCA acted in good faith and the Court should vacate the punitive damages award.

### 2.    <u>Upper Level Management.</u>

Further, "[p]unitive damages will ordinarily *not* be assessed against employers with only constructive knowledge of [Title VII discrimination]; rather, punitive damages may *only* be considered in cases where the 'discriminating employee was high up the corporate hierarchy' or where 'higher management countenanced or approved his behavior.'" *Miller*, 277 F.3d at 1280 (quoting *Dudley v. Wal-Mart Stores, Inc*., 166 F.3d 1317, 1323 (11th Cir. 1999)).

Thus, to impute punitive damages on a company as a whole, the evidence must show that *upper level* management acted with malice or reckless indifference. Warden Wells is not an upper level manager within the meaning of the law as

interpreted by the Eleventh Circuit.  Again, in *Ash*, the Eleventh Circuit succinctly

explained this principle:

> The law ***does not allow*** a jury to impose punitive damages on an
> employer based on the decision of one who is ***not high enough*** in the
> corporate hierarchy simply because the jury wants to send a big
> corporation a big message.  See *Kolstad*, 527 U.S. at 529-30, 119 S.Ct
> at 2122 ("Punitive damages are limited . . . to cases in which the
> employer has engaged in intentional discrimination and has done so
> with malice or with reckless indifference to the federally protected
> rights of an aggrieved individual." (quotation marks omitted)
> (emphasis added)).  Nor does the law allow a jury to impose punitive
> damages simply on the basis that the decision maker was in charge of
> one of the hundreds of plants and offices that the employer had
> worldwide.

*Ash*, 664 F.3d at   903-904 (emphasis added) (finding the decision of a plant

manager overseeing 1,400 employees was not "upper level management" for

purposes of awarding punitive damages); *see also Dudley v. Wal-Mart Stores*,

166 F.3d 1317, 1323 (overturning an award of $250,000 in punitive damages

because:  "Neither [the manager or co-manager of the store] is high enough up

Wal-Mart's corporate hierarchy – if they can be said to be in the corporate

management hierarchy at all – to allow their discriminatory acts to be the basis for

punitive damages against the corporation.")

### 3.    Even Intentional Discrimination is Insufficient.

Finally, Wilcox did not prove the requisite high level of malice or reckless

indifference to justify punitive damages.  As the U.S. Supreme Court, Eleventh

Circuit and this Court have repeatedly found, a plaintiff must put forth "***substantial***

*evidence*" that the defendant acted with actual malice or with reckless indifference to her federally protected rights. *Spriggs v. Mercedes-Benz USA, LLC*, 2016 U.S. Dist. LEXIS 55545 (S.D. Ga. Apr. 26, 2016) (emphasis added) (citing *Miller*, 277 F.3d at  1280 (citing *Kolstad*, 527 U.S. at 536-537).  "Malice means an intent to harm and recklessness means serious disregard for the consequences of one's actions." *E.E.O.C. v. W&O, Inc*., 213 F.3d 600, 611 (11th Cir. 2000) (alteration and quotation marks omitted).  "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Alger v. Prime Rest. Mgmt., LLC*, 2016 U.S. Dist. LEXIS 90483 (N.D. Ga. July 13, 2016) (citing *Kolstad*, 527 U.S. at 536).

Importantly, even "[A] finding of intentional discrimination, if found by a jury in this case based on direct or circumstantial evidence, *is not sufficient* on its own and *does not constitute* the required malice and recklessness to sustain a punitive damages claim." *Perez*, 2013 U.S. Dist. LEXIS 183026, *37 (N.D. Ga. Dec. 19, 2013) (emphasis added); *see Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 477 (11th Cir. 1999) (although evidence showed that defendant intentionally discriminated on the basis of race, punitive damages claim could not succeed where there was a specific lack of racial animus).

Here, Wilcox did not put forward "substantial evidence" that CCA acted with actual malice or reckless indifference to her federally protected rights.  To the

contrary, CCA established (and recites above) the good faith efforts it took to prevent and address harassment in the workplace and investigate her concerns.

**C.**     **The Court's Revised Punitive Damages Instruction was in Error.**

CCA's motion under Rule 59(e) is further supported by the substantive and procedural errors in the Court's revised jury instruction on punitive damages. CCA timely objected to the revised instruction per Rules 51(c)(2)(B) and 51(d)(1)(A).  The revised instruction was in response to a question from the jury on punitive damages:

> Please explain the rules of punitive damages.  The way it was understood was that a corporation cannot be charged punitive damages from actions of management.[4]

[Docket No. 103].

In response, the Court gave a revised instruction that departed significantly from the Eleventh Circuit pattern, misstated or omitted critical portions of the law on punitive damages, likely confused the jury, and clearly prejudiced CCA.  [The attached **Exhibit B** is a partial transcript of the portion of trial related to the revised instruction; the attached **Exhibit C** is a copy of the Eleventh Circuit's pattern instruction with highlighted sections that were omitted by the Court as described below].  Specifically, the revised instruction:

---

[4] This question seems clearly to implicate the "upper level management" concept required by the Eleventh Circuit as set forth in *Ash* and the other cases cited above.

omitted the entire section about CCA's good faith defense [*See* **Ex. C**, yellow highlighted section];

omitted the entire section which identifies six separate factors the jury should consider in determining whether to award punitive damages (related to the cases cited above that simply finding intentional discrimination is not enough to impose punitive damages [*See* **Ex. C**, bright green highlighted section];

omitted the entire section about what constitutes employees acting in a managerial capacity (related to the "upper level management" cases cited above) [*See* **Ex. C**, turquoise highlighted section];

omitted the entire section that defines malice and reckless indifference [*See* **Ex. C**, light gray highlighted section];

incorrectly identified Wells as the only management to be considered for purposes of punitive damages without any supporting evidentiary basis, contrary to the cases cited above that requires involvement of "upper level" management and contrary to the objection of both parties [*See* **Ex. C**, "the only person who qualifies as a manager for purposes of these instructions would be Warden Wells"];

incorrectly isolated punitive damages alone while the pattern instruction includes punitive damages in the same instruction as liability;

incorrectly endorsed Wilcox's theory of the case on the alleged July 10 incident (which CCA vigorously contested) by assuming that the alleged acts occurred on July 10, 2009 and that Warden Wells did not do enough to "protect" Wilcox thereafter; and,

incorrectly used the word "promptly" or "more promptly" multiple times when that word or concept is not included in the punitive damages section in the Eleventh Circuit pattern instruction [*See* **Ex. C**, "Wells did not act promptly enough"; and "those incidents could have been avoided if Warden Wells had acted more promptly"].

The revised instruction was procedurally deficient as well. Counsel were

only given the opportunity to object to the revised instruction ***after*** the Court

provided it to the jury. Ultimately, counsel for **both parties** objected to the revised instruction. The revised instruction clearly had a material impact on the jury as they returned their verdict very quickly after receiving the revised instruction.

The Court's revised instruction in response to the jury question did not accurately reflect the law, did not correctly instruct the jury on the issue of punitive damages; clearly led to jury confusion and was unfairly prejudicial to CCA. See *Johns v. Jarrard*, 927 F.2d 551, 555 (11th Cir. 1991) (ordering new trial, finding district court's supplemental instruction when answering jury question misled the jury and jury returned a verdict for the defendants shortly after receiving revised instruction). This offers further support to vacating the punitive damages award.

## D.     In the Alternative, Punitive Damages Should be Significantly Reduced.

If the Court denies CCA's motion to vacate the verdict on the merits and denies CCA's motion to vacate the punitive damages award in its entirety, CCA respectfully moves in the alternative per Rule 59(e) for the Court to significantly reduce the punitive damages award consistent with Supreme Court precedent.

Courts must consider "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award," and with it, due process considerations. *See State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 418 (2003). Although the Supreme Court has not established a specific acceptable ratio between the compensatory damages awarded and punitive

damages awarded, it has found that "few awards exceeding a ***single-digit ratio*** between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id*. at 425 (emphasis added). The Supreme Court has also held that an award greater than a ***four-to-one*** ratio is constitutionally suspect. *Id.* (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23-24 (1991); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996)).

In this case, it is evident the jury imposed excessive punitive damages of $100,000 in comparison to $4,000 in compensatory damages – a ***25-to-1*** ratio. [Docket No. 104]. The jury's award of $100,000 must be reduced significantly in accord with the Supreme Court's instruction that anything higher than a 4-to-1 ratio is suspect. CCA respectfully requests that the punitive damages award be remitted to no more than $16,000.

### III.   CONCLUSION

CCA respectfully submits it is entitled to judgment in its favor as a matter of law and that the jury's verdict be vacated in its entirety. Failing that, the jury's award of punitive damages must be vacated because it was not based on sufficient evidence and did not meet the high standard of proof required. In the alternative, the punitive damages award should be significantly reduced in light of Supreme Court precedent that anything more than a 4-to-1 ratio is constitutionally suspect.

Respectfully submitted,


*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782
BARNES & THORNBURG LLP
Prominence in Buckhead, Suite 1700
3475 Piedmont Road, N.E.
Atlanta, Georgia  30305
Telephone:   (404) 264-4018
Facsimile:    (404) 264-4033
E-mail:   John.Koenig@btlaw.com

Adam L. Bartrom
*Pro Hac Vice Admission*
BARNES & THORNBURG LLP
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802-2206
Telephone:   (260) 423-9440
Facsimile:    (260) 424-8316
Email:   adam.bartrom@btlaw.com

*Attorney for Defendant,*
*Corrections Corporation of America*
*a/k/a McRae Correctional Facility*

## CERTIFICATE OF COMPLIANCE

As required by Local Rule 7.1D, N.D. Ga., I hereby certify that this pleading has been prepared in Times New Roman 14-Point font, one of the font and point selections approved by this Court in Local Rule 5.1B, N.D. Ga.

This 9th day of September, 2016

*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of September, 2016, a copy of the foregoing was filed electronically and will be served by electronic notice via the Court's CM/ECF system to the following counsel of record:

Helen H. Albee, Esquire
Neil L. Henrichsen, Esquire
HENRICHSEN SEIGEL, PLLC
1648 Osceola Street
Jacksonville, FL  32204

David Gan-wing Cheng
The Law Office of David Cheng, Ltd.
1801 Peachtree Road, NW
Suite 100
Atlanta, GA  30309
david@consideringdavidcheng.com

*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782

DMS 4321311v1

27

# TAB NO. 117

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FELECIA A. WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:11-CV- |
| | ) | 04365-ODE-CCH |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA A/K/A McRAE | ) | |
| CORRECTIONAL FACILITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF FELECIA A. WILCOX'S OPPOSITION TO DEFENDANT'S RULE 50/59 MOTION AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Plaintiff Felecia A. Wilcox files her opposition to Defendant Corrections Corporation of America a/k/a McRae Correctional Facility ("CCA" or "Defendant")'s Rule 50/59 Motion (the "Motion") and requests this Honorable Court to deny the same entirely. As set forth herein and as reflected by the record, sufficient evidence was presented from which a reasonable jury could find in favor of Ms. Wilcox on her sexual harassment claim. Furthermore, the Motion as to the punitive damages award is an improper use of Rule 59(e). CCA failed to challenge the punitive damages issue pursuant to Rule 50 at any point during the trial. It cannot now attack the award of punitive damages through Rule 59, using arguments which it should have made in its Rule 50 motion. Accordingly, the Court should deny CCA's Motion.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff obtained a judgment against the Defendant CCA for sex discrimination (harassment) in violation of Title VII. The jury awarded compensatory damages to Plaintiff for "garden variety" emotional distress in the amount of $4,000.00 and found that the Defendant acted in reckless disregard of Plaintiff's rights and awarded punitive damages in the amount of $100,000.00 (Doc. Nos. 104 and 106).

Trial of the case started on August 9, 2016.  Plaintiff Felecia Wilcox testified at length regarding the hostile work environment she encountered on account of her gender.  The testimony of Plaintiff included, in relevant part, detailed description of the sexually related unwanted comments by Sgt. Jackson, such as the "juicy thighs" comment or comment related to a woman Sgt. Jackson worked with in the military. Additionally, Plaintiff testified about Sgt. Jackson's unwanted touching of her body, including that he touched her thigh and slapped her buttocks.  Finally, Plaintiff testified regarding Sgt. Jackson's repeated caresses and hugging which occurred almost every day to Plaintiff and other women in the workplace. Other witnesses testified regarding the touching of female employees by Sgt. Jackson, including Kim Heller, James Hill, Felicia Miller (Spires) and Sgt. Jackson himself.  Based upon the

testimony at trial, there was a culture of touching of female employees in the workplace by Sgt. Jackson which was open, notorious and well known to Defendant.

Warden Walter Wells testified at length about the supposed paramilitary structure of the CCA facility where Plaintiff worked, as did all the other witnesses. The chain of command was described as essential to order in the prison facility, where Warden Wells supervised over 300 employees and approximately 1500 convicted male felons required that employees, like Plaintiff, stick to a strict chain of command that required Plaintiff to interact with Sgt. Jackson. The workplace for Plaintiff, as admitted to by the Warden and others, was a dangerous place.

Investigator Kenya Golden further testified in the case about Sgt. Jackson's repeated acts of unwanted sexual harassment discovered during her investigation, including repeated touching of female employees and comments of a sexual nature. Ultimately, Warden Wells and others admitted that Sgt. Jackson was terminated in September 2009 despite Plaintiff having complained in July 2009 about Sgt. Jackson's behavior. According to Plaintiff's testimony, Sharon Pooler, Defendant's Human Resources manager, admitted that the Defendant failed to take Plaintiff's complaints of sexual harassment seriously and Ms. Pooler admitted to assisting Plaintiff in steps to get the attention of management. Also, it was clear that Ms. Pooler had informed Defendant's home office in Nashville, Tennessee about

Plaintiff's complaints of sexual harassment.  Nevertheless, the testimony of Plaintiff, Warden Wells, Ms. Pooler and others demonstrates that despite Defendant's corporate office representatives in Nashville being made aware of Plaintiff's complaints and Warden Wells' knowledge, Defendant allowed Sgt. Jackson to remain in the workplace with Plaintiff.  Importantly, Plaintiff testified that during the time period after her complaints of sexual harassment by Sgt. Jackson until his termination she was made to endure threatening and intimidating behavior by Sgt. Jackson in the workplace, including his punching equipment near her, hitting his hand in his fist and staring in a threatening manner at her.  Furthermore, during this same time period, Sgt. Jackson was someone who would joke with management of the Defendant, such as Warden Wells.

The jury heard testimony from Plaintiff, Kim Heller and Ms. Pooler of Plaintiff's emotional state, crying and being highly upset, regarding the Plaintiff's reaction to Sgt. Jackson's sexual harassment.

In sum, whether viewed in the light most favorable to the Plaintiff (which is the standard) or not, there is an abundance of evidence supporting Plaintiff's damage award for compensatory and punitive damages.

4

## **STANDARD OF REVIEW**

The standard for deciding a motion for judgment as a matter of law pursuant to Rule 50, whether as an initial motion or a renewed motion, is whether the evidence presented is legally sufficient to find for the party on that issue. *Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713, 716 (11th Cir.2012). If the court does not grant a motion for judgment at the close of the evidence under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. FED.R.CIV. P. 50(b).

When deciding a motion for judgment, all evidence in the record is reviewed "in the light most favorable to, and with all reasonable inferences drawn in favor of, the non-moving party." *Walker v. NationsBank of Fla. N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995). A motion for judgment should only be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on the issue. *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1192 (11th Cir.2004). The "facts and inferences must point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Flury v. Daimler Chrysler Corp*., 427 F.3d 939, 944 n. 12 (11th Cir.2005) (citation omitted). The court may not weigh conflicting pieces of evidence or inferences, or judge the credibility of witnesses. *See Reeves v. Sanderson Plumbing Products,* 530 U.S. 133,

150 (2000); *Shannon v. Bellsouth Telecommunications,* 292 F.3d 712, 715 (11th Cir. 2002). If reasonable jurors could reach different conclusions about the evidence presented, the court is not to substitute its judgment for the jury's. *Shannon*, 292 F.3d at 715. A substantial conflict in the evidence should result in a determination by the jury, not on a Rule 50 motion. *See Abel v. Dunnerly*, 210 F.3d 1334, 1337 (11th Cir. 2000).

Based on the Defendant's arguments in its Motion, it wants the Court to weigh the evidence, draw inferences in its favor only and determine the credibility of witnesses which is not proper on a Rule 50 motion. *See Reeves*, 530 U.S. at 150. The Court should reject the Defendant's arguments on that basis. Additionally, there was sufficient evidence presented for a reasonable juror to find in favor of Ms. Wilcox when the totality of the evidence is reviewed and viewed in the light most favorable to her. As a result, the Court should deny the Motion.

## **LEGAL ARGUMENT**

    **I.**    **Sufficient evidence was presented by Plaintiff on the harassment claim to warrant the denial of Defendant's Motion.**

The ultimate question on Ms. Wilcox's sexual harassment claim is whether she was the victim of unlawful discrimination based on her sex. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714 (1983). By cherry picking evidence out the record for the Court, CCA argues that the evidence

presented at trial was not legally sufficient to find that the harassment was severe and pervasive enough to alter the terms and conditions of Plaintiff's employment and that there was a basis for holding CCA directly or indirectly liable for the harassment. Motion at 2-3. However, the Court is required to review all the evidence presented, in the light most favorable to the Plaintiff and draw all reasonable inferences in her favor. Upon applying the correct standard, it is clear that the Motion should be denied.

### A.      The Culture of Touching at CCA

"Where there is evidence from which a jury reasonably could infer that the employer did know of the harassment, of course, the existence of a policy--no matter how well-designed--will not absolve an employer of liability under Title VII." *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997). CCA argues in its Motion that simply because it had an anti-harassment policy in place, it should be absolve of liability. Motion at 5. CCA is wrong as the *Farley* court observed. Where it is reasonable to infer from the circumstances that the employer did know of harassment, that employer may not hide behind its policy. *Farley,* 115 F.3d at 1554. The evidence in this case, when viewed in the light most favorable to the Plaintiff, was more than sufficient for a jury to infer CCA's liability under Title VII due to the culture of touching tolerated by CCA in the workplace.

It is clear from the testimony of Plaintiff, Kim Heller, Felicia Miller (Spires), James Hill and even Sgt. Jackson, that the work environment at the CCA facility where Plaintiff worked was permeated with the inappropriate touching of female employees in the workplace.  James Hill even stated that there was a "culture" of hugging and touching female employees.  Plaintiff and Ms. Heller testified further that Sgt. Jackson would also "caress" women in the workplace, a correctional facility for convicted male felons.  The report of Kenya Golden also corroborated that Sgt. Jackson's inappropriate touching of women in the workplace was open and known. In sum, the jury heard testimony and reviewed documents showing that the touching female employees like Plaintiff, by Sgt. Jackson was so open and notorious that Defendant CCA knew or should have known.  Thus, its attempts to hide behind its policy must fail. The evidence was sufficient to demonstrate the harassment suffered by Plaintiff was severe and pervasive and Defendant's Motion should be denied.

**B.    CCA's Actions not Prompt or Remedial**

It is also evident from the testimony at trial, that CCA failed to act promptly upon becoming aware of the inappropriate behavior of Sgt. Jackson toward Plaintiff. As a result, CCA is liable under Title VII despite their anti-discrimination policy. Unfortunately for CCA, the existence or dissemination of the policy is not the only key to escaping liability. A demonstrated commitment to adhering to the policy

through vigorous enforcement must also be shown. *Farley,* 115 F.3d at 1554. Here, the reasonableness of the actions taken by CCA, if any, upon receiving Plaintiff's complaint is a component of the inquiry. *See Baldwin v. Blue Cross/Blue Shield*, 480 F.3d 1287, 1303. (11th Cir. 2007). To correct harassment, the employer should investigate to determine whether it occurred. *Id*. The evidence at trial showed CCA failed to begin an investigation upon receipt of Plaintiff's complaint. Nor did it take any remedial actions until months after her first complaint.

In fact, instead of moving Plaintiff or Sgt. Jackson, Defendant allowed Sgt. Jackson to work with Plaintiff until his termination in September 2009.  As a result, Sgt. Jackson was able to continue to direct hostile and intimidating behavior toward the Plaintiff. Warden Wells, Ms. Pooler and Sgt. Jackson all testified that Plaintiff or Sgt. Jackson could have been moved away from Plaintiff's workspace after Plaintiff's complaints in July 2009. However, this remedial action was never taken, making CCA's claim of prompt and remedial action unworthy of belief.

The jury was also free to disbelieve Warden Wells and Sgt. Jackson's testimony that Jackson was instructed to stay away from Plaintiff following her complaint. The Court, at this stage, should not weigh the evidence or judge the credibility of the witnesses. *Reeves,* 530 U.S. at 150. The jury was presented with

sufficient evidence from which it could find CCA knew of the harassing behavior and failed to take prompt and remedial action in response.

Furthermore, there was evidence that Warden Wells initially claimed to have immediately investigated the sexual harassment complaint by Plaintiff; however, he later changed his story. At trial, Mr. Goodner testified at the trial that he never investigated Plaintiff's complaints of sex harassment by Sgt. Jackson. A jury could interpret Warden Wells's inconsistent testimony, i.e., changed testimony on the alleged investigation, as an attempt to cover up the failure to promptly investigate Plaintiff's complaint. *Cf. Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194-95 (11th Cir. 2004) (from employer's different and conflicting reasons for its actions at various stages of the process, the trier of fact can infer that the employer was "dissembling to cover up" its wrongful actions.) The jury could also infer from the testimony presented at trial that Warden Wells never had any intention of investigating Plaintiff's complaint against Sgt. Jackson. Finally, it was only after Plaintiff was subjected to working with Sgt. Jackson following her complaints through his termination that Defendant took action.  During that time period, which Warden Wells made clear were well known to CCA's Nashville home office, Plaintiff testified that Sgt. Jackson engaged in additional improper behavior that was threatening and intimidating. There was sufficient evidence presented to the jury to

show that CCA's response to Plaintiff's complaints were not prompt and were not remedial. Thus, given the culture of touching and CCA's failure to take prompt and remedial action in response to Plaintiff's complaints, the jury could reasonably find CCA knew of harassment and took no action, in complete disregard to its own policy. Defendant's Motion 59 should be denied.

## II.   The Court Should Deny CCA's Rule 59 Motion Attacking the Jury's Imposition of Punitive Damages Against CCA.

A. <u>CCA's Motion is Procedurally Defective.</u>

Having failed to include the issue of punitive damages in its initial Rule 50 motion (*see* Doc. 98), CCA now tries to attack the jury's imposition of punitive damages against it under Rule 59. Defendant CCA asks the Court to "vacate the award of punitive damages", Motion at 14; however, under Rule 59(a), after a jury trial, the Court may grant a new trial on all or some issues. FED. R.CIV. P. 59(a). Thus, the award of punitive damages cannot simply be vacated as requested by Defendant CCA pursuant to Rule 59(a).

Furthermore, Rule 59(e) is not the proper procedural rule for amending or altering a judgment following a jury verdict, let alone simply vacating the award with no further proceedings. The judgment in this matter was entered based upon the jury's verdict. *See* Judgment in a Civil Case (Doc. 106). A motion under Rule 59(e) allows the court a further opportunity to determine whether **its** judgment should be

11

modified "so as to alter **its adjudication of the rights of the parties**." *Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 267 (1978) citing *Department of Banking v. Pink*, 317 U.S. 264, 266 (1942) (emphasis added). The Court did not adjudicate the rights of the parties in this matter. The jury did. To the extent, CCA seeks to have the Judgment in this matter altered or amended pursuant to Rule 59(e), the Motion should be denied outright as improper under this rule.

      B. <u>New Arguments may not be presented at this stage.</u>

      Finally, assuming this Rule 59(e) is the proper vehicle which it is not, a motion to amend or alter the judgment is not to be used to raise new arguments which should have been made prior to the judgment being entered or in this case, prior to the jury verdict. *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990). Denial of this type of motion is warranted where the party advancing the new argument provides no reason for its failure to raise the argument at an earlier stage in the litigation. *Id.*

      CCA argues that Plaintiff did not mention punitive damages in her complaint and thus, punitive damages should have been unavailable to her. Motion at 14. CCA was placed on notice that Plaintiff would be seeking punitive damages in her summary of the case for the Pretrial Order which was filed on October 19, 2015, approximately 10 months prior to the trial. *See* Plaintiff's Summary of the Case, Exhibit C to the Pretrial Order, Doc. 69-3, at 2. Upon entry, the Pretrial Order

superceded the pleadings "which [are] amended to conform hereto. . ." Pretrial Order, Doc. 69 at 12. Based on the Pretrial Order entered in this case, CCA's argument that it was taken by surprise by Plaintiff's request to charge related to punitive damages should be rejected. *See* Motion at 14.

Furthermore, CCA failed to challenge the sufficiency of the evidence on punitive damages under Rule 50 in its initial motion. *See* CCA's Motion for Judgment as a Matter of Law (Doc. 98). The bulk of CCA's argument challenges the sufficiency of the evidence presented to the jury which FED. R. CIV. P. 50 is designed to address. However, CCA failed to raise this issue. This Court should not allow CCA to bypass the Federal Rules of Civil Procedure and use Rule 59(e) in this fashion. CCA's Rule 59 Motion should be denied outright.

### III.    There is No Basis for a new trial on the Issue of Punitive Damages

If the Court entertains Defendant's Rule 59 Motion, the relief available pursuant to Rule 59(a) is a new trial. *See* FED. R.CIV. P. 59(a) However, there is no basis for a new trial on the issue of punitive damages. Like its other arguments, Defendant ignores record evidence and seeks the benefit of all inferences of fact in making its argument. Based upon the record evidence at trial, however, the Motion should be denied.

For punitive damages to reach a jury, the plaintiff must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to her federally protected rights. *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1280 (11th Cir.2002) (*citing Kolstad v. Am. Dental Assoc*., 527 U.S. 526, 536-37 (1999)). "Malice means an 'intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'" *Ferrill v. Parker Group, Inc*., 168 F.3d 468, 476 (11th Cir.1999) (*quoting Splunge v. Shoney's, Inc*., 97 F.3d 488, 491 (11th Cir.1996)). "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Miller*, 277 F.3d at 1280 (*citing Kolstad*, 527 U.S. at 536). To be liable for punitive damages, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536. Eleventh Circuit case law supports a finding upholding a punitive damages award where there is: "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations." *Dudley v. Wal-Mart Stores, Inc*., 166 F.3d 1317, 1322-23 (11th Cir. 1999).

Punitive damages against an employer are upheld where failure to investigate discrimination demonstrates an ineffective anti-discrimination policy and reckless indifference to employee's rights. *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d

1261, 1281-82 (11th Cir. 2008). In the case at hand, there is sufficient evidence demonstrating that Defendant CCA acted in reckless disregard of Plaintiff's rights. The evidence in the record at trial demonstrates complaints by Plaintiff of harassment in the workplace. After Plaintiff's initial formal complaint, no prompt or remedial actions were taken. Ms. Wilcox testified that Jackson remained in her work area, that he made threatening gestures in her presence, i.e., punching his fist into his hand and he made comments to her that her complaints would be ignored. From this evidence, the jury could infer that CCA acted with reckless disregard to Plaintiff's rights. The jury was free to discredit any testimony of Wells or Jackson about the instruction to stay away from Ms. Wilcox.[1] Such failure to investigate and/or to take some type of remedial action in light of Plaintiff's complaints of discriminatory treatment demonstrates an ineffective anti-discrimination policy by CCA as well as reckless indifference to Plaintiff's rights. *Id.*

Additionally, based upon the evidence at trial a jury could find that the top management official, Warden Wells, deliberately turned a blind eye to Plaintiff's complaints of sexual harassment which forced her to prepare an additional written complaint in order for CCA to take any action, nearly two weeks after her first

---

[1] The jury was also at liberty to disregard CCA's evidence of its "good faith efforts" to comply with federal anti-discrimination and harassment laws based upon the evidence of its failure, in practice, to vigorously enforce its policies.

complaint. As such, the jury found CCA's inaction to be particularly malicious or in reckless disregard of Plaintiff's rights especially in light of the culture of touching with CCA about which its own witness testified.

The testimony of Plaintiff, Warden Wells, Ms. Pooler and others demonstrates that despite Defendant's corporate office representatives in Nashville being made aware of Plaintiff's complaints and Warden Wells' knowledge, Defendant CCA still allowed Sgt. Jackson to remain in the workplace with Plaintiff. This is so despite the fact that Plaintiff had to maintain the strict chain of command which required that she interact with Sgt. Jackson. Importantly, Plaintiff testified that after her complaints of sexual harassment by Sgt. Jackson until his termination she was made to endure threatening and intimidating behavior by Sgt. Jackson in the workplace, including his punching equipment near her, hitting his hand in his fist and staring in a threatening manner at her.

In sum, there is no basis for a new trial on the issue of punitive damages nor should the judgment be altered or amended in any way. The Defendant's Motion should be denied.

IV.    Charge to Jury on issue of Punitive Damages not in Error.

The trial court is given wide discretion regarding the wording and style of the jury instructions as long as the instructions accurately reflect the law. *Bateman v.*

16

*Mnemonics, Inc.*, 79 F.3d 1532, 1543 (11th Cir. 1996). When providing guidance to the jury, the district court may comment on the evidence, ask questions of witnesses and clarify record evidence. *Johns v. Jarrard,* 927 F2d 551, 554 (11th Cir. 1991). When a jury has a question, the district court's responsibility is to be responsive and give the necessary supplemental instruction. *Id.* These supplemental jury instructions should be examined as part of the whole charge to determine whether the jury was "sufficiently instructed so that they understood the issues and were not misled." *Bateman*, 79 F3d at 1543. (citation omitted.) If the jury instructions as a whole was correct, even if "technically imperfect", no error occurred. *Id.* Only where there is "substantial and ineradicable doubt" about the guidance provided by the jury in their deliberations is there reversible error. *Id.*

Here, CCA complains about the supplemental instructions given to the jury following their question about punitive damages. Motion at 21-23. However, CCA only focuses on the supplemental instructions provided in response to the question. The proper inquiry requires reviewing the jury charges as a whole to determine whether the jury was properly informed of the law. *See Bateman*, 79 F3d at 1543. Here, the initial charge to the jury was in conformity with the Eleventh Circuit Pattern Jury Instructions. In response to the jury's question on punitive damages, the Court, in the exercise of its wide discretion as to style and wording, provided

the necessary guidance to the jury through the supplemental instruction. *See* Exhibit B to the Motion. When examining the supplemental instruction as part of the whole jury instruction regarding punitive damages, there is **no substantial and ineradicable doubt** whether the jury was properly guided in their deliberations. *See Bateman*, 79 F3d at 1543. The Court was within its discretion to word the supplemental instruction to respond to the jury's question and the Motion should be denied in its entirety.

V.   <u>CCA's Due Process rights have not been violated</u>.

CCA argues that because the ratio of punitive damages to compensatory damages is greater than 4 to 1, the award is constitutionally suspect and should be reduced without further analysis. Motion at 23-24. CCA is wrong. The United States Supreme Court has stated there is no bright line mathematical formula for determining whether a punitive damages award runs afoul of the Due Process clause. *BMW of North America Inc. v. Gore*, 517 U.S. 559, 582 (1996). In fact, the *Gore* Court stated:

> Low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach.

*Id.* The key inquiry is the degree of reprehensibility of the Defendant's conduct, not a mathematical ratio. *Id.* at 575.

The *Gore* Court describes the instant case exactly. While Ms. Wilcox's compensatory damages awarded by the jury were small, they resulted from a particularly egregious act—being subjected to sexual harassment in the workplace and having her complaints, in the face of the complaints of other female employees about the same harasser, ignored by the Defendant. Furthermore, Plaintiff's damages were noneconomic which are hard to determine. The fact that Ms. Wilcox's noneconomic damages were small does not lead to the conclusion that the amount of punitive damages awarded by the jury was "grossly excessive" which is The Defendant's argument for a reduction of the punitive damages award for due process reasons should be rejected.

## **CONCLUSION**

As the facts and all reasonable inferences must be construed in favor of the non-movant, Plaintiff has produced sufficient evidence for a reasonable jury to find CCA liable for sexual harassment against her.  Additionally, there is sufficient evidence for a reasonable jury to find that CCA acted with actual malice or reckless indifference to her federally protected rights, justifying the award of punitive damages against it.

**WHEREFORE**, Plaintiff Felecia Wilcox respectfully requests that

Defendant CCA's Rule 50/59 Motion be denied.

DATED this 26th day of September, 2016.

Respectfully submitted,

s/ Helen Albee
Neil L. Henrichsen
admitted pro hac vice
Helen H. Albee
Ga. Bar No.: 007503
**HENRICHSEN SIEGEL, P.L.L.C.**
301 W. Bay St, 14th Floor
Jacksonville, FL   32202
(904) 381-8183
(904) 212-2800 (Facsimile)
nhenrichsen@hslawyers.com
halbee@hslawyers.com
service@hslawyers.com

**COUNSEL FOR PLAINTIFF
FELECIA WILCOX**

**CERTIFICATE OF COMPLIANCE**

As required by Local Rule 7.1D, N.D. Ga., I hereby certify that this pleading

has been prepared in Times New Roman 14-Point font, one of the font and point

selections approved by this Court in Local Rule 5.1B, N.D. Ga.

Dated: September 26, 2016          s/ Helen Albee
                                   Helen Albee
                                   Georgia Bar No. 007503

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 26, 2016, I electronically filed the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 50/59 MOTION with the Clerk of Court using the CM/ECF system, which will automatically serve the following counsel of record:

>John T.L. Koenig
>Adam L. Bartrom
>BARNES & THORNBURG, LLP

>/s/ Helen Albee
>Helen Albee
>Georgia Bar No. 007503

21

# TAB NO. 120

# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FELECIA A. WILCOX,                  )
                                    )
     Plaintiff,                    )
                                    )
v.                                  )     CIVIL ACTION NO.:
                                    )     1:11-CV-04365-ODE-CCH
                                    )
CORRECTIONS CORPORATION             )
OF AMERICA A/K/A McRAE              )
CORRECTIONAL FACILITY,              )
                                    )
     Defendant.                    )
_____     )

## DEFENDANT'S REPLY IN SUPPORT OF ITS RULE 50/59 MOTION

CCA provided substantial Supreme Court and Eleventh Circuit precedent to support the proposition that the jury's verdict in this case simply cannot stand *as a matter of law*. In response, Wilcox largely ignored that binding legal precedent and instead attempted to rehash or, in many instances, take creative liberties with the facts. When viewed accurately, the trial record confirms that CCA is entitled to judgment in its favor. Alternatively, even if the small compensatory award is left intact, the punitive damages award should be vacated or significantly reduced.

## I.    Wilcox did not Meet "Severe or Pervasive" Prong.

### A.    Two Touches and Two Comments are Not "Severe or Pervasive"

As a matter of law, two touches and two comments spread out over the course of half a year are not severe or pervasive.  Thus, Wilcox's claim fails to meet the fourth element of a *prima facie* claim of sexual harassment.  *See* Docket No. 112-1, pp. 6-8; *see also e.g., Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999); *Gupta v. Fla. Bd. of Regents*, 212 F.3d. 571, 584-586.   Indeed, a review of this Court's own summary judgment order demonstrates that these two isolated instances of touching and two isolated comments fall far short of an actionable hostile work environment claim under Title VII.  [Docket No. 54].

Wilcox did not identify a single case for the proposition that two instances of touching and two stray comments in a six month period meet the high standard of "severe or pervasive" conduct.  Indeed, Wilcox failed to address the 11th Circuit's decisions in *Mendoza* or *Gupta* wherein much more egregious conduct did not amount to "severe or pervasive" acts.  *See* Docket No. 54, pp. 34-35; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999); *Gupta v. Fla. Bd. of Regents*, 212 F.3d. 571, 584-586.  Wilcox also failed to address the cases cited by the 11th Circuit on appeal in this matter.  The only two cases cited by the Eleventh Circuit involved **daily** harassment, *see Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002), and **fifteen** instances of harassment in four months, *see*

2

*Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 509 (11th Cir. 2000). [*Id.* at p. 8].  Harassment cannot be found as a matter of law.

### B.    CCA did not have Actual or Constructive Knowledge of the Hugs.

#### 1.    No Actual Knowledge

Wilcox relies primarily on alleged hugs by Jackson, but those hugs cannot be considered because CCA did not have actual or constructive knowledge that Wilcox believed them to be offensive.  It was established at trial that Wilcox never reported this issue to CCA and Wilcox did not identify any evidence in her Response Brief that would establish actual knowledge.

#### 2.    No Constructive Knowledge

It was also established as a matter of law that CCA did not have constructive knowledge of the alleged hugs.  Constructive or imputed knowledge ***cannot*** be found where the company has adopted an anti-harassment policy with a reporting procedure.  [Docket No. 112-1, pp. 5-6].  In this case, CCA has an anti-harassment policy with a reporting procedure which Wilcox failed to utilize to report her subjective belief that hugs from Jackson were offensive or sexual.

Wilcox did not effectively counter this position in her Response Brief [Docket No. 117, p. 7].  Instead, Wilcox misapplied the decision in *Farley.*  In *Farley*, the 11th Circuit held that an anti-harassment policy will not absolve an employer of liability if that employer has ***actual*** knowledge of the alleged

harassment.  [Docket No. 117, p. 7].  This statement of law in *Farley* does not apply to ***constructive*** knowledge.

The purported "culture of touching" at CCA as alleged by Wilcox in her Response Brief is not supported by the record evidence and is simply a red herring. Wilcox claimed "[o]ther witnesses testified regarding the touching ***of female employees*** by Sgt. Jackson, including Kim Heller, James Hill, Felicia Miller (Spires) and Sgt. Jackson himself." [Docket No. 117, p. 2 (emphasis added)].  But no one connected them to Wilcox and none of these witnesses said the hugs were offensive:

- Heller did not believe the hugs to be offensive or sexual in nature. [Trans.: Heller, *see* generally 145 – 157].  Specifically, Heller testified that Jackson's hugs "didn't bother me."  [Trans.: Heller, p. 153];

- James Hill did not testify that the hugs were offensive or sexual;

- Felicia Miller (Spires) did not testify that the hugs were offensive or sexual; and

- Larry Jackson did not testify that the hugs were offensive or sexual [Trans.: Jackson, pp. 260 to 272].

Wilcox's argument is also misplaced because not all hugs are sexual or offensive.  Indeed, this Court found at summary judgment, hugs are not *per se* sexual in nature.  [Docket No. 54, pp. 34-35].  As a matter of law, CCA cannot be found to have constructive knowledge of ***inappropriate*** conduct vis-à-vis the hugs because Wilcox never reported that she was offended and no one else reported that

Wilcox was offended.  CCA had a policy in place that required employees such as Wilcox to report conduct they subjectively believed was inappropriate.  Wilcox did not and the Supreme Court has held that CCA therefore cannot have constructive knowledge as a matter of law.

## II.    CCA's Response was "Prompt and Remedial" as a Matter of Law.

In its opening brief, CCA detailed the numerous prompt and remedial steps it took in response to Wilcox's allegations made on July 10th, July 23rd, and August 27th.  It is black letter law that fact-gathering through statements is prompt and remedial; counseling is prompt and remedial; instructing an employee to avoid another employee is prompt and remedial; making a determination that harassment did not occur based upon contradicting evidence is prompt and remedial; and a proper remedial step can cure an arguably less than prompt response.

Wilcox's argument in response wholly ignores the law of this Circuit regarding prompt and remedial action which allows for varying gradations of assessment of the facts, statement gathering, and good faith determinations based upon gathered facts.  Tellingly, Wilcox does not address *any* of the case law cited by CCA including: *Fleming v. Boeing Co.,* 120 F.3d 242, 246-47 (11th Cir. 1997) (talking to the harasser and telling the complainant to report any further problems was, as an initial measure, enough to constitute "immediate and appropriate corrective action"); and *Baldwin v. Blue Cross/Blue Shield*, 480 F.3d 1287, 1305

(11th Cir. 2007) ("We have held that even if the process in which an employer arrives at a remedy in the case of alleged sexual harassment is somehow defective, the defense is still available if the remedial result is adequate.").

Wilcox also attempts to quibble with the facts, but CCA's position is fully supported by the record evidence and transcript:

- July 10, 2009: Wilcox alleged that Jackson slapped her on the butt twice and Jackson denied it. Witness statements gathered following Wilcox's complaint did not corroborate Wilcox's complaint. At that point, CCA had fulfilled its obligation for a prompt response to alleged co-worker harassment in regard to Wilcox's July 10th complaint. Nonetheless, CCA took the extra step to instruct Jackson to stay away from Wilcox. Indeed, both Wells and Jackson presented **unrebutted** testimony that Jackson was given the order to stay away from Wilcox. [Trans: Wells pp. 168-169, 190-191; Jackson, p. 264].

- July 23, 2009: Wilcox repeated her July 10th allegation that Jackson had slapped her on the butt twice on July 10th. Again, CCA had fulfilled its obligation for a prompt response to alleged co-worker harassment in regard to this allegation as described above.

- August 27, 2009: Wilcox made **new** allegations of an instance of thigh touching and two off-color comments. These new complaints, along with information gathered by investigator Kenya Golden on August 27th, were compiled into the Golden Report which was dated September 9, 2009. CCA received the Golden Report shortly thereafter and then promptly made the determination to terminate Jackson on September 14, 2009. Through these actions, CCA again met its legal obligation for a prompt and remedial response to the new allegations raised by Wilcox on August 27th.

As a matter of law, CCA was not required to believe Wilcox's initial allegation irrespective of contradictory facts nor was it required to immediately terminate Jackson simply because Wilcox made a complaint. Rather, CCA was required to

do exactly what it did – receive the complaint; obtain facts regarding the complaint; make a determination based upon those facts; and then take action.

Rather than attacking the law cited by CCA, Wilcox instead took creative liberties with the record evidence. But the transcript confirms as follows:

- Wilcox asserts "instead of moving Plaintiff or Sgt. Jackson, Defendant allowed Sgt. Jackson to work with Plaintiff until his termination in September 2009. As a result, Sgt. Jackson was able to continue to direct hostile and intimidating behavior toward the Plaintiff." [Docket No. 117, p. 9]. This assertion – made without a reference to the record – is directly contradicted by the ***unrebutted*** testimony that CCA instructed Jackson to avoid Wilcox. Further, based upon Wilcox's own testimony, it is ***undisputed*** that Jackson never spoke to, or talked to, Wilcox after her July 10, 2009 complaint.

- Wilcox also incorrectly asserts that "Warden Wells, Ms. Pooler and Sgt. Jackson all testified that Plaintiff or Sgt. Jackson could have been moved away from Plaintiff's workspace after Plaintiff's complaints in July 2009." [Docket No. 117, p. 9]. This statement is simply incorrect. A review of Wells' testimony reveals no such statement. [Trans.: Wells, p. 158 to 215]. Similarly, a review of Jackson's testimony reveals no such statement. [Trans.: Jackson, p. 260 to 272]. And Pooler did not testify that Wilcox or Jackson could be moved following Wilcox's complaints, but rather testified that, under the CCA policy, "a harasser can be moved." [Trans.: Pooler, p. 234].

CCA's actions were prompt and remedial as a matter of law. The fact Wilcox may have disagreed with CCA's action (up until Jackson's termination) is irrelevant.

III.   **The Evidence did not Support any Award of Punitive Damages.**

A.   **CCA's Motion is Procedurally Correct.**

Wilcox's alleged procedural defects argument can be quickly disregarded. She claims incorrectly that CCA sought relief under Fed. R. Civ. P. *59(a)*: "the award of punitive damages cannot simply be vacated as requested by Defendant CCA pursuant Rule 59(a)."  [Docket No. 117, p. 11].  But, CCA's Brief plainly states: "The Court should vacate the punitive damages award per Rule *59(e)* on four separate grounds . . . ."  [Docket No. 112-1, p. 14]. (Emphasis added)

She then claims without relevant support that Rule 59(e) "is not the proper procedural rule for amending or altering a judgment" based upon her belief that Rule 59(e) applies to bench trials, not jury verdicts.  [Docket No. 117, pp. 11-12]. The entirety of Wilcox's argument is belied by the plain text of the Rule and is based upon a *habeas corpus* case in the context of a petition for rehearing.  The entire quote referenced by Wilcox states:  "A *timely* petition for rehearing tolls the running of the [appeal] period because it operates to suspend the finality of the…court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties."  *Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 267 (1978).  The plain language of Rule 59(e) does not distinguish whether

the judgment comes from the bench or a jury.[1]   *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend ***a judgment*** must be filed no later than 28 days after the entry of the judgment."). (Emphasis added).   Further, the 11th Circuit has specifically applied Rule 59(e) to jury trials. *See, e.g., Insurance Co. of N. America v. Valente,* 933 F.2d 921, 922-23 (11th Cir. 1991) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)) (When ruling on a Rule 59(e) motion for new trial, the judge must determine "if in his opinion, 'the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'").   CCA's motion is proper under Rule 59(e).

## B.   CCA is not Presenting new Arguments.

Wilcox argues CCA cannot use Rule 59(e) to raise "new" arguments related to punitive damages.   This claim is wholly without merit.   First, there is nothing new about CCA's arguments.   Evidence of CCA's objections to Wilcox pursuing punitive damages in this matter after failing to plead for such relief in her Complaint is pervasive throughout  the trial transcript.   [*See* Trans. pp. 6-7; 17-19; and Docket No. 112-3].   In fact, when CCA's counsel sought to raise this issue again, even the Court recognized: "Well, we've been over that." [Docket No. 112-

---

[1] Wilcox's incorrect application of Rule 59(e) would render Rule 52(a) superfluous as the latter applies to bench trials on its face.  If Rule 59(e) applied only to bench trials, there would be no need for Rule 52.

3, p. 22]. Then, after the revised instruction on punitive damages was given, the Court allowed CCA to lodge objections to the revised instruction, which it did as follows:

> Mr. Koenig:  Yes, your Honor.  CCA objects to the instruction that was just given on the fact that CCA maintains that a punitive damages instruction should not have been given at all as noted in the Charge Conference, and that CCA was prejudiced in its preparation for this case by not knowing that punitive damages were going to be an issue in the case until the morning of trial.
>
> In addition to that, we object to the alteration from the Pattern Instruction, particularly the omission of the paragraph that talks about an employer's good faith efforts to comply by implementing policies and programs designed to prevent unlawful discrimination in the workplace which was omitted from the altered instruction.
> We also object –

> The Court:  What would you contend were the employer's good faith efforts to comply?

> Mr. Koenig:  Well, your Honor, some of those efforts were indicated in the record through the sexual harassment policy, the fact that they brought in an outside investigator to come in and look at these. That outside investigator said everything was done properly. So that's some of the evidence.
>
> We would have been able to put in additional evidence as well about that process that takes place to get somebody from Florida up to Georgia, line up 16 employees to have them all interviewed, and things like that.
>
> In addition, your Honor, I think the instruction unfairly highlighted Plaintiff's argument about July 10 when the record evidence indicated that the things about which she alleged constituted the entire basket of harassment happened before July 10th, and then after July 10th when she complained that Mr.

Jackson never touched her and never said a word to her after that fact.  Thank you.

The Court:   Okay.  We'll be in recess until further order.

[Docket No. 112-3, pp. 24-25].

Wilcox also misapplies a Rule 50(b) standard on this point when CCA is proceeding under Rule 59.  The advisory notes to Rule 59 state plainly that Rule 59(e) "deals only with alteration or amendment of the original judgment in a case and does not relate to a judgment upon motion as provided in Rule 50(b)."  Put simply, Rule 59(e) and Rule 50(b) serve different purposes.  Wilcox cites no authority to support her argument that CCA cannot seek to have the judgment vacated because it is not supported by the evidence.  Indeed, the Court's standard for adjudicating a Rule 59 motion necessarily requires the Court to evaluate the record evidence to determine if it supports the judgment.

Finally, CCA's Rule 50 motion at the close of Plaintiff's case attacked liability head on and CCA argued that judgment should have been entered in its favor as a matter of law.  Thus, it clearly subsumed punitive damages.  If judgment was entered for CCA, no damages would follow.  It is illogical for Wilcox to assert that CCA should have filed a Rule 50 motion on punitive damages since CCA submitted its Rule 50 Motion denying liability altogether.  CCA's motion is procedurally proper in all respects.

### C.   <u>Punitive Damages should be Vacated or Significantly Reduced.</u>

CCA clearly sought to vacate the punitive damages award outright under Rule 59(e), not a new trial under Rule 59(a). [Docket No. 117, p. 13].  Vacating the judgment outright is fully authorized by Rule 59(e).

Indeed, CCA established in its opening brief that the punitive damages award must be vacated as a matter of law based on: (1) CCA's good faith efforts; (2) the Supreme Court's holding in *Kolstad* that an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts; (3) the legal premise that punitive damages can only be implemented when the acts come from upper level management (and Wells is not upper level management)[2]; and (4) the legal premise that intentional discrimination is not sufficient on its own to award punitive damages.

Again, Wilcox avoided the bulk of the substantial case law CCA cited and argued instead that (1) prompt and remedial action was not taken by CCA; and (2) "a jury could find that the top management official, Warden Wells, deliberately turned a blind eye to Plaintiff's complaints of sexual harassment . . . ."  [Docket No. 117, p. 15].  This argument is insufficient as a matter of law to sustain the punitive damages verdict for several reasons.

---

[2] Wells reported to corporate bosses in Nashville, Tennessee.  [Trans: Wells, pp. 160-161].

As a legal matter, CCA **did** take prompt and remedial action in regard to Wilcox's complaints as confirmed by the binding precedent cited by CCA.  Even if CCA did not, which it disputes, that fact alone **cannot** sustain an award of punitive damages as it is merely an element of the *prima facie* claim for sexual harassment. CCA cited numerous cases that hold that merely satisfying an element of a *prima facie* claim is not enough and cannot support an award of punitive damages.

Wilcox also failed to establish as a matter of law that **upper level** management acted with malice or reckless indifference.  Warden Wells is not such an upper level manager – he reported to the corporate structure at the corporate headquarters in Nashville, Tennessee.   [Trans: Wells, pp. 160-161].   *See Ash,* 664 F.3d at 903-904 (finding the decision of a plant manager overseeing 1,400 employees was not "upper level management" for purposes of awarding punitive damages); *Dudley v. Wal-Mart Stores*, 166 F.3d 1317, 1323 (overturning an award of $250,000 in punitive damages because:  "Neither [the manager or co-manager of the store] is high enough up Wal-Mart's corporate hierarchy – if they can be said to be in the corporate management hierarchy at all – to allow their discriminatory acts to be the basis for punitive damages against the corporation.").

Wilcox made another handful of arguments in her Response Brief that are clearly unsupported by the record:

- Wilcox asserts she testified that Jackson "made comments to her that her complaints would be ignored." [Docket No. 117, p. 15]. There is no such testimony in the trial record. [Trans.: Wilcox, pp. 36-144].

- Wilcox argues "the jury found CCA's inaction to be particularly malicious or in reckless disregard of Plaintiff's rights especially in light of the culture of touching with CCA about which its own witness testified." [Docket No. 117, p. 16]. The jury made no such finding.

- Wilcox also claims "Plaintiff had to maintain the strict chain of command which required that she interact with Sgt. Jackson" after her complaints. [Docket No. 117, p. 16]. It was ***undisputed*** (based upon Wilcox's own testimony) that Jackson did not speak to or touch Wilcox after her July 10, 2009 complaint.

### D.    The Revised Punitive Damages Instruction was in Error.

Tellingly, at trial, Wilcox objected to the Court's revised jury instruction on punitive damages. That alone indicates the revised instruction was in error. In addition, in her Response Brief, Wilcox did not dispute CCA's argument that the Court erred in giving the revised instruction. Rather, she argues "the jury was properly guided in their deliberations" overall. [Pl. Resp. p. 18]. This argument fails, though, because the trial court gets wide discretion ***only*** if the instructions accurately reflect the law.[3] *See Bateman v. Mnenomics, Inc.,* 79 F.3d 1532, 1543 (11th Cir. 1996). In this case, the revised instruction did not accurately reflect the law for the numerous reasons set forth in Section II.C. of CCA's original Brief.

---

[3] L.R. 51.1(b) requires that instructions be drawn from applicable legal principles from a cited authority.

[Docket No. 112-1, pp. 21-23]. Wilcox did not counter *any* of those arguments. [Docket No. 117, pp. 16-18].

### E.    If Not Vacated, the Punitive Damages Award Must be Reduced.

As a Constitutional matter of due process, Courts *must* consider "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." *See State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S.408, 418 (2003). When doing so here, it is evident the jury imposed excessive punitive damages of $100,000 in comparison to $4,000 in compensatory damages – a *25-to-1* ratio. [Docket No. 104].    Wilcox is correct that the U.S. Supreme Court held in *Gore* that there is no bright line mathematical formula when determining the excessiveness of punitive damages. However, the Court in *Gore* found the ratio of 500-to-1 to be grossly excessive and remanded the matter. On remand, the Alabama Supreme Court *reduced the punitive damages* ratio from 500-to-1 to 5-to-1 based upon the U.S. Supreme Court's guidance in *Gore*. *BMW of N. Am. v. Gore*, 701 So. 2d 507 (Ala. 1997). Accordingly, in this matter, the jury's award of $100,000 must be reduced significantly in accord with the Supreme Court's instruction that anything higher than a 4-to-1 ratio is suspect. CCA respectfully requests that the punitive damages award be remitted to no more than $16,000.

Respectfully submitted,

*s/ John T.L. Koenig*

John T.L. Koenig
Georgia Bar No. 268782
BARNES & THORNBURG LLP
Prominence in Buckhead, Suite 1700
3475 Piedmont Road, N.E.
Atlanta, GA 30305
Telephone: (404) 264-4018
Facsimile: (404) 264-4033
E-mail: John.Koenig@btlaw.com

Adam L. Bartrom
*Pro Hac Vice Admission*
BARNES & THORNBURG LLP
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802-2206
Telephone:   (260) 423-9440
Facsimile:    (260) 424-8316
Email:   adam.bartrom@btlaw.com

*Attorney for Defendant, Corrections
Corporation of America a/k/a McRae
Correctional Facility*

## CERTIFICATE OF COMPLIANCE

As required by Local Rule 7.1D, N.D. Ga., I hereby certify that this pleading

has been prepared in Times New Roman 14-Point font, one of the font and point

selections approved by this Court in Local Rule 5.1B, N.D. Ga.

This 11th day of October, 2016

*s/ John T.L. Koenig*

John T.L. Koenig
Georgia Bar No. 268782

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of October, 2016, a copy of the foregoing was filed electronically and will be served by electronic notice via the Court's CM/ECF system to the following counsel of record:

Helen H. Albee, Esquire
Neil L. Henrichsen, Esquire
HENRICHSEN SEIGEL, PLLC
1648 Osceola Street
Jacksonville, FL 32204

David Gan-wing Cheng
The Law Office of David Cheng, Ltd.
1801 Peachtree Road, NW
Suite 100
Atlanta, GA 30309
david@consideringdavidcheng.com


*s/ John T.L. Koenig*
John T.L. Koenig
Georgia Bar No. 268782

DMS 4396139v1

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, 2017, I electronically filed the foregoing with the Court's CM/ECF system, which will automatically send an email notification of such filing to the following counsel of record:  John T.L. Koenig, Esq., email: john.koenig@btlaw.com, at BARNES & THORNBURG LLP, Suite 1700, Prominence in Buckhead, 3475 Piedmont Road, N.E., Atlanta, GA 30305-2954.

*/s/ Neil L. Henrichsen*
Neil L. Henrichsen